UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JARED MODE, ) | |
| on behalf of himself and all others ) | |
| similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. _____ |
| ) | |
| S-L DISTRIBUTION COMPANY, LLC, ) | |
| S-L DISTRIBUTION COMPANY, INC., and ) | |
| S-L ROUTES, LLC, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT-CLASS/COLLECTIVE ACTION

COMES NOW Plaintiff Jared Mode ("Plaintiff"), by and through counsel, individually and on behalf of all persons similarly situated, and brings this class/collective action lawsuit against S-L Distribution Company, LLC, S-L Distribution Company, Inc. and S-L Routes, LLC, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et. seq., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95.21.1, et seq.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. This Court has subject matter jurisdiction over the NCWHA claim pursuant to 28 U.S.C. § 1367.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff is an individual residing at 5902 Emerald Woods Drive Indian Trail, North Carolina 28079.

1

5. S-L Distribution Company, LLC is a corporate entity that, according to the North Carolina Secretary of State database, maintains a principal office at 13515 Ballantyne Corporate Place, Charlotte, NC 28277.

6. S-L Distribution Company, Inc. is a corporate entity that, according to the North Carolina Secretary of State database, maintains a principal office at 13515 Ballantyne Corporate Place, Charlotte, NC 28277.

7. S-L Routes, LLC is a corporate entity that, according to the North Carolina Secretary of State database, maintains a principal office at 1250 York Street, Hanover, PA 17331.

8. S-L Distribution Company, LLC, S-L Distribution Company, Inc., and S-L Routes, LLC are referred to collectively as "Defendants."

9. Defendants are engaged in commerce and, furthermore, employ individuals engaged in the production of goods for commerce and/or handling, selling, or working on goods or materials that have been moved in or produced in commerce. As such, Defendants are covered by the FLSA.

## **FACTS**

10. Defendants collectively manufacture and distribute snack foods to retail stores in North Carolina and other states.

11. Defendants contract with purported "Independent Business Operators" ("IBOs") to, inter alia, transport the snack foods from Defendants' warehouses to retail stores and perform various merchandising services at the stores.

12. Plaintiff worked as an IBO and was assigned a distribution route within this judicial district.

2

13. Plaintiff and other IBOs performed their work pursuant to Distributor Agreements that purport to classify them as non-employee independent contractors. However, a worker's employment status under the FLSA is not determined by "an 'independent contractor' label" in his/her contract. Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947). Instead, under the FLSA's "expansive[]" conception of employment, courts "consider[] the 'economic realities' of the relationship between the worker and the putative employer." Schultz v. Capital International Security, Inc., 466 F.3d 298, 304 (4th Cir. 2006). "The focal point is whether the worker is economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself." Id. (internal quotations omitted).

14. Here, as briefly summarized in subparagraphs (a)-(f) below, the economic realities demonstrate that Plaintiff and other IBOs are economically dependent on Defendants:

(a) Defendants, acting pursuant to the Distributor Agreements and other applicable rules and expectations, closely monitored, directed, and controlled the day-to-day work of Plaintiff and other IBOs. For example, Plaintiff and other IBOs had virtually no input into basic business decisions regarding, inter alia, the types of products sold, the prices charged for such products, and the promotion of such products.

(b) Plaintiff and other IBOs were required to work exclusively within their assigned routes and are prohibited from distributing food products manufactured by Defendants' competitors. As such, IBOs' compensation has little relationship to their managerial skill.

(c) The IBO position requires no special skills, educational requirements, or certifications. Instead, an IBO can learn how to perform the job through a brief period of on-the-job training.

(d) IBOs tend to work for Defendants on a long-term basis. For example, Plaintiff worked for Defendants as an IBO from approximately May 2014 – October 2016.

(e) The services performed by IBOs – delivering snack foods to stores and performing basic merchandising duties – are integral to Defendants' business of manufacturing, selling, and distributing snack foods.

15. IBOs work long hours. For example, Plaintiff typically worked 50-55 hours per week.

16. Plaintiff and other IBOs did not receive any extra overtime premium compensation for hours worked over 40 per week.

17. In performing their job duties, Plaintiff and other IBOs drive a variety of different vehicles, many of which have gross vehicle weight ratings of under 10,000 pounds.

