**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| JARED MODE, on behalf of himself and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>S-L DISTRIBUTION COMPANY, LLC,<br>S-L DISTRIBUTION COMPANY, INC., and<br>S-L ROUTES, LLC<br><br>            Defendants. | No. 3:18-cv-00150-RJC-DSC |

**DEFENDANTS' ANSWER, SEPARATE DEFENSES,
AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

Defendants S-L Distribution Company, LLC, S-L Distribution Company, Inc., and S-L Routes, LLC[1] ("S-L") respectfully submit their Answer, Separate Defenses, and Counterclaims to Plaintiff Jared Mode's Complaint.

S-L answers the Complaint in accordance with the numbered paragraphs thereof as follows:

**UNNUMBERED INTRODUCTORY PARAGRAPH**

Except to admit that Plaintiff purports to advance his claims on behalf of himself and on behalf of entities/individuals that he alleges to be similarly situated as a class/collective lawsuit, S-L denies the allegations in the unnumbered introductory paragraph.

---

[1] S-L Distribution Company, LLC is the only presently existing entity. In 2013, S-L Routes, LLC was merged into S-L Distribution Company, Inc. In 2016, S-L Distribution Company, Inc. was converted into S-L Distribution Company, LLC. All admissions as to "Defendants" are, with respect to S-L Routes, LLC and S-L Distribution Company, Inc., intended to refer only to the period of times in which those entities were in existence. For ease of reference, however, S-L Distribution Company, LLC, S-L Distribution Company, Inc., and S-L Routes, LLC are collectively referred to herein as "Defendants" and their collective answers are provided in the present tense.

## JURISDICTION AND VENUE[2]

1. The allegations in Paragraph 1 of the Complaint constitute conclusions of law to which no response is required.

2. The allegations in Paragraph 2 of the Complaint constitute conclusions of law to which no response is required.

3. The allegations in Paragraph 3 of the Complaint constitute conclusions of law to which no response is required.

## PARTIES

4. S-L lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 4.

5. Denied.  By way of further response, S-L Distribution Company, LLC maintains its principle place of business at 1250 York Street, Hanover, PA 17331.

6. Denied.  By way of further response, S-L Distribution Company, Inc. is not an existing corporate entity and is shown in the North Carolina Secretary of State's database as having a status of "Withdrawn by Merger."

7. Denied.  By way of further response, S-L Routes, LLC is not an existing corporate entity and is shown in the North Carolina Secretary of State's database as having a status of "Merged."

8. S-L acknowledges that S-L Distribution Company, LLC, S-L Distribution Company, Inc., and S-L Routes, LLC are referred to collectively in the Complaint as Defendants.

9. S-L admits that it is engaged in commerce and that it employs individuals engaged in the handling, selling or working on goods or materials that have been moved in or

---

[2] For the Court's convenience, Defendants have repeated herein the Headings used in Plaintiff's Complaint.  Defendants do not admit the substance of any of those Headings.

produced in commerce. Further, the allegation in Paragraph 9 of the Complaint that "Defendants are covered by the FLSA" constitutes a conclusion of law to which no response is required.

## FACTS

10.     Denied.

11.     Denied. By way of further response, entities that wish to purchase rights to distribute certain S-L and partner products within a geographic territory execute various contracts with S-L that set forth the parties' mutual agreement that the purchaser is an independent contractor and will provide services under the contract as such, and that S-L refers to the entities with which they contract as "Independent Business Operators" or "IBOs."

12.     Denied. By way of further response, J&M Mode Distribution, LLC, which is listed in the North Carolina Secretary of State's database as an "Administratively Dissolved" limited liability company, was a party to a Distributor Agreement with S-L from March 22, 2015 to October 30, 2016. Pursuant to that Agreement, J&M Mode Distribution, LLC owned the right to distribute certain S-L and partner products in a geographic territory within this judicial district.

13.     Denied. By way of further response, entities that wish to purchase the right to distribute certain S-L and partner products within a geographic territory execute various contracts with S-L that set forth the parties' mutual agreement that the purchaser is an independent contractor and will provide services under the contract. S-L avers that the allegations in Paragraph 13 of the Complaint as to how a worker's employment status under the FLSA is determined constitute conclusions of law to which no response is required.

14.     Denied, including all subparts therein.

15.     S-L lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint relating to how many hours per week Plaintiff worked for J&M Mode Distribution, LLC or any IBO entity's employees or independent

3

contractors may work. S-L specifically denies Paragraph 15 to the extent that it suggests or implies that Plaintiff or any IBO worked or works *for* S-L.

16. S-L lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint relating to whether any IBO paid Plaintiff or any other of its employees or independent contractors overtime compensation.

17. S-L lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint because S-L has no control over the vehicles used by Plaintiff or any of employees or independent contractors of any of the IBO entities with which S-L contracts.

18. Denied. By way of further response, S-L provides weekly Settlement Sheets to IBOs that reflect any monies owed by either party to the other pursuant to the contract in place between S-L and the IBO entities with which S-L contracts.

19. Denied.

20. Denied. By way of further response, in accordance with the mutual agreement of the parties, an IBO is an independent contractor and will provide services under the contract as such. Accordingly, J&M Mode Distribution, LLC and the other IBOs with which S-L contracts bore or bear the costs of operating their distribution businesses, including vehicle-related expenses.

21. Except to aver that S-L lacks sufficient knowledge or information to form a belief as to the truth of the allegations relating to the amount of hourly compensation that Plaintiff received from J&M Mode Distribution, LLC or that any employee or contractor of any IBO entity with which S-L contracts receives, S-L denies the allegations in Paragraph 21 of the Complaint.

