UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00150-RJC-DSC

| | |
|---|---|
| JARED MODE, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| | ORDER |
| S-L DISTRIBUTION COMPANY, LLC, S-L DISTRIBUTION COMPANY, INC., and S-L ROUTES, LLC, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** comes before the Court on several pending motions[1] and the parties' supporting briefs and exhibits: Defendants' Motion to Dismiss Count III of Plaintiff's Complaint, (Doc. Nos. 22–23, 83, 94); Third-Party Defendants' Motions[2] to

---

[1] Plaintiffs' Motion for Conditional Certification of the putative class is also pending before this Court. (Doc. Nos. 109–10). The Court will address and adjudicate it by separate order.

[2] On June 26, 2018, Third-Party Defendants J & M Mode Distribution, LLC, Mason Snacks, LLC, Rich Ferencak Distributing LLC, Siempre Avanti LLC, Wetzel Pretzel LLC, Grunts, LLC, McAlister Distributing, Inc., JJA Distribution LLC, Snack It Now LLC, R.A. Distributors LLC, MBS Distribution LLC, Sturino Distributing LLC, Auch Distributions, Inc., Bushnell Distributing, Inc., Culpepper Distributors LLC, JLH Enterprises, Inc., Ravas Distribution Inc., BK3 Distributors, LLC, KW Distributorships, Inc., Ryan Douds LLC, A&V Snacks, Inc., Fritts Distributing LLC, Ron Glass Distribution LLC, 3 Prutt Inc., Twisted Business, LLC, and Christian Way Distributing LLC filed a Motion to Dismiss S-L's Third-Party Complaints under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 84). On August 8, 2018, Third-Party Defendant M&M Imports, Inc. also filed a Motion to Dismiss Third-Party Complaint, (Doc. No. 103), asserting the same grounds for dismissal as other

1

Dismiss Third-Party Complaints, (Doc. Nos. 84–85, 100, 102–03, 111); and Plaintiffs' Motion to Dismiss Defendants' Counterclaim, (Doc. Nos. 92–93, 99, 101–02). Also before the Court is a Memorandum and Recommendation ("M&R") recommending granting Defendants' Motion to Dismiss Count III of Plaintiffs' Complaint, (Doc. No. 97), to which Plaintiffs have objected, (Doc. No. 104), and Defendants have responded in opposition to Plaintiffs' objections, (Doc. No. 117). Additionally, the Magistrate Judge issued another M&R addressing Third-Party Defendants and Plaintiffs' respective Motions to Dismiss, (Doc. No. 122), which recommended denying both Motions. Plaintiffs and Third-Party Defendants filed a joint Objection, (Doc. No. 125), and Defendants filed a Response in Opposition, (Doc. No. 126). Having been fully briefed, the motions are now ripe for adjudication.

I. BACKGROUND[3]

This is a class/collective action lawsuit centering on Plaintiff Jared Mode's ("Plaintiff") allegation that Defendants S-L Distribution Company, LLC, S-L Distribution Company, Inc., and S-L Rouse, LLC (collectively, "Defendants" or "S-L") intentionally misclassified him and a putative class of Defendants' distributors as independent contractors in violation of federal and state wage and hour laws.

S-L collectively manufactures and distributes snack foods to retail stores in

---

Third-Party Defendants previously made and incorporating by reference the Memorandum of Law in Support of their Motion to Dismiss Third-Party Complaints filed by other Third-Party Defendants, (Doc. No. 85).

[3] This Part is largely drawn from the facts and procedural history laid out in the Magistrate Judge's Memoranda and Recommendations, (Doc. Nos. 97, 122), to which no objection was made.

