UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00150-RJC-DSC

| | |
|---|---|
| JARED MODE, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>S-L DISTRIBUTION COMPANY, )<br>LLC, S-L DISTRIBUTION )<br>COMPANY, INC., and S-L ROUTES, )<br>LLC, )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiffs' Motion for Conditional Certification, (Doc. No. 109), and the parties' associated briefs and exhibits, (Doc. Nos. 109–10, 136–37, 140–41).

## I.  BACKGROUND

This is a class/collective action lawsuit centering on Plaintiff Jared Mode's ("Plaintiff") allegation that Defendants S-L Distribution Company, LLC, S-L Distribution Company, Inc., and S-L Rouse, LLC (collectively, "Defendants" or "S-L") intentionally misclassified him and a putative class of Defendants' distributors as independent contractors in violation of federal wage and hour laws.

S-L collectively manufactures and distributes snack foods to retail stores in North Carolina and other states. (Doc. No. 1 ¶ 10). Plaintiff Jared Mode is a member of J&M Mode Distribution, LLC ("J&M"), a North Carolina limited liability company,

1

and worked as an "Independent Business Operator" ("IBOs"). (Id. ¶ 12; Doc. No. 26 ¶ 2). S-L entered into similar Distributor Agreements ("Agreements") with various distribution companies of which the putative class are principals, officers, and/or employees. (See, e.g., Doc. No. 23-1: Distributor Agreement between S-L and J&M). These Agreements expressly state that the Distribution Companies are independent contractors and further provide that in the event a court finds the parties did not have an independent contractor relationship, either party would be entitled to declare the Agreements null and void. (Id. at 2; id. at Art. 2A).

Pursuant to these Agreements, S-L granted the Distribution Companies rights for its snack food products. Under the Agreements, the Distribution Companies would purchase the products at wholesale from S-L and then sell the products to various stores at a higher price. The Distribution Companies were responsible for ordering, selling, distributing, and merchandising S-L's products to customers in their respective geographic territories. (Id. at Arts. 3–5, 9). The Distribution Companies also agreed to be financially responsible for certain aspects of the distributorship, including the costs associated with stale products and product delivery. (Id. at Arts. 3–4, 9). The Agreements provide that the Distribution Companies control the schedule, hours, and operations of their businesses, claim tax deductions for the expenses associated with running their businesses, and are allowed to distribute other products in addition to S-L's snack foods. (Id. at Arts. 2, 4–5). The Distribution Companies also agreed to comply with all federal, state, and local laws including wage, overtime and benefit provisions for their employees. (Id.

2

at Art. 2E). The Agreements also contain indemnification provisions. (Id. at Art. 19).

On March 22, 2018, Plaintiff Jared Mode filed this action alleging that he and a putative class of Defendants' distributors are actually employees and thus are entitled to various protections under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., and North Carolina's Wage and Hour Act ("NCHWA"), N.C. Gen. Stat. §§ 95-25 et seq. (Doc. No. 1). Plaintiff alleges that Defendants violated these wage and hour laws by failing to pay minimum wage and overtime pay under the FLSA and by making illegal wage deductions under the NCWHA. (Doc. No. 1 ¶¶ 27–39). In response, S-L (i.e., "Third-Party Plaintiff") filed an Answer and Counterclaim of unjust enrichment against Plaintiffs in the event that the Court determines that (1) Plaintiffs and/or their Distribution Companies were misclassified as independent contractors and (2) the Agreements are voided. (Doc. No. 25 ¶¶ 68–73). Additionally, S-L filed Third-Party Complaints stating claims for indemnification and unjust enrichment against the Distribution Companies (i.e, "Third-Party Defendants"). (Doc. Nos. 26–47, 52–56).

On March 6, 2019, the Court dismissed the NCWHA claim and denied Plaintiffs and Third-Party Defendants' respective motions to dismiss S-L's counterclaim and Third-Party Complaint. (Doc. No. 141). Therefore, Plaintiffs now only have FLSA claims pending before this Court. On August 14, 2018, Plaintiffs filed a Motion for Conditional Certification under the FLSA, (Doc. No. 109). The Court has reviewed the parties' briefs and exhibits, (Doc. Nos. 109–10, 136–37, 140–41), and the matter is ripe for adjudication.