18. Defendants generally paid Plaintiff and other IBOs based on the volume of food products distributed. However, in determining the weekly compensation owed to Plaintiff and other IBOs, Defendants made various deductions to the compensation. Many of these deductions were itemized on weekly "Settlement Sheets" and include, inter alia, administrative service charges of approximately $40 per week, leased vehicle charges, vehicle loan repayment charges, route loan repayment charges, and charges for stale or unsold product.

19. Defendants did not obtain authorizations from Plaintiff or other IBOs for the deductions described above.

20. In addition to the above deductions, Plaintiff and other IBOs incurred out-of-pocket expenses such as, for example, vehicle insurance premiums, fuel expenses, and vehicle upkeep expenses. Defendants did not reimburse Plaintiff and other IBOs for these work-related expenses.

4

4038327.2
Case 3:18-cv-00150-KDB-DSC   Document 1   Filed 03/22/18   Page 4 of 9

21. During some weeks, the hourly compensation received by Plaintiff and other IBOs was less than the federal minimum wage of $7.25/hour after such compensation is reduced to account for the deductions and out-of-pocket expenses described above.

22. In failing to pay the minimum wage or overtime premium to Plaintiffs and other IBOs, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## CLASS/COLLECTIVE ALLEGATIONS

23. Plaintiff brings his FLSA claims on behalf of a collective consisting of all individuals who, during any time within the past three years, worked for Defendants as an IBO. This collective does not include individuals covered by the class action settlements in Tavares, et al. v. S-L Distribution Company, Inc., et al., 1:13-cv-01313-JEJ (USDC, M.D. Pa.); Roxberry, et al. v. S-L Distribution Company, Inc., et al., 1:16-cv-02009-JEJ (USDC, M.D. Pa.); or Bankalter, et al. v. S-L Distribution Company, Inc., et al., 2017-SU-000549 (Pa. Common Pleas, York County).

24. Plaintiff brings his NCWHA claim on behalf of a class consisting of all individuals who, during any time within the past three years, worked for Defendants as an IBO in North Carolina. This class does not include individuals covered by the class action settlements listed in the prior paragraph.

25. Plaintiff's FLSA claims should proceed as a collective action because Plaintiff and other IBOs, having worked pursuant to the common pay policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

26. Class action treatment of Plaintiffs' NCWHA claim is appropriate because all of Federal Rule of Civil Procedure 23's class action requisites are satisfied. In particular:

(a) The class includes over 50 individuals, all of whom are readily ascertainable based on Defendants' payroll records and are so numerous that joinder of all class members is impracticable.

(b) Plaintiff is a class member, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

(c) Plaintiff and his lawyers will fairly and adequately represent the class members and their interests.

(d) Questions of law and fact are common to all class members, because, *inter alia,* this action concerns Defendants' common business policies, as described herein. The legality of these practices will be determined through the application of generally applicable legal principles to common facts.

(e) Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

### COUNT I – FLSA – FAILURE TO PAY MINIMUM WAGE

27. All previous paragraphs are incorporated as though fully set forth herein.

28. The FLSA requires that employees be paid a minimum wage of $7.25 per hour. See 29 U.S.C. § 206(a)(1)(C).

29. Defendants are employers required to comply with the FLSA's overtime pay mandate, and Plaintiff and other collective members are employees entitled to the mandate's protections.

30. Compliance with the FLSA's minimum wage mandate is measured on a workweek basis.[1]

31. In determining whether an employee's weekly pay satisfies the FLSA's minimum wage mandate, the weekly pay amount is limited to compensation that is paid "finally and unconditionally or 'free and clear.'" 29 C.F.R. § 531.35. As such, the weekly pay amount must be reduced to account for an employee's out-of-pocket expenditures that primarily benefitted the employer.[2]

32. During some weeks, Defendants have willfully violated the FLSA's minimum wage mandate by paying Plaintiff and other collective members compensation that amounts to under $7.25/hour after reductions for work-related deductions and expenditures.