22.     Denied.

**CLASS/COLLECTIVE ALLEGATIONS**

23.     Except to admit that Plaintiff purports to bring his FLSA claims on behalf of the stated putative collective of individuals, S-L denies the allegations in Paragraph 23, denies that collective treatment is appropriate, and denies that Plaintiff or those that he seeks to represent are entitled to any relief.

24.     Except to admit that Plaintiff purports to bring his NCWHA on behalf of the stated putative class of individuals, S-L denies the allegations in Paragraph 24, denies that class treatment is appropriate, and denies that Plaintiff or those that he seeks to represent are entitled to any relief.

25.     Denied.

26.     Denied, including all subparts therein.

**COUNT I – FLSA – FAILURE TO PAY MINIMUM WAGE**

27.     S-L incorporates its responses above to the previous allegations as though fully set forth herein.

28.     The allegations in Paragraph 28 of the Complaint constitute conclusions of law to which no response is required.

29.     S-L denies the allegations in Paragraph 29 of the Complaint as they pertain to Plaintiffs and the collective/class he purports to represent.

30.     The allegations in Paragraph 30 of the Complaint constitute conclusions of law to which no response is required.

31.     The allegations in Paragraph 31 of the Complaint constitute conclusions of law to which no response is required.

32.     Denied.

## COUNT II – FLSA – FAILURE TO PAY THE OVERTIME PREMIUM

33.     S-L incorporates its responses above to the previous allegations as though fully set forth herein.

34.     The allegations in Paragraph 34 of the Complaint constitute conclusions of law to which no response is required.

35.     S-L denies the allegations in Paragraph 35 of the Complaint as they pertain to Plaintiffs and the collective/class he purports to represent.

36.     Denied.

## COUNT III – NCWHA – ILLEGAL WAGE DEDUCTIONS

37.     S-L incorporates its responses above to the previous allegations as though fully set forth herein.

38.     S-L is filing herewith a Motion to Dismiss Plaintiff's NCWHA claims and, therefore, no response is required to Paragraph 38 of the Complaint.  To the extent a response is required, and without waiving its right to seek the relief requested in its Motion to Dismiss, S-L avers that the allegations in Paragraph 38 of the Complaint constitute conclusions of law to which no response is required.

39.     S-L is filing herewith a Motion to Dismiss Plaintiff's NCWHA claims and, therefore, no response is required to Paragraph 39 of the Complaint.  To the extent a response is required, and without waiving its right to seek the relief requested in its Motion to Dismiss, S-L denies the allegations in Paragraph 39 of the Complaint.

## PRAYER FOR RELIEF

S-L denies that Plaintiff or those he purports to represent are entitled to any type of remedy, relief, or damages in this action, including any relief requested in Plaintiff's Prayer for Relief and/or its subparts (a) through (e).

6

**JURY DEMAND**

S-L acknowledges that Plaintiff purports to demand a trial by jury, but denies he is entitled to a jury trial.

**GENERAL DENIAL**

S-L denies each and every allegation in the Complaint that has not otherwise been specifically admitted herein.

**RESERVATION OF RIGHTS**

S-L reserves the right to amend this Answer and Separate Defenses, including its responses to the allegations of the Complaint, and to add any and all additional defenses as they become known through discovery or investigation.

**SEPARATE DEFENSES**

S-L asserts the following defenses without conceding that it bears the burden of proof as to any of the following defenses:

1.      The Complaint fails, in whole or in part, to state a claim upon which relief can be granted for Plaintiff and/or some or all of the entities/individuals that he purports to represent.

2.      The claims of Plaintiff and/or the claims of some or all of the individuals/entities that he purports to represent are barred, in whole or in part, by the applicable statutes of limitations.

3.      The claims of Plaintiff and/or the claims of some or all of the individuals/entities that he purports to represent are barred, in whole or in part, to the extent that such claims have been released, waived, discharged, and/or abandoned.

4.      The claims of Plaintiff and/or the claims of some or all of the individuals/entities that he purports to represent are barred, in whole or in part, by the equitable doctrines of res judicata, collateral estoppel, judicial estoppel, and/or by any other applicable doctrine of preclusion or estoppel.

5.      The claims of Plaintiff and/or the claims of some or all of the individuals/entities that he purports to represent are barred, in whole or in part, because they knowingly submitted to and acquiesced in the obligations and relationship set forth in their Distributor Agreements, from which they have received and accepted financial benefits.

6.      The claims of Plaintiff and/or the claims of some or all of the individuals/entities that he purports to represent are barred, in whole or in part, because Plaintiff and/or some or all of these individuals lack standing to seek some or all of the requested relief.

7.      The claims of Plaintiff and/or the claims of some or all of the individuals/entities that he purports to represent are barred, in whole or in part, because they have not sustained any injury or damage by reason of any act or omission of S-L.

8.      The actions or omissions alleged in the Complaint as to Plaintiff and/or some or all of the individuals/entities that he purports to represent did not constitute a willful violation of any law.

9.      If S-L did violate the FLSA and/or NCWHA as to Plaintiff or some or all of the individuals/entities that he purports to represent, although such is denied, the act(s) or omission(s) giving rise to the such violation(s) were in good faith and S-L has had reasonable grounds for believing that the act(s) or omission(s) were not a violation of the FLSA and/or NCWHA.