North Carolina and other states. (Doc. No. 1: Compl. ¶ 10). Plaintiff Jared Mode is a member of J&M Mode Distribution, LLC ("J&M"), a North Carolina limited liability company, and worked as an "Independent Business Operator" ("IBOs"). (Id. ¶ 12; Doc. No. 26: Defs.' Third-Party Compl. Against J&M ¶ 2). S-L entered into similar Distributor Agreements ("Agreements") with various distribution companies of which the putative class are principals, officers, and/or employees. (See, e.g., Doc. No. 23-1: Distributor Agreement between S-L and J&M). These Agreements expressly state that the distribution companies are independent contractors and further provide that in the event a court finds the parties did not have an independent contractor relationship, either party would be entitled to declare the Agreements null and void. (Id. at 2; id. at Art. 2A).

Pursuant to these Agreements, S-L granted the distribution companies rights for its snack food products. Under the Agreements, the distribution companies would purchase the products at wholesale from S-L and then sell the products to various stores at a higher price. The distribution companies were responsible for ordering, selling, distributing, and merchandising S-L's products to customers in their respective geographic territories. (Id. at Arts. 3–5, 9). The distribution companies also agreed to be financially responsible for certain aspects of the distributorship, including the costs associated with stale products and product delivery. (Id. at Arts. 3–4, 9). The Agreements provide that the distribution companies control the schedule, hours, and operations of their businesses, claim tax deductions for the expenses associated with running their businesses, and are allowed to distribute

3

other products in addition to S-L's snack foods. (Id. at Arts. 2, 4–5). The distribution companies also agreed to comply with all federal, state, and local laws including wage, overtime and benefit provisions for their employees. (Id. at Art. 2E). The Agreements also contain indemnification provisions. (Id. at Art. 19).

On March 22, 2018, Named Plaintiff Jared Mode filed this action alleging that he and a putative class of S-L's distributors are actually S-L's employees and thus are entitled to various protections under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., and North Carolina's Wage and Hour Act ("NCHWA"), N.C. Gen. Stat. §§ 95-25 et seq. (Doc. No. 1). Plaintiffs allege that S-L violated these wage and hour laws by failing to pay minimum wage and overtime pay under the FLSA and by making illegal wage deductions under the NCWHA. (Doc. No. 1 ¶¶ 27–39).

In response, S-L (i.e., "Defendants" or "Third-Party Plaintiffs") filed an Answer and Counterclaim of unjust enrichment against Plaintiffs in the event that the Court determines that (1) Plaintiffs and/or their distribution companies were misclassified as independent contractors and (2) the Agreements are voided. (Doc. No. 25: Defs.' Answer, Separate Defenses, and Countercl. to Pl.'s Compl. ¶¶ 68–73). Additionally, S-L filed Third-Party Complaints stating claims for indemnification and unjust enrichment against the distribution companies (i.e, "Third-Party Defendants"). (Doc. Nos. 26–47, 52–56: Third-Party Compls.).

Various motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are now pending before the Court. The Court has conducted a de novo review of the motions currently pending, the parties' respective briefs and exhibits, and the M&Rs

4

issued addressing the pending motions.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) and (B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

On a motion to dismiss for failure to state a claim, the Court must accept the factual allegations of the claim as true and construe them in the light most favorable to the nonmoving party. Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010). To survive the motion, the "complaint [or counterclaim] must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff (including a third-party plaintiff) must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff therefore must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

5

## III. DISCUSSION

For the sake of clarity, and because each M&R implicates different legal issues, this Order will address the M&Rs in separate sections.

### A. S-L's Motion to Dismiss Plaintiffs' NCWHA Claim, (Doc. No. 22), and the M&R Recommending Dismissal of Plaintiffs' NCWHA Claim, (Doc. No. 97).

Plaintiffs make two specific objections to the M&R's recommendation that this Court dismiss Plaintiffs' NCWHA claim: the M&R erred by finding that (1) Plaintiffs' income does not meet the NCWHA's definition of "wages" and (2) the deductions made from Plaintiffs' paychecks were primarily for S-L's benefit and, thus, were non-wages under 13 N.C.A.C. 12.0301(d). The Court addresses each objection in turn.