3

## II.  FLSA CONDITIONAL CERTIFICATION STANDARD

The FLSA, 29 U.S.C. § 201 et seq., "embodies a federal legislative scheme to protect covered employees from prohibited employer conduct." Houston v. URS Corp., 591 F. Supp.2d 827, 831 (E.D. Va. 2008).  The FLSA allows a plaintiff alleging a violation of the statute to bring suit on his own behalf or on behalf of other employees who are similarly situated.  29 U.S.C. § 216(b). Section 216(b) of the FLSA expressly provides for the procedure for collective actions as follows:

> An action to recover the liability prescribed [under the FLSA] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Id.  Thus, there are two general requirements for the certification of a FLSA collective action: (1) the members of the proposed class must be "similarly situated," and (2) the class members must "opt-in" by filing their consent to suit.  Id.; see also Romero v. Mountaire Farms, Inc., 796 F. Supp.2d 700, 705 (E.D.N.C. 2011).

The term "similarly situated" is not defined in the FLSA and the Fourth Circuit has not provided guidance on how "similarly situated" requirement of § 216(b) should be applied.  Holland v. Fulenwider Enterprises, Inc., No. 1:17-CV-48, 2018 WL 700801, at *2 (W.D.N.C. Feb. 2, 2018).  However, federal district courts in the Fourth Circuit typically follow a two-step approach when deciding whether the named plaintiffs are similarly situated to potential plaintiffs for the purposes of certifying the collective action.  See, e.g., Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d 560, 566 (D. Md. 2012); Romero, 796 F. Supp.2d at 705; Choimbol v. Fairfield Resorts, Inc.,

4

475 F. Supp.2d 557, 562–63 (E.D. Va. 2006).

At the first stage, the court makes a preliminary determination whether to conditionally certify the class based upon the limited record before the court. Romero, 796 F. Supp. 2d at 705. "Consistent with the underlying purpose of the FLSA's collective action procedure, this initial inquiry proceeds under a 'fairly lenient standard' and requires only 'minimal evidence.'" Id. (quoting Choimbol, 475 F. Supp. 2d at 562); see also Romero, 796 F. Supp. 2d at 705 ("The standard for conditional certification is fairly lenient and requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."). The primary focus in this inquiry is whether the potential plaintiffs are "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." De Luna–Guerrero v. The North Carolina Grower's Assoc., 338 F. Supp. 2d 649, 654 (E.D.N.C.2004) (quoting Ellen C. Kearns, The Fair Labor Standards Act, § 18.IV.D.3, at 1167 (1999)). Several courts have reasoned that "conditional certification is not really a certification. It is actually the district court's exercise of its discretionary power, upheld in Hoffmann–La Roche . . . to facilitate the sending of notice to potential class members, and it is neither necessary nor sufficient for the existence of a representative action under the FLSA." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012). Once conditionally certified, the court may authorize plaintiffs' counsel to provide the putative class members with notice of the lawsuit and their right to opt-in. Romero, 796 F. Supp. 2d at 705.

After discovery is virtually complete, and if the defendant files a motion for

decertification, the court proceeds to stage two. Choimbol, 475 F. Supp. 2d at 563. At this stage of the litigation, courts apply a heightened, more fact-specific standard to the "similarly situated" analysis. Id. Once plaintiffs establish the burden of proving that they are "similarly situated," the collective action may proceed to trial. Id. Otherwise, if the court determines that the plaintiffs are not "similarly situated," the class is decertified. Id. The original plaintiffs may then proceed on their individual claims. Id.