---

[1] See 29 C.F.R. § 776.4(a) ("The workweek is to be taken as the standard in determining the applicability of the [FLSA]."); Martin v. United States, 117 Fed. Cl. 611, 623 (Fed. Cl. 2014) ("an overwhelming majority [of courts] have interpreted the FLSA to require a 'workweek' standard for the calculation of minimum wages due"); Morgan v. Speak Easy, LLC, 625 F. Supp. 2d 632, 651 (N.D. Ill. 2007) ("minimum wage is to be calculated on a workweek basis"); Rogers v. Savings First Mortgage, LLC, 362 F. Supp. 2d 624, 631 (D. Md. 2005) ("in order to meet the requirements of [the FLSA's minimum wage provisions], an employee compensated wholly or in part on a commission basis must be paid an amount not less than the statutory minimum wage for all hours worked in each workweek").

[2] See Arriaga v. Florida Pacific Farms, L.L.C., 305 F.3d 1228, 1235-37 (4th Cir. 2002); see, e.g., 29 C.F.R. § 531.35 ("For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act."); Garcia v. Frog Island Seafood, Inc., 644 F. Supp. 2d 696, 705 (E.D.N.C. 2009) (in determining minimum wage compliance, weekly pay must be reduced to account for migrant workers' out-of-pocket transportation and border-crossing expenses).

## COUNT II – FLSA – FAILURE TO PAY THE OVERTIME PREMIUM

33. All previous paragraphs are incorporated as though fully set forth herein.

34. The FLSA requires that employees receive overtime premium pay calculated at 150% of their regular pay rate for all hours worked over 40 per week. See 29 U.S.C. § 207(a)(1).

35. Defendants are employers required to comply with the FLSA's overtime pay mandate, and Plaintiff and other collective members are employees entitled to the mandate's protections.

36. Defendants willfully violated the FLSA by failing to pay Plaintiffs and the collective members overtime premium compensation for hours worked over 40 per week.

## COUNT III – NCWHA – ILLEGAL WAGE DEDUCTIONS

37. All previous paragraphs are incorporated as though fully set forth herein.

38. The NCWHA prohibits Defendants from making deductions to the pay of Plaintiff and other class members without first obtaining "a written authorization from the employee which is signed on or before the payday for the pay period from which the deduction is to be made indicating the reason for the deduction." N.C. Gen. Stat. § 95-25.8(2). Moreover, such authorizations must "be: (1) written; (2) signed by the employee on or before the payday for the pay period for which the deduction is made; (3) show the date of signing by the employee; and (4) state the reason for the deduction." Hyman v. Efficiency, Inc., 605 S.E.2d 254, 258 (N.C. App. 2004) (citing N.C. Admin. Code tit. 13, r. 12.0305(b)).

39. Defendants violated the NCWHA by making deductions to the pay received by Plaintiff and other class members without obtaining any authorizations.

## PRAYER FOR RELIEF

Plaintiff, on behalf of themselves and other members of the class/collective, seeks the following relief:

(a) payment of all unpaid minimum and overtime wages;

(b) the reimbursement of all improper pay deductions;

(c) liquidated damages and/or penalties available under the FLSA and/or NCWHA;

(d) prejudgment interest; and

(e) such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial.

Respectfully submitted this 22nd day of March, 2018.

> *s/ J. Keith Coates, Jr.*
> J. Keith Coates, Esq.
> Woolf, McClane, Bright, Allen & Carpenter, PLLC
> Post Office Box 900
> Knoxville, TN  37901
> (865) 215-1000
>
> Chad Hatmaker, Esq. (*pro hac vice* admission anticipated)
> Woolf, McClane, Bright, Allen & Carpenter, PLLC
> Post Office Box 900
> Knoxville, TN  37901
> (865) 215-1000
>
> Peter Winebrake (*pro hac vice* admission anticipated)
> Winebrake & Santillo, LLC
> 715 Twining Road, Suite 211
> Dresher, PA 19025
> (215) 884-2491
>
> *Plaintiff's Counsel*