8

10.     Some or all acts or omissions complained of on the part of S-L by Plaintiff and/or some or all of the entities/individuals that he purports to represent were undertaken in conformity with, and in reliance on, a written administrative regulation, order, ruling approval, or interpretation of the United States and/or state Department of Labor, or an administrative practice or enforcement policy of such agency.

11.     Plaintiff and/or some or all of the entities/individuals that he purports to represent fail to allege facts sufficient to support an award of liquidated damages against S-L.

12.     Even if Plaintiff and/or some or all of the entities/individuals that he purports to represent were employees of S-L, which is expressly denied, the FLSA claims of Plaintiff and/or the FLSA claims of some or all of the individuals/entities that he purports to represent are barred, in whole or in part, because Plaintiff and/or some or all of the individuals/entities that he purports to represent were at all relevant times exempt from the overtime requirements of the FLSA pursuant to, *inter alia*, the "outside sales," "executive," "combination," and/or the Motor Carrier Act overtime exemptions.

13.     The NCWHA claims of Plaintiff and/or the NCWHA claims of some or all of the entities/individuals that he purports to represent are barred, in whole or in part, by the preemptive effect of the Federal Aviation Administration Authorization Act and/or the Motor Carrier Act.

14.     To the extent that Plaintiff and/or some or all of the entities/individuals that he purports to represent seek benefits under the NCWHA, such claims are governed and preempted by the Employee Retirement Income Security Act (ERISA).

15.     The claims of Plaintiff and/or the claims of some or all of the entities/individuals that he purports to represent are barred, in whole or in part, by the *de minimis* doctrine.

9

16.     The claims of Plaintiff and/or the claims of some or all of the entities/individuals that he purports to represent are barred, in whole or in part, as to all hours allegedly worked of which S-L lacked actual or constructive knowledge.

17.     The claims of Plaintiff and/or the claims of some or all of the entities/individuals that he purports to represent are barred to the extent that they concern hours during which they were engaged in activities that were preliminary or postliminary to their principal job activities or otherwise not compensable (e.g., when they were engaged in personal activities).

18.     The claims of Plaintiff and/or the claims of some or all of the entities/individuals that he purports to represent are offset by any amounts owed to S-L, including but not limited to overpayments.

19.     The claims of some or all of the entities/individuals that Plaintiff purports to represent are barred to the extent that they are subject to mandatory dispute resolution and arbitration.

20.     To the extent the Complaint seeks equitable relief (e.g., via its Prayer for "such other relief as the Court deems just and proper"), Plaintiff and/or some or all of the individuals/entities that he purports to represent are not entitled to equitable relief insofar as they have an adequate remedy at law.

21.     The claims of Plaintiff and/or the claims of some or all of the entities/individuals that he purports to represent are barred, in whole or in part, because Plaintiff and/or some or all of the entities/individuals that he purports to represent seek to recover duplicative damages based on different theories or arising from the same or similar alleged acts.

22.     The claims of Plaintiff and/or the claims of some or all of the entities/individuals that he purports to represent are barred, in whole or in part, because Plaintiff and/or some or all

10

of the entities/individuals that he purports to represent have not appropriately or adequately mitigated their damages, if any.

23.    The claims of Plaintiff and/or the claims of some or all of the entities/individuals that he purports to represent are subject, in whole or in part, to claims for indemnity.

24.    The NCWHA claims of Plaintiff and/or the NCWHA claims of some or all of the entities/individuals that he purports to represent are barred, in whole or in part, because the alleged "illegal wage deductions" were not taken from "wages" (as defined by the NCWHA) and/or the expenses for some or all of the items for which the alleged "illegal wage deductions" were taken are not "wages" (as defined by the NCWHA).

25.    The NCWHA claims of Plaintiff and/or the NCWHA claims of some or all of the entities/individuals that he purports to represent are barred, in whole or in part, because Plaintiff and/or some or all of the entities/individuals that he purports to represent provided written authorization for the alleged "deductions" pursuant to N.C. Gen. Stat. Ann. § 95-25.8.

26.    The claims of Plaintiff cannot and should not be maintained on a class basis because the claims fail to meet the necessary requirements for certification, including, but not limited to, numerosity, commonality, typicality, adequacy, predominance, and superiority.

27.    The claims of Plaintiff cannot and should not be maintained on a collective basis because Plaintiff is not similarly situated to some or all of the entities/individuals that he purports to represent for purposes of the FLSA.

28.    The class and collective definitions (i.e., the individuals/entities that Plaintiff purports to represent) are not ascertainable.

29.     Certain interests of the individuals/entities that Plaintiff purports to represent are in conflict with the interest of Plaintiff and other individuals/entities that Plaintiff purports to represent.

30.     Certification of a class and/or collective action would constitute a denial of S-L's due process rights in violation of the Fourteenth Amendment of the United States Constitution.

31.     Plaintiff and/or some or all of the entities/individuals that he purports to represent waived their right to a jury trial over the subject matter of this Complaint.

32.     Plaintiff and/or some or all of the entities/individuals that he purports to represent agreed that a two-year statute of limitations would apply to the claims set forth in the Complaint.

33.     Plaintiff and/or some or all of the entities/individuals that he purports to represent waived their right to seek certain damages set forth in the Complaint.

34.     Without waiving their ability to oppose class/collective certification and expressly asserting their opposition to the propriety of class/collective treatment, if the court does certify a class or collective in this case over S-L's objections, S-L asserts all defenses set forth above against each and every member of the certified class or collective.

35.     S-L, which is not incorporated in North Carolina, and which does not have its principal place of business in North Carolina, is not subject to personal jurisdiction in this Court with respect to the claims of Opt-in Plaintiffs and absent class members who did not purchase, distribute, or sell merchandise in North Carolina, and whose claims for wages against Defendant do not arise from and are not related to conduct by S-L in or directed to North Carolina.