#### 1. The M&R correctly determined that Plaintiffs' income does not meet the NCWHA's definition of wages.

The M&R recommended dismissal of Plaintiffs' NCWHA claim because it determined that Plaintiffs' income does not meet the NCWHA's definition of "wages." Under the NCWHA, the term "wages" is defined as "compensation for labor or services rendered by an employee." N.C. Gen. Stat. § 95-2. Following this Court's precedent as established in Troche v. Bimbo Bakeries Distribution, Incorporated, the M&R recognized that, when a plaintiff purchases goods from a defendant and earns income by selling those goods to third-party retailers at a higher price, the profits earned on that sale fall outside of the NCWHA's definition of "wages." 2015 WL 4920280, at *7 (W.D.N.C. Aug. 18, 2015). The contractual relationship between the plaintiffs and defendant in Troche is identical to the one at issue here; in Troche, the plaintiff was an independent operator who had a distribution agreement with the

6

defendant, Bimbo Foods Bakeries Distribution ("BFBD"). Id. at *1. This agreement "contemplate[d] that [the] [p]laintiff would purchase products from BFBD at a certain price and then re-sell them to various customers at a higher price, earning a profit on the difference." Id. Under the agreement, the plaintiff "was also responsible for maintaining adequate supplies in the stores, rotating product, and removing stale or damaged product." Id.

Here, the terms of Plaintiffs' Distributor Agreements recognize the same relationship between Plaintiffs and S-L:

> As set forth in this Agreement, S-L agrees to sell Products to Distributor, which Products may be sold by Distributor to its customers within the Territory. As permitted by this Agreement, the Products shall be sold to Distributor by S-L on the terms and at the prices established, in writing, by S-L from time to time.
> . . .
>
> Subject to the needs or requirements of its customers, Distributor has full authority to determine the Products and the amount of Products which it may wish to purchase, from time to time, from S-L.
>
> . . .
>
> Distributor shall pay S-L for all Products purchased each week, per the prices and terms on the current Price List, by Friday of the next week. Correspondingly, S-L will settle on a weekly basis with Distributor for any net amounts owed Distributor for sales made of Products by Distributor for which payment is made by Distributor's customers directly to S-L, from which settlement shall be deducted amounts owed by Distributor to S-L, including, but not limited to, purchase costs for the Products, leasing costs, charges, credits or deductions by Distributor's customers, other agreed upon or required charges, and other deductions authorized by Distributor.

(Doc. No. 23-1 at Arts. 4A, 4C, 10A).[4]  Additionally, the Distributor Agreement

---

[4] Because Defendants attached the Distributor Agreement to its opening brief in

7

specifies that "S-L is interested only in the results obtained under this Agreement. The manner, means, and methods by which Distributor achieves the results . . . shall be determined solely by Distributor and based upon the Distributor's independent discretion and judgment." (Id. at Art. 2B). Plaintiffs even concede in their Complaint that "[S-L] generally paid Plaintiff and other IBOs based on the volume of food products distributed." (Doc. No. 1 ¶ 18). Thus, just like the plaintiff in Troche, while Plaintiffs performed basic merchandising services under the Distributor Agreement,[5] their compensation was solely based on the volume of goods they purchased from S-L and then resold to third parties at a higher price. In fact, Plaintiffs admitted in a filing submitted after the M&R was issued that they "receive[d] [their] revenue directly from the customers and [S-L] [has] no involvement in that transaction." (Doc. No. 101 at 6).

The answer to whether Plaintiffs' income meets the NCWHA's definition of "wages" in the present case is perhaps even clearer than the identical question posed in Troche. In Troche, the defendant made payments to the individual plaintiff, who

---

support of its Motion to Dismiss, and because the Distributor Agreement is referred to in the Complaint and is central to Plaintiffs' claims, the Court may properly consider the Distributor Agreement in deciding the instant Motions. Adams v. Substitute Tr. Servs., Inc., No. 3:17-cv-00519, 2018 WL 1612207, at *1 (W.D.N.C. Apr. 3, 2018) ("If a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). Additionally, the Court uses language from the Distributor Agreement between S-L and J&M as illustrative of the language contained in other Distributor Agreements between S-L and Third-Party Defendants.
[5] For example, J&M agreed to be financially responsible for certain aspects of running its distributorship, including the costs associated with stale product and product delivery. (Doc. No. 23-1 at Art. 9)