## III. DISCUSSION

### A. Conditional Certification Under 29 U.S.C. § 216(b)

Here, Plaintiffs seek to conditionally certify the following class:

> All individuals who, during any time within the past three years, worked pursuant to a Distributor Agreement with S-L Distribution Company, Inc. or any related company other than individuals covered by: (i) the class/collective action settlement in Tavares v. S-L Distribution Co., Inc., 1:13-cv-01313-JEJ (M.D. Pa.); (ii) the class/collective action settlement in Roxberry v. S-L Distribution Company, Inc., 1:16-cv-02009-JEJ (M.D. Pa.); or (iii) the class action settlement in Bankalter v. S-L Distribution Company, Inc., 2017-SU-000549 (Pa. Common Pleas, York County).

(Doc. No. 110 at 1). Plaintiffs allege that S-L misclassified Plaintiffs and their putative class as independent contractors to avoid paying them overtime and minimum wages under the FLSA. To support their contention that they were similarly situated, Plaintiffs have presented evidence that they and their putative class all (1) were intentionally classified as independent contractors by S-L rather than employees; (2) signed and worked pursuant to similar Distributor Agreements; (3) were paid under a common pay policy implemented by S-L; (4) operated under S-L's Suggested Operating Guidelines; (5) shared the same basic characteristics and job

6

tasks; and (6) could be terminated and subject to discipline for failing to comply with S-L's rules and expectations. Plaintiffs have submitted thirty-two declarations showing that IBOs share common characteristics regarding their job duties and work relationship with S-L. (See Doc. Nos. 109-2, 109-3).

In response, S-L argues that the Court should not conditionally certify the class because it contends that, to resolve Plaintiffs' claims, the Court will have to perform individualized, fact-specific inquiries of how each distributor carried out his business, rendering this case unwieldy for class adjudication. S-L highlights factual differences, asserting that significant variability exists as to how IBOs operate. Additionally, S-L makes various arguments based on the merits of the case and the credibility of Plaintiffs. Although the Court notes that Defendants have made strong arguments as to why Plaintiffs were not employees entitled to FLSA protections, the Court finds that these arguments are best left to the second stage of class certification. Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 746 (E.D.N.C. Mar. 1, 2017). In Rosinbaum v. Flowers Foods, Inc., an analogous case involving allegations by bread distributors that they had been misclassified as independent contractors by the defendant, the court noted that "although any of the foregoing issues may be relevant under Schultz[1] in determining finally plaintiffs'

---

[1] In Schultz v. Capital International Security, Inc., 466 F.3d 298, 304 (4th Cir. 2006), the Fourth Circuit annunciated six factors that are instructive in understanding the economic realities for a given relationship between a worker and a business: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the

employee status on the merits, plaintiffs have introduced sufficient contrary evidence as set forth above to warrant a threshold finding that members of the class are similarly situated employees." Id.

As in Rosinbaum, the Court finds that Plaintiffs have presented sufficient evidence to overcome the "fairly lenient standard"—that requires only "minimal evidence"—establishing that Plaintiffs were similarly situated under 29 U.S.C. § 216(b). Long v. CPI Security Systems, Inc., 292 F.R.D. 296, 298 (W.D.N.C. 2013) (quoting Choimbol, 475 F. Supp. 2d at 562). Having considered the Motion for Conditional Class Certification under § 216(b), the Court **GRANTS** Plaintiff's Motion for Conditional Certification.

### B. Appropriate Recipients of Court-Approved Notice

S-L argues that, if the Court finds that some contingent of the putative collective should receive court-approved notice, it should exclude those who have already waived participation in this or any collective action. Some distributors in the proposed class signed Distributor Agreements containing provisions that waived the distributors' right to bring a collective action; instead, these distributors agreed to arbitrate their claims with S-L on an individual basis.[2] Thus, S-L asks this Court to exclude court-facilitated notice to those who have already signed arbitration

---

work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. "No single factor is dispositive[.]" Schultz, 466 F.3d at 304.

[2] See, e.g., Doc. No. 25-3: Siempre Avanti LLC Agmt. Art. 24, at 23–29; Doc. No. 25-6: Auch Distributions, Inc. Agmt. Art. 24, at 23–29; Doc. No. 25-13: BK3 Distributors, LLC Agmt., Art. 24, at 23–29.