**WHEREFORE**, S-L respectfully requests that the claims asserted against them in Complaint be dismissed, with prejudice, in their entirety and that S-L be awarded its attorneys'

fees and costs incurred in defending this action as well as such other and further relief as the Court may deem just and proper.

## **COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 13, Counterclaim-Plaintiffs S-L Distribution Company, LLC; S-L Distribution Company, Inc.; and S-L Routes, LLC (collectively, "Counterclaim-Plaintiffs")[3] hereby assert these Counterclaims against Counterclaim-Defendants Jared Mode ("Mode"); Roy A. Arpon ("Arpon"); Anthony Sarti ("Sarti"); Beth M. Sturino ("Beth Sturino"); Michael Sturino ("Michael Sturino"); Robert Sturino ("Robert Sturino"); Gregory Jay Auch ("Auch"); Steve Bushnell ("Bushnell"); Patrick Culpepper ("Culpepper"); Richard Ferencak ("Ferencak"); Jed L. Hicks ("Hicks"); Mike Marzurkiewicz ("Marzurkiewicz"); Christopher Robert Ravas ("Ravas"); Robert Wade, Jr. ("Wade"); Kevin Walker ("Walker"); Ryan Douds ("Douds"); Anthony Eardley ("Anthony Eardley"); Anthony S. Eardley ("Anthony S. Eardley"); Larry O. Fritts ("Fritts"); Ron Glass ("Glass"); James G. Jones ("Jones"); John Kilgo, Jr. ("Kilgo"); Curtis Allen Roach ("Roach"); and Steven Wetzel ("Wetzel") (all collectively for purposes of these Counterclaims, "IBO Defendants"). Counterclaim-Plaintiffs incorporate by reference all of the defined terms as set forth in their Answer and Defenses to the Complaint, *supra*.

---

[3] S-L Distribution Company, LLC is the only presently existing entity. In 2013, S-L Routes, LLC was merged into S-L Distribution Company, Inc. In 2016, S-L Distribution Company, Inc. was converted into S-L Distribution Company, LLC. All allegations as to "Counterclaim Plaintiffs" are, with respect to S-L Routes, LLC and S-L Distribution Company, Inc., intended to refer only to the period of times in which those entities were in existence. For ease of reference, however, S-L Distribution Company, LLC, S-L Distribution Company, Inc., and S-L Routes, LLC are collectively referred to herein as "Counterclaim-Plaintiffs" and their collective allegations are provided in the present tense.

13

## Parties

1.      Counterclaim-Plaintiff S-L Distribution Company, LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 1250 York Street, Hanover, PA 17331.

2.      S-L Distribution Company, Inc. was a corporation organized under the laws of the State of Delaware, with its principal place of business at 1250 York Street, Hanover, PA 17331. In 2016, S-L Distribution Company, Inc. was converted into S-L Distribution Company, LLC.

3.      Counterclaim-Plaintiff S-L Routes LLC was a limited liability company organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1250 York St., Hanover, Pennsylvania 17331.  In 2013, S-L Routes, LLC was merged into S-L Distribution Company, Inc. and in 2016, S-L Distribution Company, Inc. was converted into S-L Distribution Company, LLC.

4.      Counterclaim-Defendant Mode is an individual who, on information belief, resides at 5902 Emerald Woods Drive Indian Trial, North Carolina 28079 and who alleges that he "performed [his] work pursuant to [a] Distributor Agreement" with Snyder's-Lance.

5.      Counterclaim-Defendant Arpon is an individual who, on information and belief, resides in the State of Maryland and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

6.      Counterclaim-Defendant Sarti is an individual who, on information and belief, resides in the State of Georgia and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

7.     Counterclaim-Defendant Beth Sturino is an individual who, on information and belief, resides in the State of Illinois and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

8.     Counterclaim-Defendant Michael Sturino is an individual who, on information and belief, resides in the State of Illinois and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

9.     Counterclaim-Defendant Robert Sturino is an individual who, on information and belief, resides in the State of Wisconsin and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

10.     Counterclaim-Defendant Auch is an individual who, on information and belief, resides in the State of North Carolina and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

11.     Counterclaim-Defendant Bushnell is an individual who, on information and belief, resides in the State of North Carolina and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

12.     Counterclaim-Defendant Culpepper is an individual who, on information and belief, resides in the State of Virginia and who alleges by opting in to this case that he/she was a

member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

13. Counterclaim-Defendant Ferencak is an individual who, on information and belief, resides in the State of Pennsylvania and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

14. Counterclaim-Defendant Hicks is an individual who, on information and belief, resides in the State of Virginia and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

15. Counterclaim-Defendant Mazukiewicz is an individual who, on information and belief, resides in the State of Pennsylvania and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

16. Counterclaim-Defendant Ravas is an individual who, on information and belief, resides in the State of North Carolina and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

17. Counterclaim-Defendant Wade is an individual who, on information and belief, resides in the State of Georgia and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

16

18.     Counterclaim-Defendant Walker is an individual who, on information and belief, resides in the State of Pennsylvania and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

19.     Counterclaim-Defendant Douds is an individual who, on information and belief, resides in the State of Pennsylvania and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

20.     Counterclaim-Defendant Anthony Eardley is an individual who, on information and belief, resides in the State of North Carolina and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

21.     Counterclaim-Defendant Anthony S. Eardley is an individual who, on information and belief, resides in the State of North Carolina and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