8

was a party to the operative agreement. Here, on the other hand, the Distributor Agreements were between Plaintiffs' employers—the distribution companies, corporate entities—and S-L. (Doc. No. 23-1 at 2). Plaintiffs were not parties to the Distributor Agreements in their individual capacity, and under the Distributor Agreements, S-L made payments to the corporate distribution entities, not to Plaintiffs directly. (Id. at Art. 5E ("Distributor agrees to, and shall, bear all costs and expenses associated with the employment or retention of [its personnel], including, but not limited to, wages, overtime, salaries . . . .")). Moreover, the Distributor Agreements expressly provide that "neither [Distributor] nor its employees will receive from S-L any benefits of the type typically provided to an employee, including . . . wages . . . ." (Id. at Art. 25B). Accordingly, S-L did not compensate Plaintiffs for their "labor and services," and therefore, their income does not constitute "wages" under the NCWHA.

The fact that Troche was decided at summary judgment does not make dispositive resolution here premature. The M&R correctly recognized that the Court in Troche based its determination "exclusively" on the Amended Complaint and not on any evidence developed during discovery. (Doc. No. 97 at 4). Therefore, Troche's reasoning applies "with equal force" to the instant Motion, and the Court need not delay dismissal of Plaintiffs' NCWHA claim until the summary-judgment stage. Clehm v. BAE Sys. Ordinance, Inc., No. 7:16-CV-0012, 2016 WL 3982605, at *3 (W.D. Va. July 22, 2016) ("Although Blair was decided on summary judgment, its reasoning

9

applies with equal force to the present case, pending on a motion to dismiss . . . .").[6]

Next, Plaintiffs argue that applying Troche to the present case was erroneous because the plaintiffs in Troche did not have a viable FLSA claim before the Court, unlike Plaintiffs have here. While North Carolina courts look to the FLSA for guidance in interpreting the NCWHA, Garcia v. Frog Island Seafood, Inc., 644 F. Supp. 2d 696, 707 (E.D.N.C. 2009), the laws are not so inextricably intertwined that claims under the respective laws automatically rise and fall together. When a plaintiff brings NCWHA and FLSA claims for different underlying violations, the claims must be analyzed separately and distinctly. See, e.g., Hanson-Kelly v. Weight Watchers Int'l, Inc., No. 1:10-cv-65, 2011 WL 2689352, at *2 (M.D.N.C. July 11, 2011). Here, Plaintiffs allege that S-L violated the FLSA by failing to pay them the federal minimum wage and overtime premium. In contrast, Plaintiffs base their NCWHA claim on the allegation that S-L made illegal deductions to the pay Plaintiffs received without first obtaining any authorizations. Accordingly, Plaintiffs allege distinct violations of law under the FLSA and NCWHA.

> 2. **The M&R correctly determined that the challenged deductions are non-wages under the NCWHA and its regulations.**
>
> Plaintiffs' second objection challenges the M&R's finding

---

[6] Cf. Ferrell v. City of Charlotte, No. 3:14-CV-47, 2015 WL 13604391, at *4 (W.D.N.C. Mar. 31, 2015) ("While the Motion before this Court is one for summary judgment rather than a motion to dismiss under Rule 12(b)(6), Judge Whitney's conclusions are directly applicable to this case."); see also Fleet v. CSX Intermodal, Inc., No. CV 17-3562, 2017 WL 6520535, at *4 (E.D. Pa. Dec. 20, 2017) ("Although both opinions cited were decided at the summary judgment stage, we find the propositions applicable at the motion to dismiss stage.").