8

agreements in their Distributor Agreements. But, S-L's argument ignores what it asks this Court to do in its Counterclaim and Third-Party Complaints against Plaintiffs and their entities:

> The Court should find that some or all of the Counterclaim-Defendants (or their entities) have been properly classified as independent contractors and not employees of Counterclaim-Plaintiffs. In the alternative, if the Court concludes that some or all of the Counterclaim-Defendants (or their entities) should have been classified as employees of Counterclaim-Plaintiffs, *it should then conclude that the Counterclaim-Defendants' Distributor Agreements are void and/or that Counterclaim-Defendants are and were not governed by the terms of the Distributor Agreement.*

(Doc. No. 25 ¶ 72 (emphasis added); see e.g., Doc. No. 26 ¶ 32). It makes little sense to ask the Court to uphold the validity and applicability of some of the Distributor Agreements' arbitration provisions while simultaneously asking the Court to void the Distributor Agreements and/or determine that Plaintiffs were not governed by the Distributor Agreements' provisions in another instance. Because the Court could find at a later stage that the Distributor Agreements between Plaintiffs and S-L were null and void, it is premature—and would be prejudicial—to preclude potential plaintiffs from participating in this lawsuit solely based on arbitration provisions in their Distributor Agreements when those very provisions might ultimately be declared void. Therefore, the Court declines to preclude those distributors who have arbitration agreements in their Distributor Agreements from receiving notice under § 216(b).[3]

---

[3] This decision is consistent with the recent precedential ruling the Fifth Circuit issued that addressed whether a district court should order notice at the conditional certification stage to employees who have already entered into valid arbitration

9

## IV. CONCLUSION

S-L's concerns regarding the certification of Plaintiffs' purported class are better addressed in the later stages of this litigation under a more fact-intensive inquiry. For now, Plaintiffs have met the lenient standard of providing minimal evidence to show that potential Plaintiffs are similarly situated.

**IT IS THEREFORE ORDERED that:**

1. Plaintiffs' Motion for Conditional Certification, (Doc. No. 109), is **GRANTED**. Specifically, the Court conditionally certifies the following FLSA collective:

   > All individuals who, during any time within the past three years, worked pursuant to a Distributor Agreement with S-L Distribution Company, Inc. or any related company other than individuals covered by: (i) the class/collective action settlement in Tavares v. S-L Distribution Co., Inc., 1:13-cv-01313-JEJ (M.D. Pa.); (ii) the class/collective action settlement in Roxberry v. S-L Distribution Company, Inc., 1:16-cv-02009-JEJ (M.D. Pa.); or (iii) the class action settlement in Bankalter v. S-L Distribution Company, Inc., 2017-SU-000549 (Pa. Common Pleas, York County).

---

agreements. In re: JPMorgan Chase & Co., – F.3d –, No. 18-20825 (5th Cir. Feb. 21, 2019) (Attached to Defs.' Notice of Supplemental Authority in Opp'n to Pls.' Mot. for Conditional Certification: Doc. No. 140-1). There, the Fifth Circuit held that "[w]here a preponderance of the evidence shows that the employee has entered into a valid arbitration agreement, it is error for a district court to order notice to be sent to that employee as part of any sort of certification." Id.; (Doc. No. 140-1 at 12). Whereas here, when the Court has yet to determine whether Plaintiffs are employees or whether the Distributor Agreements will be upheld, it would be improper to preclude sending notice to those potential plaintiffs whose Distributor Agreements contained arbitration provisions. Additionally, the Court notes that, in In Re JP Morgan, the putative plaintiffs have already been classified as the defendant's employees from the instigation of that suit. Therefore, the crucial issue which the instant suit turns on—whether S-L intentionally misclassified Plaintiffs as independent contractors to circumvent FLSA requirements—is nonexistent in In re: JP Morgan Chase & Co.

2. S-L shall provide Plaintiffs' counsel the last known names, mailing addresses, and email addresses of all putative collective members; and

3. The Parties shall promptly agree upon appropriate notice and opt-in forms for submission to the Court for approval.

Signed: March 14, 2019

Robert J. Conrad, Jr.
United States District Judge