22.     Counterclaim-Defendant Fritts is an individual who, on information and belief, resides in the State of North Carolina and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

23.     Counterclaim-Defendant Glass is an individual who, on information and belief, resides in the State of Pennsylvania and who alleges by opting in to this case that he/she was a

member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

24.     Counterclaim-Defendant Jones is an individual who, on information and belief, resides in the State of North Carolina and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

25.     Counterclaim-Defendant Kilgo is an individual who, on information and belief, resides in the State of North Carolina and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

26.     Counterclaim-Defendant Roach is an individual who, on information and belief, resides in the State of Georgia and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

27.     Counterclaim-Defendant Wetzel is an individual who, on information and belief, resides in the State of North Carolina and who alleges by opting in to this case that he/she was a member of the collective defined in Paragraph 23 of the Complaint as including those who "worked for Defendants as an IBO."

## Jurisdiction and Venue

28.     This Court has supplemental subject matter jurisdiction over these Counterclaims under Federal Rule of Civil Procedure 13 and 28 U.S.C. § 1367(a) because the Counterclaims arise out of the same transaction or occurrence and are so related to the other claims in this action (over which this Court has original jurisdiction) that they form part of the same case or

18

controversy under Article III of the United States Constitution. Specifically, the claims and Counterclaims in this action all concern Counterclaim-Plaintiffs' and the Counterclaim-Defendants' respective alleged obligations and performance under the respective Distribution Agreements to which Counterclaim-Defendants allege they and Snyder's-Lance were parties.

29. Venue is proper pursuant to 28 U.S.C. § 1391.

**Facts**

30. On or about March 22, 2015, J&M Mode Distribution, LLC (of which Mode is a Member) entered into a Distributor Agreement with S-L Distribution Company, Inc. that set forth the parties' mutual agreement that J&M Mode Distribution, LLC was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit A and is incorporated into these Counterclaims as though fully set forth herein.

31. On or about July 5, 2015, Arpon signed a Distributor Agreement with Snyder's-Lance on behalf of R.A. Distributors LLC (of which Arpon is a Member) that set forth the parties' mutual agreement that R.A. Distributors LLC was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit C and is incorporated into these Counterclaims as though fully set forth herein.

32. On or about November 27, 2016, Sarti signed a Distributor Agreement with Snyder's-Lance on behalf of Siempre Avanti LLC (of which Sarti is a Member) that set forth the parties' mutual agreement that Siempre Avanti LLC was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit D and is incorporated into these Counterclaims as though fully set forth herein.

19

33.     On or about October 6, 2013, Beth Sturino signed a Distributor Agreement with Snyder's-Lance on behalf of MBS Distribution LLC (of which Beth Sturino is a Member) that set forth the parties' mutual agreement that MBS Distribution LLC was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit E and is incorporated into these Counterclaims as though fully set forth herein.

34.     On or about August 13, 2017, Robert Sturino signed a Distributor Agreement with Snyder's-Lance on behalf of Sturino Distributing, LLC (of which Robert Sturino is a Member) that set forth the parties' mutual agreement that Sturino Distributing, LLC was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit F and is incorporated into these Counterclaims as though fully set forth herein.[4]

35.     On or about June 19, 2016, Auch signed a Distributor Agreement with Snyder's-Lance on behalf of Auch Distributions Inc. (of which Auch is President) that set forth the parties' mutual agreement that Auch Distributions Inc. was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit G and is incorporated into these Counterclaims as though fully set forth herein.

36.     On or about March 25, 2012, Bushnell signed a Distributor Agreement with Snyder's-Lance on behalf of Bushnell Distributing Inc. (of which Bushnell is President) that set forth the parties' mutual agreement that Bushnell Distributing Inc. was an independent contractor

---

[4] Although the Distributor Agreement lists as a party "Robert Sturino, a corporation (limited liability company), with its offices and principal place of business located at 11212 61st Ave, Pleasant Prarie, WI 53158," the legal name of that entity used by the parties in their dealings was actually "Sturino Distributing"

and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit H and is incorporated into these Counterclaims as though fully set forth herein.

37.    On or about March 2, 2014, Culpepper signed a Distributor Agreement with Snyder's-Lance on behalf of Culpepper Distributors LLC (of which Culpepper is a Member) that set forth the parties' mutual agreement that Culpepper Distributors LLC was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit I and is incorporated into these Counterclaims as though fully set forth herein.

38.    On or about April 15, 2012, Ferencak signed a Distributor Agreement with Snyder's-Lance on behalf of Rich Ferencak Distributing LLC (of which Ferencak is a Member) that set forth the parties' mutual agreement that Rich Ferencak Distributing LLC was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit J and is incorporated into these Counterclaims as though fully set forth herein.

39.    On or about July 20, 2014, Hicks signed a Distributor Agreement with Snyder's-Lance on behalf of JLH Enterprises, Inc. (of which, on information and belief, Hicks is a Member, Officer, Employee and/or Director) that set forth the parties' mutual agreement that JLH Enterprises, Inc. was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit K and is incorporated into these Counterclaims as though fully set forth herein.

40.    On or about March 4, 2012, Mazurkiewicz signed a Distributor Agreement with Snyder's-Lance on behalf of M&M Imports, Inc. (of which Mazurkiewicz is President) that set forth the parties' mutual agreement that M&M Imports, Inc. was an independent contractor and

21

would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit L and is incorporated into these Counterclaims as though fully set forth herein.