10

that the deductions at issue in this case are non-wages under 13 N.C.A.C. § 12.0301(d) because they were primarily for Defendants' benefits. The NCWHA prohibits employers from making deductions to the pay of its employees without first obtaining "a written authorization from the employee which is signed on or before the payday for the pay period from which the deduction is to be made indicating the reason for the deduction." N.C. Gen. Stat. § 95-25.8(2). Such authorizations must be "(1) written; (2) signed by the employee on or before the payday for the pay period for which the deduction is made; (3) show the date of signing by the employee; and (4) state the reason for the deduction. Hyman v. Efficiency, Inc., 605 S.E.2d 254, 258 (2004) (quoting 13 N.C.A.C. 12.0305(b)). These authorizations may either be "specific"—"providing the exact dollar amount or percentage of wages withheld"—or "blanket"—providing "(1) advance notice of the specific amount of the proposed deduction; and (2) a reasonable opportunity of at least three calendar days from the employer's notice of the amount to withdraw the authorization." Id. (citing 13 N.C.A.C. 12.0305(b) and (d)).

The NCWHA separates money into two categories: wages and non-wages. 13 N.C.A.C. § 12.0301(d) details a non-exhaustive list of non-wages:

> Items which are primarily for the benefit of the employer and which will not be computed as wages include but are not limited to: tools and equipment required by the employer; uniforms, where the business requires the employee to wear a unique or customized uniform; transportation charges where it is an incident of and necessary to the employment.

In contrast, wages are "where there is benefit to the employee and the benefit has been received by the employee." 13 N.C.A.C. 12.0301(d). Under this regulation, an

11

employer cannot include the value of items which are required by the employer as wages for calculating an employee's wages for purposes of the NCWHA without obtaining prior authorization to do so. Troche, 2015 WL 4920280, at *7–8. An employer cannot claim a credit for an item that is primarily for the benefit of the employer, like tools, equipment, and uniforms, when calculating the employee's wages. See Garcia, 644 F. Supp. 2d at 707–08.

Here, Plaintiffs challenge five deductions under the NCWHA: (1) administrative service charges of approximately $40 per week; (2) leased vehicle charges; (3) vehicle loan repayment charges; (4) route loan repayment charges; and (5) charges for stale or unsold product. (Doc. No. 1 ¶ 18). The M&R correctly concluded that, like the deduction for handheld computers in Troche, these deductions were primarily for S-L's benefit and therefore are non-wages under the regulation's non-exhaustive list detailed in 13 N.C.A.C. 12.0301(d). See Troche, 2015 WL 4920280, at *8 ("The costs allegedly diverted from Plaintiff's earnings for expenses related to operating the handheld computer are non-wages as a matter of law, therefore the Plaintiff's NCWHA claim cannot survive . . . ."). Additionally, Defendants' argument that Plaintiffs authorized these deductions is persuasive.[7]

---

[7] The M&R did not address this argument, but that does not preclude the Court from considering the argument now. *See, e.g., Walker v. Berryhill*, No. 117CV00051RJCDSC, 2018 WL 1004753, at *3 (W.D.N.C. Feb. 21, 2018) (Conrad, J.) ("[T]he Court agrees with the Magistrate Judge's recommendation, albeit for a different reason."); *Guseh v. N. Carolina Cent. Univ.*, No. 1:04CV00042, 2006 WL 694621, at *1 (M.D.N.C. Mar. 13, 2006) ("The Court will also adopt the Magistrate Judge's Recommendation as to Plaintiff's claim under the North Carolina Constitution, but for a different reason."). Here, J&M agreed to the challenged deductions through specific authorizations in the Suggested Operating Guidelines

12

In sum, the M&R recommending dismissal of Plaintiff's NCWHA claim, (Doc. No. 97), is well reasoned and in accordance with law. Therefore, this Court **ADOPTS** the M&R and **DISMISSES** Plaintiff's NCWHA claim (Count III of the Complaint).

B. **Plaintiffs' Motion to Dismiss S-L's Counterclaim, (Doc. No. 92), Third-Party Defendants' Motion to Dismiss S-L's Third-Party Complaint, and the M&R Recommending Denial of Both Motions, (Doc. No. 122)**

Plaintiffs and Third-Party Defendants object to the M&R, (Doc. No. 122), recommendation denying their motions to dismiss S-L's Counterclaim against Plaintiffs, (Doc. No. 92), and the complaints against Third-Party Defendants, (Doc. No. 84). (Doc. No. 125).