41.     On or about January 29, 2012, Ravas signed a Distributor Agreement with Snyder's-Lance on behalf of Ravas Distribution Inc. (of which Ravas is President) that set forth the parties' mutual agreement that Ravas Distribution Inc. was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit M and is incorporated into these Counterclaims as though fully set forth herein.

42.     On or about May 28, 2017, Wade signed a Distributor Agreement with Snyder's-Lance on behalf of BK3 Distributors, LLC (of which Wade is a Member) that set forth the parties' mutual agreement that BK3 Distributors, LLC was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit N and is incorporated into these Counterclaims as though fully set forth herein.

43.     On or about May 20, 2012, Walker signed a Distributor Agreement with Snyder's-Lance on behalf of KW Distributorships, Inc. (of which Walker is President) that set forth the parties' mutual agreement that KW Distributorships, Inc. was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit O and is incorporated into these Counterclaims as though fully set forth herein.

44.     On or about January 15, 2012, Douds signed a Distributor Agreement with Snyder's-Lance on behalf of Ryan Douds LLC (of which Douds is a Member) that set forth the parties' mutual agreement that Ryan Douds LLC was an independent contractor and would provide services under the contract as such. That Distributor Agreement is attached hereto as Exhibit P and is incorporated into these Counterclaims as though fully set forth herein.

45.     On or about March 18, 2012, Anthony Eardley signed a Distributor Agreement with Snyder's-Lance on behalf of A&V Snacks, Inc. (of which Anthony Eardley is President) that set forth the parties' mutual agreement that A&V Snacks, Inc. was an independent contractor and would provide services under the contract as such.  That Distributor Agreement is attached hereto as Exhibit Q and is incorporated into these Counterclaims as though fully set forth herein.

46.     On or about March 25, 2012, Fritts signed a Distributor Agreement with Snyder's-Lance on behalf of Fritts Distributing LLC (of which Fritts is a Member) that set forth the parties' mutual agreement that Fritts Distributing LLC was an independent contractor and would provide services under the contract as such.  That Distributor Agreement is attached hereto as Exhibit R and is incorporated into these Counterclaims as though fully set forth herein.

47.     On or about May 6, 2012, Glass signed a Distributor Agreement with Snyder's-Lance on behalf of Ron Glass Distribution LLC (of which Glass is a Member) that set forth the parties' mutual agreement that Glass Distribution LLC was an independent contractor and would provide services under the contract as such.  That Distributor Agreement is attached hereto as Exhibit S and is incorporated into these Counterclaims as though fully set forth herein.

48.     On or about January 29, 2012, Jones signed a Distributor Agreement with Snyder's-Lance on behalf of Christian Way Distributing LLC (of which Jones is a Member) that set forth the parties' mutual agreement that Christian Way Distributing LLC was an independent contractor and would provide services under the contract as such.  That Distributor Agreement is attached hereto as Exhibit T and is incorporated into these Counterclaims as though fully set forth herein.

49.     On or about March 11, 2012, Kilgo signed a Distributor Agreement with Snyder's-Lance on behalf of 3 Prutt Inc. (of which Kilgo is President) that set forth the parties'

mutual agreement that 3 Prutt Inc. was an independent contractor and would provide services under the contract as such.  That Distributor Agreement is attached hereto as Exhibit U and is incorporated into these Counterclaims as though fully set forth herein.

50.    On or about November 13, 2016, Roach signed a Distributor Agreement with Snyder's-Lance on behalf of Twisted Business LLC (of which Roach is a Member) that set forth the parties' mutual agreement that Twisted Business LLC was an independent contractor and would provide services under the contract as such.  That Distributor Agreement is attached hereto as Exhibit V and is incorporated into these Counterclaims as though fully set forth herein.

51.    On or about February 12, 2012, Wetzel signed a Distributor Agreement with Snyder's-Lance on behalf of Wetzel Pretzel LLC (of which Wetzel is a Member) that set forth the parties' mutual agreement that Wetzel Pretzel LLC was an independent contractor and would provide services under the contract as such.  That Distributor Agreement is attached hereto as Exhibit W and is incorporated into these Counterclaims as though fully set forth herein.

52.    The respective Distributor Agreements confer on the signatories the right to distribute certain of Counterclaim-Plaintiffs' and partner products in a specific geographic territory.  Pursuant to the respective Distributor Agreements, the Counterclaim-Defendants (or their entities) purchase products from Counterclaim-Plaintiffs and, thereafter, sell such products to certain customers located within that geographic territory.  Pursuant to the Distributor Agreement, the Counterclaim-Defendants (or their entities) have retained (and continue to retain) the revenue generated through the operation of their businesses, including, but not limited to, the difference between the prices at which they purchase products from Counterclaim-Plaintiffs and the prices at which they sell those products to customers.

53.    Article 2 of each Distributor Agreement provides:

Through this Agreement, the parties intend to, and do, create an independent contractor relationship between them. . . . Any contrary final determination by any board, court of competent jurisdiction or agency shall entitle either party to immediately declare this Agreement null and void.

*See* Exs. A-V.

54.    Article 2 of each Distributor Agreement also provides that Counterclaim-Plaintiffs are "interested only in the results obtained under this Agreement" and that the IBO Defendant (or his/her entity) has the right to determine "[t]he manner and means by which" he/she or it achieves those results. *See* Exs. A-V. The Distributor Agreements further expressly clarify that IBOs enjoy the right to set his/her or its own "schedule, hours worked, [and] sequence of performing work" and determine "when breaks are taken, [which] vehicles and equipment utilized, and other details of performance." *See* Exs. A-V.