First, they argue that, because a valid contract existed between the parties, S-L cannot bring a claim for unjust enrichment. Second, they argue that S-L cannot establish the first element of a claim for unjust enrichment because S-L did not confer a benefit on Plaintiffs and/or Third-Party Defendants. Third, they argue that, even if S-L could assert a prima facie case for unjust enrichment and indemnification, the FLSA bars their claims. The Court will address each argument in turn.

1. **S-L permissibly plead claims for unjust enrichment in the alternative.**

---

and the Distributor Agreement. (See Doc. No. 23-2: Suggested Operating Guidelines at p.2 (authorizing weekly administrative service charges and daily leased vehicle charges); Doc. No. 23-1: Distributor Agreement at Art. 10 (authorizing deductions for leased vehicle and route loan repayment charges); Doc. No. 23-1 at Art. 9 (specifying that J&M would bear the loss of stale or out-of-code products)).

13

S-L pleads its unjust enrichment claims in the alternative.[8] Crucial to these claims are predicate findings: that some or all of the Counterclaim-Defendants (or their entities—i.e., Third-Party Defendants) should have been classified as employees of S-L, and therefore that the Distributor Agreements are voidable. (Doc. No. 25 ¶ 72). When a valid contract or agreement exists between the parties, a party cannot also recover on an unjust enrichment claim. Watson Elec. Const. Co. v. Summit Companies, LLC, 587 S.E.2d 87, 92 (N.C. Ct. App. 2003). Plaintiffs and Third Party-Defendants argue that because the Distributor Agreements operate as a valid contract between the parties, S-L's claims for unjust enrichment must fail as a matter of law. However, parties may plead causes of action in the alternative. FMW/MJH at 2604 Hillsborough LLC v. WSA Constr., LLC, No. 3:13-CV-703, 2014 WL 6476187, at *2 (W.D.N.C. Nov. 19, 2014) (explaining that a party may plead unjust enrichment in the alternative even when

---

[8] S-L pleads its claims as follows:

> The Counterclaim-Defendants (or their entities) are and/or were enriched as a result of their status as independent contractors, including, but not limited to, by: retaining the revenue from the products that they sell; setting his/her own schedule, hours worked, and sequence of performing work; determining when breaks are taken, which vehicles and equipment are utilized, and other details of performance of their work; taking tax deductions for the costs of operating their businesses; serving as owners, officers, executives, members, agents, and/or employees of their respective entities and receiving compensation accordingly; enjoying the right to engage in other businesses and professions; enjoying the right to engage in other businesses and professions and to sell all or parts of their distribution rights and retain the revenue from such sales.

(Doc. No. 25 ¶ 69; see e.g., Doc. No. 26 ¶ 32).

14

an agreement exists between the parties), which is precisely what Defendants have done here:

> The Court should find that some or all of the Counterclaim-Defendants (or their entities) have been properly classified as independent contractors and not employees of Counterclaim-Plaintiffs. *In the alternative*, if the Court concludes that some or all of the Counterclaim-Defendants (or their entities) should have been classified as employees of Counterclaim-Plaintiffs, it should then conclude that the Counterclaim-Defendants' Distributor Agreements are void and/or that Counterclaim-Defendants are and were not governed by the terms of the Distributor Agreement. Upon such a finding, any award(s) to those Counterclaim-Defendants (or their entities) of some or all of the relief sought in the Complaint would unjustly enrich Counterclaim-Defendants at Counterclaim-Plaintiffs' expense.