55.    Article 2 of each Distributor Agreement also provides that the Counterclaim-Defendants (or their entities) shall hold themselves out as independent contractors and shall be treated as such for tax purposes. *See* Exs. A-V. Accordingly, and as a result of their status as independent contractors, the Counterclaim-Defendants IBO Defendants (or their entities) have deducted on their state and federal tax returns tens of thousands of dollars of expenses associated with running their businesses.

56.    The Distributor Agreements also provide:

[The Distributor] agrees to, and shall, be solely responsible for selecting, providing and maintaining, at its expense, all personnel, supervision, facilities, equipment, including, for example, sales vehicles, and materials as may be needed for the efficient and proper distribution and sale of the Products and the operation of the Territory. [The Distributor] shall be solely responsible for bearing all costs and expenses for its business and operating and servicing the Territory, including, but not limited to, for vehicles, depreciation, maintenance, fuel, oil, tires, repairs, taxes, insurance coverage, licenses, vehicle registration and renewal fees and tolls. [Snyder's-Lance] shall not be liable to [the Distributor] or anyone else for any such costs or expenses.

Exs. A-V.

57.     On information and belief, the Counterclaim-Defendants were owners, officers, executives, members, agents, and/or employees of their respective entities and received compensation from their entities accordingly.

58.     Under the Distributor Agreements and as a result of their status as independent contractors, the Counterclaim-Defendants (or their entities) enjoyed the right to engage in any other businesses or professions, including, but not limited to, holding part-time or full-time employment with other entities or distributing products for other entities.

59.     Further, under the Distributor Agreements and as a result of their status as independent contractors, the Counterclaim-Defendants (or their entities) had the right to (and many did) sell all or parts of their distribution rights and retain the revenue from such sales.

60.     If they were employees of Counterclaim-Plaintiffs, the Counterclaim-Defendants would not have enjoyed many of the rights and benefits set forth above including, but not limited to:  retaining the revenue from the products that they sell; setting their own schedule, hours worked, and sequence of performing work; determining when breaks are taken, which vehicles and equipment are utilized, and other details of performance of their work; taking tax deductions for the costs of operating their businesses; serving as owners, officers, executives, members, agents, and/or employees of their respective entities and receiving compensation accordingly; enjoying the right to engage in other businesses and professions and to sell all or parts of their distribution rights and retain the revenue from such sales.

61.     By their actions, including, but not limited to, their retention of the revenue generated from their independent contractor businesses, the Counterclaim-Defendants acknowledged and agreed to the financial arrangement outlined in the Distributor Agreements.

62.     On March 22, 2018, Mode filed the instant putative class and collective lawsuit alleging that, notwithstanding the terms of J&M Mode Distribution, LLC's Distributor Agreement and the substantial monetary and other benefits he enjoyed therefrom, he (Mode) was treated by Counterclaim-Plaintiffs as an employee rather than as an independent contractor and that he performed work for Snyder's-Lance "pursuant to [the] Distributor Agreement[]."  Compl. ¶ 13.

63.     On April 16, 2018, Mode filed the executed Consent to Join Collective Action forms of Arpon, Sarti, Beth Sturino, Michael Sturino, and Robert Sturino, in which each of those IBO Defendants certified (*inter alia*):  "I hereby consent, agree, and 'opt-in' to become a Plaintiff in this action and to be bound by any judgment by the Court or any settlement approved by the Court."  *See* Dkt. 4-1.

64.      On April 27, 2018, Mode filed the executed Consent to Join Collective Action forms of Auch, Bushnell, Culpepper, Ferencak, Hicks, Marzukiewicz, Ravas, Wade Jr., and Walker, in which each of those IBO Defendants certified (*inter alia*):  "I hereby consent, agree, and 'opt-in' to become a Plaintiff in this action and to be bound by any judgment by the Court or any settlement approved by the Court."  *See* Dkt. 8-1.

65.     On May 7, 2018, Mode filed the executed Consent to Join Collective Action forms of Douds, Anthony Eardley, Anthony S. Eardley, Fritts, Glass, Jones, Kilgo Jr., Roach, and Wetzel, in which each of those IBO Defendants certified:  "I hereby consent, agree, and 'opt-in' to become a Plaintiff in this action and to be bound by any judgment by the Court or any settlement approved by the Court."  *See* Dkt. 9-1.

66.     Through the lawsuit, Counterclaim-Defendants seek additional money (on top of what they or their entities have already received pursuant to their Distributor Agreements) in the

form of "payment of all unpaid minimum and overtime wages" under the FLSA; "reimbursement of all improper pay deductions" under the NCWHA; "liquidated damages and/or penalties available under the FLSA and/or NCWHA;" "prejudgment interest;" and "such other relief as the Court deems just and proper."

67.     In the event that the Court finds that the Counterclaim-Defendants should have been classified as employees of Counterclaim-Plaintiffs (which it should not), the purpose of the Distribution Agreements that the Counterclaim-Defendants (or their entities) executed would be frustrated, such that they should be declared void.

## COUNT I – UNJUST ENRICHMENT

68.     All previous paragraphs are incorporated as though fully set forth herein.

69.     The Counterclaim-Defendants (or their entities) are and/or were enriched as a result of their status as independent contractors, including, but not limited to, by:  retaining the revenue from the products that they sell; setting his/her own schedule, hours worked, and sequence of performing work; determining when breaks are taken, which vehicles and equipment are utilized, and other details of performance of their work; taking tax deductions for the costs of operating their businesses; serving as owners, officers, executives, members, agents, and/or employees of their respective entities and receiving compensation accordingly; enjoying the right to engage in other businesses and professions; enjoying the right to engage in other businesses and professions and to sell all or parts of their distribution rights and retain the revenue from such sales.