(Doc. No. 25 ¶ 72 (emphasis added); see e.g., Doc. No. 26 ¶ 32). Defendants premise their counterclaim on the Court making two findings: a determination that (1) Plaintiffs and/or their entities were employees rather than independent contractors and (2) the Distributor Agreements are voidable. Therefore, the unjust enrichment claims arise only when and if the Court determines that a valid agreement (i.e., the Distributor Agreements) does not govern the parties' relationship. "Although a *quantum meruit* claim can only prevail 'in the absence of an enforceable, express contract,' TSC Research, LLC v.. Bayer Chemicals Corp., 552 F. Supp.2d 534, 540 (M.D.N.C.2008), dismissal is improper when the existence of such a contract has not been proven by evidence before the court. FMW/MJH, 2014 WL 6476187, at *2. Accordingly, the Court declines to dismiss S-L's unjust enrichment claims on this ground at this stage.

### 2. The issue of conferral of a benefit is an issue of fact.

After establishing that S-L may properly allege unjust enrichment in

15

the alternative, the Court turns now to whether S-L has alleged facts that would plausibly support a claim entitling it to relief. To survive Plaintiff's motion, S-L must articulate facts that, when accepted as true, would show that Defendants have stated a plausible claim. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Under North Carolina law, a prima facie claim for unjust enrichment has five elements:

> First, one party must confer a benefit upon the other party. Second, the benefit must not have been conferred officiously, that is it *must not be conferred by an interference in the affairs of the other party* in a manner that is not justified in the circumstances. Third, the benefit must not be gratuitous. Fourth, the benefit must be measurable. Last, the defendant must have consciously accepted the benefit.

JPMorgan Chase Bank, Nat'l Ass'n v. Browning, 750 S.E.2d 555, 559 (2013) (internal quotation marks and citations omitted). Plaintiffs and Third-Party Defendants challenge the first element. They argue that they purchased these benefits from S-L for good money and S-L's rights in the property and resulting revenue terminated when it accepted Plaintiffs and Third-Party Defendants' payment for their routes.

S-L has pled a non-exhaustive list of the alleged benefits it conferred upon Plaintiffs and Third-Party Defendants due to their independent contractor status.[9]

---

[9] S-L alleges that Plaintiffs and Third-Party Defendants received the following benefits due to their independent-contractor status:

> If they were employees of Counterclaim-Plaintiffs, the Counterclaim-Defendants would not have enjoyed many of the rights and benefits set forth above including, but not limited to: retaining the revenue from the products that they sell; setting their own schedule, hours worked, and sequence of performing work; determining when breaks are taken,

16

The principal benefit conferred upon Plaintiffs and/or their entities appears to be the exclusive right to distribute S-L's products—a benefit which Plaintiffs and/or Third-Party Defendants assert they paid "substantial sums of money to [S-L] to buy that right." (Doc. No. 125: Pls. and Third-Party Defs.' Objections to the M&R at 15). Plaintiffs maintain that, after they (and/or their entities) purchased their routes, "[S-L] forfeited all interest or ownership in the revenue Plaintiffs and/or [their entities] received from their customers." Id. This is disputed and may be developed through discovery.[10]

The claims and facts at issue here are almost identical to Zapata et al. v. Flowers Foods Incorporated, No. 4:16-CV-676, 2016 WL 878349 (S.D. Tex. Dec. 19, 2016), an FLSA case alleging misclassification. There too, Defendants

---

> which vehicles and equipment are utilized, and other details of performance of their work; taking tax deductions for the costs of operating their businesses; serving as owners, officers, executives, members, agents, and/or employees of their respective entities and receiving compensation accordingly; enjoying the right to engage in other businesses and professions and to sell all or parts of their distribution rights and retain the revenue from such sales.

(Doc. No. 25 ¶ 60; see, e.g., Doc. No. 26 ¶ 32).

[10] The exotic-dancer cases which Plaintiffs and Third-Party Defendants cite to argue that dismissal is proper had the benefit of discovery. In those cases, only after discovery did the courts conclude that dismissal of the unjust enrichment claims was proper because the alleged benefits conferred upon the plaintiffs were conferred by third parties, not the defendant employers. See, e.g. Shaw v. Set Enters., Inc., 241 F. Supp. 3d 1318, 1329 (S.D. Fla. 2017); Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 934 (S.D.N.Y. 2013). In fact, in one of the cases, the court orally declined to dismiss the counterclaim of unjust enrichment at the motion-to-dismiss stage without knowing more of the circumstances surrounding the claim, stating that "I just don't see the reason to make that motion at this point given the highly conditional nature of the counterclaim." Hart, Tr. (attached as an exhibit to S-L's Response to Pls. and Third-Party Defs.' Objections to the M&R: Doc. No. 126-1 at 16).