70.     Counterclaim-Defendants (or their entities) are and/or were enriched at Counterclaim-Plaintiffs' expense because, pursuant to the financial arrangement defined in the Distributor Agreements, Counterclaim-Defendants' (or their entities') customers pay and/or paid

Counterclaim-Defendants (or their entities) for the products that Counterclaim-Defendants (or their entities) sold. Absent Counterclaim-Defendants' (or their entities') status as independent contractors and the enforceability of their Distribution Agreements, Snyder's-Lance would have retained the rights to sell products to the same customers and thus received revenue from such customers and would have retained the other rights and benefits afforded to Counterclaim-Defendants (or their entities) as independent contractors.

71. As a condition of retaining the benefits received pursuant to their Distributor Agreements, Counterclaim-Defendants (or their entities) agreed that they were independent contractors, were not entitled to wages and would pay the expenses associated with operating their businesses.

72. The Court should find that some or all of the Counterclaim-Defendants (or their entities) have been properly classified as independent contractors and not employees of Counterclaim-Plaintiffs. In the alternative, if the Court concludes that some or all of the Counterclaim-Defendants (or their entities) should have been classified as employees of Counterclaim-Plaintiffs, it should then conclude that the Counterclaim-Defendants' Distributor Agreements are void and/or that Counterclaim-Defendants are and were not governed by the terms of the Distributor Agreement. Upon such a finding, any award(s) to those Counterclaim-Defendants (or their entities) of some or all of the relief sought in the Complaint would unjustly enrich Counterclaim-Defendants at Counterclaim-Plaintiffs' expense. Specifically, those Counterclaim-Defendants would be unjustly enriched by receiving damages for wages available to employees and recovering deductions that independent contractors may not recover while still retaining all of the earnings and benefits they received and enjoyed as a result of their status as

independent contractors which, if not for those Counterclaim-Defendants' (or their entities') independent contractor status, Counterclaim-Plaintiffs would have reserved for themselves.

73.     If the Court finds that some or all of the Counterclaim-Defendants (or their entities) should have been classified as employees of Counterclaim-Plaintiffs (which it should not) and, pursuant to this finding, awards those Counterclaim-Defendants (or their entities) some or all of the relief sought in the Complaint (which it should not), equity and good conscience require that Snyder's-Lance be awarded the value of earnings associated with those Counterclaim-Defendants' (or their entities') independent contractor status in order to offset any award of damages, penalties, liquidated damages, punitive damages, interest, and any other liabilities to which Counterclaim-Defendants may be entitled to as purported employees.  The value of such earnings include, but are not limited to, (1) revenue that those Counterclaim-Defendants (or their entities) generated through the sale of the products that they purchased from Snyder's-Lance; (2) revenue that those Counterclaim-Defendants (or their entities) generated through the sale of all or parts of their distribution rights; (3) compensation that they received for serving as owners, officers, executives, members, agents, and/or employees of their respective entities; and (4) compensation that they received as a result of having the ability to engage other businesses and professions and/or hold part-time or full-time employment while operating under their Distributor Agreements.

## **PRAYER FOR RELIEF**

**WHEREFORE**, in the event that the Court finds that Counterclaim-Defendants (or their entities) should have been classified as employees of Snyder's-Lance (which it should not) and, pursuant to this finding, awards those Counterclaim-Defendants (or their entities) some or all of

the relief sought in the Complaint (which it should not), Defendants respectfully request judgment on its Counterclaims as follows:

a.  a declaratory order stating the Counterclaim-Defendants' Distributor Agreements are null and void;

b.  an award of damages against those Counterclaim-Defendants including (but not limited to) any revenue, profits, or earnings that those Counterclaim-Defendants (or their entities) retained by virtue of their status as independent contractors that exceeds any award of damages to which they may be entitled if the Court deems them to be employees;

c.  an award of its attorneys' fees and costs; and

d.  any such other relief as the Court may deem just and proper.

Dated: May 29, 2018                    Respectfully submitted,

                                       **SMITH MOORE LEATHERWOOD LLP**

                                       */s/ Robert R. Marcus*
                                       Robert R. Marcus
                                       NC State Bar No. 20041
                                       Bridget V. Warren
                                       N.C. State Bar No. 48142
                                       101 North Tryon Street
                                       Suite 1300
                                       Charlotte, NC 28246
                                       Telephone: (704) 384-2600
                                       Facsimile: (704) 384-2800
                                       E-mail:  rob.marcus@smithmoorelaw.com
                                               bridget.warren@smithmoorelaw.com

                                       **MORGAN, LEWIS & BOCKIUS LLP**

                                       Sari M. Alamuddin (*pro hac vice*)
                                       77 West Wacker Drive
                                       Chicago, IL  60601-5094
                                       Tel:    312-324-1158
                                       Fax:    312-324-1001
                                       Email:  sari.alamuddin@morganlewis.com

                                       Paul C. Evans (*pro hac vice*)
                                       Benjamin K. Jacobs (*pro hac vice*)
                                       1701 Market St.
                                       Philadelphia, PA 19103
                                       Tel:    215-963-5000
                                       Fax:    215-963-5001
                                       Email:  paul.evans@morganlewis.com
                                               benjamin.jacobs@morganlewis.com

                                       *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2018, a copy of the foregoing Defendants' Answer, Separate Defenses, and Counterclaims to Plaintiff's Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ Robert R. Marcus*
Robert R. Marcus