17

asserted a counterclaim involving profits and earnings from the sale of territories. Id. Citing 12(b)(6)'s plausibility standard, the court found that Defendants had sufficiently alleged a claim for unjust enrichment. Id. Accordingly, it denied the plaintiffs' motion to dismiss the defendants' counterclaim of unjust enrichment. Likewise, this Court determines that, under Rule 12(b)(6)'s standard, S-L has sufficiently plead facts to support its unjust enrichment claims.

### 3. The FLSA does not bar S-L's Unjust Enrichment Claims or its Indemnification Claim against Third-Party Plaintiffs at this point in the proceedings.

Finally, Plaintiffs and Third-Party Defendants contend that S-L's claims of unjust enrichment are, at heart, claims for indemnification or set-off. They maintain that the Court should prohibit S-L's claims for unjust enrichment from proceeding because the FLSA bars indemnification claims brought by employers against their employees and third-parties.

Congress enacted the FLSA to regulate the conduct of employers for the benefit of employees. The purpose behind the FLSA is to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general wellbeing of workers." Darveau v. Detecon, Inc., 515 F.3d 334, 343 (4th Cir. 2008) (quoting 29 U.S.C. § 202(a)). The Fourth Circuit has held that "the FLSA simply will not allow" an employer-defendant to plead a counterclaim or third-party complaint against its employee that essentially seeks to indemnify itself against its employee for its own violation of the FLSA. Lyle v. Food Lion, Inc., 954 F.2d 984, 987 (4th Cir. 1992).

18

Plaintiffs and Third-Party Defendants contend that allowing S-L's claims for unjust enrichment and indemnification to proceed would contravene the purpose of the FLSA. But Plaintiffs and Third-Party Defendants miss a major point: to benefit from the protections of the FLSA, the Court must first conclude that Plaintiffs and/or Third-Party Defendants were employees rather than independent contractors—a determination which the Court is not yet ready to make. The Court has not—and cannot today—answer the highly factual inquiry of whether Plaintiffs and/or Third-Party Defendants were misclassified as independent contractors without the benefit of further discovery. Additionally, as the M&R correctly found, the Court is not well positioned to make a determination now on the issue of whether Plaintiffs and Third-Party Defendants are one and the same without further development of the factual record. Taking the facts in the light most favorable to the nonmovant, S-L, it has alleged that Plaintiffs and Third-Party Defendants were independent contractors and thus not entitled to FLSA protections. The Court cannot conclude that S-L is improperly seeking to indemnify itself or seeking a set-off for its own alleged FLSA violations at this procedural posture of the case. To do so would be to put the cart before the horse.

In sum, the Court **DENIES** Plaintiffs' Motion to Dismiss Defendants' Counterclaim, (Doc. No. 92), and Third-Party Defendants Motion to Dismiss Third-Party Complaints, (Doc. No. 84), without prejudice.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED THAT:**

1. The Magistrate Judge's M&Rs, (Doc. Nos. 97, 122) are **ADOPTED**;

2. Defendants' Motion to Dismiss Count III of Plaintiffs' Complaint, (Doc. No. 22) is **GRANTED**. Specifically, Plaintiffs' NCWHA claim is **DISMISSED**;

3. Plaintiffs' Motion to Dismiss Defendants' Counterclaim, (Doc. No. 92), is **DENIED without prejudice**; and

4. Third-Party Defendants' Motion to Dismiss Third-Party Complaints, (Doc. No. 84), is **DENIED without prejudice**.

Signed: March 6, 2019

Robert J. Conrad, Jr.
United States District Judge