# EXHIBIT 2

# DISTRIBUTOR AGREEMENT

**THIS DISTRIBUTOR AGREEMENT** ("Agreement") is made and entered into this __22__ day of __April__, __2018__ in Hanover, Pennsylvania, by and between S-L Distribution Company, LLC, a Delaware limited liability company, with its offices and principal place of business located at 1250 York Street, P.O. Box 6917, Hanover, York County, Pennsylvania, 17331 (hereinafter referred to as "S-L"), and __A & S 23 Distribution LLC__, a __Texas__ Limited Liability Company with its offices and principal place of business located at __12705 Rio Nueces Ln.__, __Rosharon__, TX __77583__ (hereinafter called "Distributor") (S-L and Distributor shall hereinafter sometimes jointly be referred to as "parties" or individually as a "party").

## WITNESSETH:

**WHEREAS**, S-L is a snack food wholesale distributor authorized to sell and distribute the Snyder's of Hanover and Lance brands of products and various other brands of snack products throughout an area, which includes the Territory, as hereinafter defined; and

**WHEREAS**, Distributor is an independent sales and distribution company, with the knowledge, experience, facilities, equipment, resources and ability necessary for the successful sales and distribution of snack food;

**WHEREAS**, Distributor desires to acquire, and through a separate agreement has acquired, a specified geographic area and/or specified stores, or other retail outlets, in which to sell and distribute Products, as hereinafter defined, which can be purchased, sold or assigned, subject to the terms and conditions hereinafter set forth; and

**WHEREAS**, the parties agree and acknowledge that Distributor is an independent contractor and business and solely liable for all labor, equipment, materials, costs and expenses necessary and/or incurred in connection with the performance of this Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties mutually agree as follows:

## ARTICLE 1
## DEFINITIONS

A. Authorized Outlets – shall mean those stores or other retail outlets selling to the general public, identified on Schedule "B" attached hereto and made a part hereof, which are located in, and/or make-up, the Territory. Thrift stores, discount direct stores, dollar channel stores, club stores, institutional accounts, food service accounts, drug stores, convenience stores and specialty outlets shall not be deemed to be Authorized Outlets unless specifically designated as an Authorized Outlet on Schedule "B".

B. Authorized Products – shall mean those snack food items now or hereafter sold under the name and trademarks Snyder's of Hanover and/or Lance or other tradenames or trademarks for which S-L has exclusive distribution rights within the Territory and which are identified

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

as "Authorized Products," from time to time, on the Price List. Authorized Products shall not include vend or bulk size products, private label products, products intended for sale as frozen products, products intended for sale to specialty outlets, specialty or seasonal products, stale or out-of-code products or Cross-Dock Products. From time to time, an Authorized Product may be removed from the Price List, may be changed as far as ingredients, packaging or other features, may cease to be sold or distributed by S-L, may have its designation changed from Authorized Product to Other Product or may have its price changed on the Price List.

C.    Cross-Dock Products – shall means any Products sold to a retail outlet for delivery, at the retail outlet's request, directly to its warehouse(s) on, or for placement on, a pallet, or other similar short-term promotion.

D.    Other Products – shall mean those snack food items which are now or hereafter sold and distributed by S-L, other than Authorized Products, and which are listed, from time to time, on the Price List, but are not identified as Authorized Products. Other Products shall also include products produced by manufacturers unaffiliated with S-L, but offered for sale, from time to time, to distributors at various S-L warehouse locations.

E.    Products – shall mean collectively the Authorized Products and the Other Products.

F.    Price List – shall mean that document published by S-L, from time to time, entitled the "National DSD Price List". The Price List identifies products that S-L has available for purchase, from time to time that are manufactured by S-L affiliates, the suggested retail price for each product and the Authorized Products. The Price List is for informational purposes only and does not provide an indication of local product availability or pricing nor of regional or partner brand products or availability. Distributor hereby agrees and understands that the Price List may be changed, from time to time, by S-L. The Price List shall be maintained by S-L and made available to Distributor through the Distributor website portal. For local Product availability and pricing, Distributor should consult with the local S-L warehouse.

G.    Suggested Operating Guidelines – shall mean that document published by S-L, from time to time, entitled "S-L Distribution Company, LLC's Suggested Operating Guidelines". This document sets forth suggested guidelines which can be utilized by Distributor, at its discretion, in operating the Territory, various procedures which may be applicable, from time to time, for doing business with S-L, and also, charges for various services that Distributor may, from time to time, request from, or that may be applicable to services provided by, S-L.

H.    Territory – shall mean that geographic area and/or specific stores or other retail outlets for which Distributor is granted the exclusive right to sell Authorized Products to the Authorized Outlets, and the non-exclusive right to sell Authorized Products to other stores and retail outlets, and to sell Other Products to the Authorized Outlets and other stores and retail outlets, so long as such stores or retail outlets are not expressly excluded from the Territory and/or any sale thereto, in the sole discretion of S-L, does not interfere

Case 3:18-cv-00150-KDB-DSC   Document 515-2   Filed 10/15/19   Page 3 of 39
#NFKW0R9Z0DEQR5v1

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

with any existing commitment made by, or obligation of, S-L. The Territory is more specifically described on Schedule "A" attached hereto and made a part hereof.

## ARTICLE 2
## INDEPENDENT CONTRACTOR

A.  Through this Agreement, the parties intend to, and do, create an independent contractor, business-to-business and customer relationship, by which Distributor may purchase Products from S-L and sell Products to Distributor's customers in the Territory. Nothing herein shall be construed: (i) to be inconsistent with such relationship; (ii) as constituting Distributor, or its employees, as an employee, franchisee, partner, joint venturer or agent of S-L for any purposes whatsoever; or (iii) as authorizing Distributor, or any officer, director, agent or employee of Distributor, to create or assume any obligation or liability in the name of S-L or to bind S-L. Any contrary final determination by any board, court of competent jurisdiction or agency shall entitle either party to immediately declare this Agreement null and void for all purposes.

B.  S-L is interested only in the results obtained under this Agreement. The manner, means and methods by which Distributor achieves these results, including but not limited to, its schedule, hours worked, sequence of performing work, when breaks are taken, vehicles and equipment utilized, and other details of performance, shall be determined solely by Distributor and based upon the Distributor's independent discretion and judgment. S-L will not supervise, control or direct Distributor or Distributor's employees, and Distributor will have no authority to control or direct the performance of any S-L employees.

C.  Whether Distributor realizes profits or suffers losses shall exclusively result from the efforts and skills of Distributor.

D.  Distributor shall obtain and acquire, on its own and at its own cost, all of the skills, instructions, employees, resources, equipment, materials and training that is needed to perform its obligations and services hereunder. S-L shall not be required to, nor shall it, provide Distributor with training or instructions of any type or the reimbursement for any costs.

E.  Distributor is, and shall hold itself out as, an independent contractor and business and shall not be treated as an employee, franchisee, partner, joint venturer or agent of S-L for any federal, state or local tax, social security, workers' compensation or unemployment compensation purposes or for any other purposes whatsoever.

F.  Nothing in this Agreement shall prohibit Distributor from engaging in any other business or profession or selling or distributing any other products.

G.  Neither party shall have any obligation whatsoever to provide any benefits or privileges of any kind or nature to the other or its employees, including, without limitation,

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

overtime payments, pension benefits, fringe benefits, insurance benefits, travel privileges or benefits, health benefits or any other benefits or privileges whatsoever.

## ARTICLE 3
## GRANT OF RIGHTS

A.    Subject to the terms of this Agreement, S-L hereby grants to Distributor the exclusive right to sell Authorized Products to the Authorized Outlets within the Territory.  Distributor's right will continue for as long as S-L continues to distribute Authorized Products in the Territory, unless said rights are sooner sold, assigned or terminated as hereinafter provided.

B.    Subject to the terms of this Agreement, S-L also grants to Distributor the non-exclusive right to sell Authorized Products to other stores and retail outlets within the Territory, and to sell Other Products to the Authorized Outlets and to other stores and retail outlets within the Territory, so long as any such stores or retail outlets are not expressly excluded from the Territory and/or such sale, in the sole discretion of S-L, does not interfere with any existing commitment made by, or obligations of, S-L.

## ARTICLE 4
## PURCHASE/DELIVERY OF PRODUCTS

A.    As set forth in this Agreement, S-L agrees to sell Products to Distributor, which Products may be sold by Distributor to its customers within the Territory.  As permitted by this Agreement, the Products shall be sold to Distributor by S-L on the terms and at the prices established, in writing, by S-L from time to time.

B.    Unless an Authorized Outlet has already negotiated a price for a Product, Distributor may, in its discretion, establish the price at which the Product will be sold to its customers within the Territory.

C.    Subject to the needs or requirements of its customers, Distributor has full authority to determine the Products and the amount of Products which it may wish to purchase, from time to time, from S-L.  Once it determines that it wishes to purchase certain Products, Distributor shall submit an order for the purchase of the Products, in accordance with S-L's then applicable procedures, to S-L, and upon S-L's acceptance of an order, S-L will use its best efforts to fill that order in accordance with S-L's then applicable procedures.  Notwithstanding the foregoing, S-L, in case of strikes, shortages or other unavailability of Products, breakdowns or other causes affecting the availability of Products, reserves the right to fill orders proportionately in accordance with the amount of merchandise available, and S-L shall have no liability or responsibility to Distributor or its customers for the failure of delivery by reason of same.

D.    Distributor shall purchase and pick up its order(s) at S-L's warehouse, or such other reasonable location as S-L may, from time to time, designate.

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

E.     If Distributor determines that the delivery of certain Products by S-L is less than the amount it ordered or contains damaged Products, then Distributor shall promptly notify a representative of S-L, in writing, as to the specific nature of the missing or damaged Products. Furthermore, Distributor shall cooperate with S-L in investigating any such claim and shall provide support therefor.

F.     Distributor recognizes and agrees that, from time to time, certain of the Products may be subject to recall for various reasons by the manufacturer or supplier of the Product. If any recall of a Product should occur, Distributor agrees to and shall cooperate with S-L in regard to the recall and abide with requests, requirements or notices of the manufacturer or supplier of the Product pertaining to such a recall.

## ARTICLE 5
## RESPONSIBILITIES OF DISTRIBUTOR

A.     Distributor acknowledges and agrees the benefits to its business of its participation in this Agreement and Distributor agrees to, and shall, use its best efforts: (i) to develop the full sales potential of the Territory; (ii) to sell Products to Authorized Outlets and other stores and retail outlets within the Territory in accordance with this Agreement; (iii) to sell and promote the Products to achieve the best results possible; (iv) to provide service to Distributors' customers in accordance with good industry practice and as requested by its customers; and (v) to maintain the established reputation and good will of the Products in the marketplace.

B.     Distributor agrees to, and shall, be solely responsible for selecting, providing and maintaining, at its expense, all personnel, supervision, equipment, including, for example, sales vehicles, and materials as may be needed for the efficient and proper distribution and sale of the Products and the operation of the Territory. Distributor shall be solely responsible for bearing all costs and expenses for its business and operating and servicing the Territory, including, but not limited to, for vehicles, depreciation, maintenance, fuel, oil, tires, repairs, taxes, insurance coverage, licenses, vehicle registration and renewal fees and tolls. S-L shall not be liable to Distributor or anyone else for any such costs or expenses.

C.     Distributor acknowledges and agrees that Distributor's providing of services, and selling Products, to its customers creates a direct business relationship between Distributor and its customers and it shall be solely responsible for any and all obligations or liabilities which may arise, or relate to, such services or the selling of the Products. S-L shall not be responsible or liable for the actions or omissions of Distributor or its employees in regard to the services provided, or Products sold, by Distributor to its customers.

D.     Distributor acknowledges and agrees that its customers may impose policies, procedures, requests and requirements upon Distributor relating to the sale, purchase, merchandising and/or delivery of the Products, with which Distributor shall comply, and that these policies, procedures, requests and/or requirements are imposed by the customers and not by S-L. Distributor agrees to, and shall, be solely responsible for meeting, and complying with, the requests, needs, policies, procedures, requests and requirements of

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)
#NFKW0R9Z0DEQR5v1

its customers, including, but not limited to, providing and selling all the Products required, ordered or requested by its customers and providing merchandising services for Products and Cross-Dock Products as may be requested by its customer. Distributor shall be fully reimbursed by S-L for any Cross-Dock Products that it has been requested by its customer, and does, return to S-L.

E. Distributor agrees to, and shall, provide its customers, with a copy to S-L, of its planned schedule for the distribution and sale of Products to each of the customer's locations within the Territory and Distributor agrees to, and shall, promptly adjust the schedule to meet the needs, policies, procedures and requirements of its customers as may change from time to time. If the Distributor changes it schedule, it agrees to, and shall, provide S-L fifteen (15) days written notice of the change and shall provide the amended schedule to its customers with a copy to S-L.

F. Distributor shall exercise its own judgment in making sales to and extending credit to its customers. Distributor shall be responsible for all credit risks involved with such sales except Distributor shall not be responsible for a central bill customer's inability to pay if the customer has been approved by S-L pursuant to Article 10.B.

G. Distributor may employ or retain such persons as it deems necessary to perform this Agreement and service the Territory. All persons so employed or retained by Distributor should be: qualified, licensed and eligible pursuant to all applicable federal, state and local laws, rules and regulations; be properly trained, at Distributor's expense; capable of operating and maintaining all necessary equipment; fully familiar with the terms of this Agreement; and capable of meeting the requirements of Distributor's customers. Distributor acknowledges and agrees that such persons are not, nor shall they be considered, employees of S-L. Furthermore, Distributor agrees to, and shall, bear all costs and expenses associated with the employment or retention of such persons, including, but not limited to, wages, overtime, salaries, employment taxes, worker's compensation coverage, healthcare, retirement and other benefits and insurance coverage.

H. Distributor agrees to, and shall, comply with all federal, state and local laws, rules and regulations applicable to its business and the performance of this Agreement. Among other things, Distributor shall be solely responsible for complying with all wage, overtime, benefit and other employment laws for, and regarding, its employees.

I. Distributor represents and agrees that it is, and shall be throughout the performance of this Agreement, and shall require all of its employees to be, compliant with all applicable immigration laws, including, but not limited to, the "I-9" requirements, 8 U.S.C. §§ 1324, *et seq*. and 8 C.F.R. §§ 274a, *et seq*. Additionally, Distributor agrees to provide S-L upon request with a written representation that it and its employees and employment practices are compliant with all applicable immigration laws, including, but not limited to, the "I-9" requirements, 8 U.S.C. §§ 1324, *et seq*. and 8 C.F.R. §§ 274a, *et seq*., and agrees to provide S-L with all documents and information reasonably necessary to support any such representation or information, including copies of I-9's for it and all of its

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

employees or individuals who perform any work, services or obligations pursuant to, or for, this Agreement.

J.      Distributor represents that it has properly incorporated, registered and licensed its business, which it shall maintain throughout the course of this Agreement.

K.      Distributor agrees to, and shall, acquire and maintain all necessary licenses and permits needed for conducting its business, operating its vehicles and performing this Agreement. Distributor agrees to, and shall, provide valid proof of all such licenses and permits to S-L.

L.      Distributor agrees to, and shall, acquire, and maintain, throughout the course of this Agreement, an employer identification number ("EIN") and shall provide evidence to S-L of the existence of the EIN and the maintenance thereof.

M.      Distributor agrees to, and shall, pay all taxes and fees levied or required in connection with the performance and/or operation of Distributor's business, the performance of this Agreement, and the sale of the Products, including without limitation, sales and use, business, personal property, ad valorem, fuel, occupational, excise, unemployment, FICA and income taxes and any and all other taxes and fees. Distributor agrees to, and shall, separately file all necessary and required tax returns for its business.

N.      Distributor agrees to, and shall, electronically transmit its purchases and any other transactions to S-L in the specific file format that may be required by S-L from time to time. In order to comply with this requirement, Distributor may acquire its own computer system or, at its option, Distributor may utilize a hand-held computer system provided by S-L pursuant to the terms and conditions that may be established, from time to time, by S-L.

## ARTICLE 6
## RESPONSIBILITIES OF S-L

Subject to Article 4.C, S-L shall use its reasonable efforts to make available to Distributor sufficient quantities of Products for sale to Distributor's customers in the Territory and to preserve and develop the marketability of the Products.

## ARTICLE 7
## LOSS/LIMITATION OF AUTHORIZED OUTLET OR AUTHORIZED PRODUCT

A.      S-L and Distributor recognize that the buying patterns and requirements of customers may change from time to time and that such changes may be outside the control of either S-L or Distributor. A retail outlet currently designated as an Authorized Outlet (or the purchasing departments thereof or buyer therefor) may require delivery of Products to a central warehouse or utilization of another channel or means of distribution which would make the continued service of that Authorized Outlet by Distributor, in whole or in part, impossible or impractical, or which may result in Distributor servicing a retail outlet previously designated

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

as an Authorized Outlet which is also receiving Authorized Products through other distribution channels or means. Distributor acknowledges that the risk of loss of an Authorized Outlet, in whole or in part, is one of the hazards of its business.

B. (1) In the event that an Authorized Outlet requires or requests the sale and delivery of an Authorized Product via some other means or channel of distribution, then Distributor's exclusive right to sell and distribute said Authorized Product to such Authorized Outlet shall terminate. If such a termination occurs, S-L agrees to pay Distributor for any lost sales solely in the following manner and Distributor hereby agrees to accept such payment as full and complete payment for the lost sales and the right to sell said Authorized Product to such Authorized Outlet: an amount equal to: (i) if the Territory was purchased directly from S-L, the average weekly sales of the Authorized Product in question by Distributor over the preceding fifty-two (52) weeks to said Authorized Outlet, multiplied by the multiple appearing in S-L's books and records used to establish the value of the Territory at the time that Distributor purchased it from S-L; or (ii) if the Territory was purchased from a third party, the average weekly sales of the Authorized Product in question by Distributor over the preceding fifty-two (52) weeks to said Authorized Outlet, multiplied by the multiple at which Distributor purchased the Territory from the third party unless such multiple is two (2) multiples or more higher than the average multiple then appearing in S-L's records used to establish the value of the territories sold or transferred within the area or market in which the Territory is located during the prior year and if it is, the average multiple for the area or market then appearing in S-L's records, plus two (2) multiples, shall be used. This amount will be paid in fifty-two (52) equal weekly installments in conjunction with Distributor's weekly settlement. In the event that Distributor subsequently regains the exclusive right to sell the Authorized Product in question to such Authorized Outlet within the fifty-two (52) weeks during which these payments are being made by S-L, the payments will be discontinued and S-L shall have no obligation to pay the balance of the payments to Distributor.

(2) If, after such fifty-two (52) week period, Distributor subsequently regains the exclusive right to sell the Authorized Product for which payment was made to Distributor pursuant to the subparagraph above to said Authorized Outlet, Distributor shall promptly reimburse to S-L the amount previously paid by S-L to Distributor for the lost right to sell the Authorized Product in question to such Authorized Outlet less the profit which Distributor would have made during the period that it was unable to sell the Authorized Product in question to the Authorized Outlet which shall be calculated by multiplying the average weekly sales by Distributor of said Authorized Product to such Authorized Outlet over the last fifty-two (52) weeks which it sold the Authorized Product to the Authorized Outlet multiplied by Distributor's average gross profit margin, *i.e.*, the average price at which the Authorized Product was sold by Distributor to said Authorized Outlet minus the average price at which Distributor purchased the Authorized Product from S-L, then multiplied by the number of weeks for which Distributor lost the right to sell such Authorized Product to said Authorized Outlet. Under no circumstances,

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

however, shall S-L owe any monies to Distributor if the profits lost by Distributor during such period exceeds the amount which S-L previously paid Distributor for the lost right to sell the Authorized Product in question to such Authorized Outlet.

C.     In the event that an Authorized Outlet discontinues its operations, or in the event that the Authorized Outlet does not wish to purchase an Authorized Product(s) through any other means or channel of distribution, then notwithstanding anything to the contrary in this Agreement or otherwise, Distributor shall not be entitled to any compensation for the lost sales or other damages attributable to such loss of an Authorized Outlet and/or an Authorized Product.

D.     Distributor hereby agrees not to, nor shall it, assert any claim against S-L, or any other person, whether in tort, contract, equity or otherwise, whether statutory or common law, relating to or arising from:  the loss of an Authorized Outlet, in whole or part; or the manner of, or any change to, the sale or distribution of Authorized Products to an Authorized Outlet.

## ARTICLE 8
## ADDITION OF OUTLETS

A.     Distributor shall not be required to make any additional payment to S-L for the rights to the Territory as a result of any store or retail outlet which may hereafter be developed and added as an Authorized Outlet in the Territory.

B.     Except as otherwise expressly precluded in this Agreement, Distributor agrees to develop other stores and retail outlets for the sale of the Products in the Territory.

## ARTICLE 9
## TITLE/RETURN/SALE OF PRODUCTS

A.     Legal title to, and ownership of, the Products shall pass to Distributor upon the receipt thereof by, or delivery to, Distributor from S-L, whichever occurs first.

B.     Distributor shall not be entitled to return to S-L any Products: (i) which Distributor is unable to sell; (ii) which are distressed, stale or out-of-code; or (iii) which become damaged, due to any cause, after receipt by Distributor, but Distributor shall bear all costs therefor.  Instead, Distributor agrees and shall be entitled to return to S-L only those Products which were damaged before receipt by Distributor, or which, because of improper manufacture, deteriorate in quality and become unfit for sale prior to the coded dates on such Products.  Distributor is solely responsible for the disposition of all damaged, distressed, stale or out-of-code Products.

C.     Distributor agrees to, and shall, protect and enhance the reputation and goodwill of the Products and their consumer reputation and agrees that any damaged, distressed, stale or out-of-code products which are to be disposed of for resale to, or consumption by, human beings shall be clearly and appropriately labeled as damaged, distressed, stale or out-of-code.

Shantal De La Rosa
Shantal De La Rosa (Apr 19, 2018)

D.     Distributor acknowledges and agrees that, from time to time, S-L may offer stales protection or other incentives to Distributor for certain Products to encourage Distributor to purchase and/or sell said Products, which offer shall be subject to acceptance by Distributor. All such offers, to be valid, must be in writing from S-L.

## ARTICLE 10
## SETTLEMENT OF ACCOUNT

A.    (1)    Distributor shall pay S-L for all Products purchased each week, per the prices and terms on the current Price List, by the last day of the following settlement week. Correspondingly, S-L will settle on a weekly basis with Distributor for any net amounts owed Distributor for sales made of Products by Distributor for which payment is made by Distributor's customers directly to S-L, from which settlement shall be deducted amounts owed by Distributor to S-L, including, but not limited to, purchase costs for the Products, leasing costs, charges or credits by Distributor's customers, other agreed upon or required charges, and other charges authorized by Distributor. To the extent that any weekly settlement payment to Distributor is not sufficient to pay all amounts owed to S-L, Distributor shall immediately pay to S-L all remaining amounts so owed. S-L shall have no responsibility to make deductions for, or pay, wages, benefits, health, welfare and pension costs, withholding for income taxes, unemployment insurance premiums, payroll taxes, disability insurance premiums, Social Security taxes, or any other similar charges with respect to Distributor or Distributor's employees.

        (2)    Distributor shall have the ability to review each weekly settlement sheet through whatever means so offered by S-L from time to time. In the event that Distributor believes any information contained in the settlement sheet is inaccurate or incorrect, Distributor shall notify S-L, in writing, within fifteen (15) days of its receipt of the settlement sheet. Distributor's failure to raise any inaccuracies in the settlement sheet within said period of time shall be deemed acknowledgment and acceptance by Distributor that the settlement sheet is an accurate statement of its accounts with S-L and that any charges contained therein were authorized and approved by Distributor.

B.    If Distributor requests central billing for a customer of Distributor or if a customer of Distributor requires central billing, S-L may provide central billing for Distributor for that customer if S-L determines that the customer meets the requirements established by S-L. If S-L provides central billing for such a customer, S-L will credit Distributor's account for the amount of Products sold and invoiced, as supported by documents provided by Distributor to S-L, which reflect actual delivery and sales made in accordance with such customers' requirements. The date of delivery to such a customer shall be the same date as the invoice date. Distributor shall submit and/or mail sales invoices to S-L as may be required, from time to time, by S-L. S-L may cease providing central billing for a customer of Distributor upon written notice to Distributor.

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

C.   Distributor acknowledges and agrees that the weekly account settlements and central billing are solely done at the request of its customers and/or for administrative convenience and accurate accounting of the parties' independent, business-to-business relationship.  Any credits are made with the express authorization and consent of Distributor for payments due or owing to S-L from Distributor that relate to the purchase of Products by Distributor from S-L or for other agreed upon business expenses of Distributor or to a customer(s) of Distributor for agreed upon charges.

D.   All payments to Distributor by S-L shall be by direct deposit into a bank account established by Distributor. Distributor shall provide appropriate routing information to S-L in order to establish direct deposit.

E.   All payments to S-L by Distributor shall be by check, credit card, debit card, or by electronic transfer (including pre-authorized debits).  If Distributor fails to make timely payment in full of any amount owed to S-L or is otherwise in breach of this Agreement, S-L shall not be required to supply or sell Products to Distributor until Distributor has paid the amount owed or cured the breach.

F.   To secure the payment of any indebtedness or liability of Distributor to S-L now or hereafter arising, Distributor hereby grants and conveys to S-L a security interest in this Agreement, in all Products in Distributor's possession, in all of Distributor's accounts receivables for the sale of the Products, in all equipment, inventory, goods and supplies in Distributor's possession and in all proceeds therefrom and further hereby grants and conveys to S-L the rights of a secured party under the Uniform Commercial Code. Distributor further agrees to execute and deliver to S-L, from time to time upon S-L's written request, all documents which S-L may request and deem necessary or proper to protect its interest, lien or encumbrance or otherwise protect the security interests created hereby, including, but not limited to, the subordination of all other liens and/or encumbrances to the security interest created hereby.

G.   To further secure the payment of any indebtedness or liability of Distributor to S-L now or hereafter arising, and to secure all of Distributor's obligations pursuant to this Agreement, the Distributor agrees to, and shall, cause one or more of its officers, directors or shareholders to execute a Personal Guaranty, in a form attached hereto as Exhibit "A," which Personal Guaranty shall be delivered to S-L upon the execution of this Agreement.

## ARTICLE 11
## WHOLESALERSHIP

S-L may authorize other persons, from time to time, to act as S-L's wholesaler (the "Wholesaler") in an area which includes the Territory.  In such event, S-L may, in its sole discretion, assign this Agreement to the Wholesaler upon written notice to Distributor. Distributor hereby consents to such an assignment, agrees that such an assignment shall fully and completely release S-L from any and all liability, damages, claims or expenses arising from or under this Agreement or otherwise and agrees, if requested to do so, to surrender this Agreement

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

in exchange for a new agreement between Distributor and the Wholesaler which will reflect the assignment by S-L, but which shall otherwise generally have the same terms as this Agreement.

## ARTICLE 12
## ASSIGNABILITY/TRANSFER/SURVIVAL

A.      Except as otherwise provided in this Agreement, Distributor (which, for purposes of this Article only, shall include any director, officer, shareholder, estate, executor, successor, permitted assignee or representative of Distributor) shall not sell, assign, transfer, pledge, encumber or otherwise dispose of its interest in this Agreement and/or the Territory, in whole or in part, without the prior written consent of S-L, which consent will not be unreasonably withheld by S-L.

B.      If Distributor desires to sell, assign or transfer all or part of its interest in this Agreement and the Territory, Distributor shall first make a good faith effort to obtain a written bona fide offer from a proposed third party purchaser which offer shall contain all pertinent terms and conditions of the proposed sale to such third party.  Distributor shall furnish a copy of any such offer to S-L in writing.

C.      In the event that Distributor is unable to sell, assign or transfer all or part of its interest in this Agreement and/or the Territory within ninety (90) days of having advertised the proposed sale, and after making a good faith effort to locate a bona fide purchaser, Distributor may offer the Territory, or part thereof, to S-L and S-L shall have the right, but not the obligation, to purchase the Territory or part thereof from Distributor.

D.      S-L shall have fifteen (15) days after receipt of Distributor's written offer and all required and requested information within which to notify Distributor of its decision as to whether it wishes to purchase the Territory and the interest in the Agreement pursuant to the terms of Distributor's offer.

E.      Also, as an express condition of the closing of any such sale, assignment, transfer or conveyance, Distributor hereby agrees to, and does, effective as of the date of such closing, on behalf of itself and its directors, officers, employees, shareholders, agents, representatives, successors and assigns, fully release and forever discharge S-L from any and all rights, claims, costs, expenses (including attorneys' fees and court costs), demands, damages, actions, causes of action, interest, penalties, and other liabilities of every kind and nature, whether known or unknown, whether in contract, tort, equity or otherwise, whether statutory or common law, arising or resulting, directly or indirectly, from or under this Agreement, the ownership of the Territory, or otherwise.  Also, at the closing of such sale and as a condition thereof, Distributor shall require the purchaser to enter into the then current form of this Agreement with S-L.

Shantal De La Rosa
Shantal De La Rosa (Apr 19, 2018)

## ARTICLE 13
## FAILURE TO SERVICE

A.  If Distributor fails to maintain satisfactory services or fails to meet the requirements of its customers within the Territory, to any segment or part of the Territory, to any Authorized Outlet or to any other store or retail outlet within the Territory, and such failure is not remedied within five (5) days after receipt of written notice thereof from S-L, in addition to any other lawful remedies S-L may have under this Agreement or otherwise, S-L may deem the Territory, the segment or part, the Authorized Outlet or the other store or retail outlet within the Territory to be abandoned.

B.  Notwithstanding anything to the contrary contained in this Agreement, Distributor agrees that if S-L deems that Distributor has abandoned the Territory, a segment or part, an Authorized Outlet or other store or retail outlet within the Territory, all rights under this Agreement to the Territory, the segment or part, the Authorized Outlet, or other store or retail outlet within the Territory, shall immediately terminate and revert to S-L.

C.  Also, if S-L determines that the Distributor has abandoned the Territory, a segment or part, an Authorized Outlet or the other store or retail outlet within the Territory, Distributor hereby agrees to and does, effective as of the date of S-L's termination, on behalf of itself and its directors, officers, employees, shareholders, agents, representatives, successors and assigns, fully release and forever discharge S-L from and against any and all rights, claims, costs, expenses (including attorneys' fees and court costs), demands, damages, actions, causes of action, interest, penalties, and other liabilities of every kind and nature, whether known or unknown, whether in contract, tort, equity or otherwise, whether statutory or common law, arising or resulting, directly or indirectly, from or under this Agreement, the ownership of the Territory, or otherwise and pertaining to the abandonment of the Territory, a segment or part, an Authorized Outlet or other store or retail outlet within the Territory.

## ARTICLE 14
## TEMPORARY SERVICE BY S-L

If Distributor is not able to or does not service the Authorized Outlets by reason of short-term illness, emergency, holiday or vacation of its employees, it shall make other adequate provision for service at its own expense.   If Distributor is unable to make such provision on its own, Distributor may request S-L to make sales, on its behalf, to the Authorized Outlets and other stores and retail outlets within the Territory and if S-L, within its sole discretion, agrees to do so, S-L will do so for the account of Distributor.   Distributor shall reimburse S-L for all costs incurred by S-L to provide this service.   Such temporary operation by S-L shall not relieve Distributor of any of the obligations under this Agreement, nor act to cure any default or breach which may exist on the part of Distributor.

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

# ARTICLE 15
# TERMINATION

A.    Distributor may terminate this Agreement as follows:

(1)    Distributor may terminate this Agreement, without cause, upon giving sixty (60) days prior written notice to S-L.  The parties hereto specifically recognize that damage will occur to S-L, which is difficult to quantify, but which would include the costs of providing temporary service for the Territory, in the event that Distributor should terminate this Agreement, without cause, and without providing at least sixty (60) days prior written notice to S-L.  Therefore, in the event of such termination by Distributor, Distributor shall pay to S-L, as liquidated damages, and not as a penalty, the sum of the daily sales average as determined by dividing the average weekly sales of the Products sold by Distributor to its customers in the Territory over the preceding fifty-two (52) weeks by seven (7), multiplied by the Distributor's average gross profit margin, *i.e.*, the average price at which the Products were sold by Distributor to its customers minus the average price at which Distributor purchased said Products from S-L, and then multiplying said sum by the number of days that Distributor failed to give the required notice.

(2)    Distributor may also terminate this Agreement, upon twenty-four (24) hours written notice and S-L shall have no right to cure, after occurrence of any of the following:

(a)    The insolvency of S-L or the institution of insolvency, bankruptcy or similar proceedings by or against S-L;

(b)    A general assignment by S-L for the benefit of its creditors, or a receiver is appointed on account of the insolvency of S-L;

(c)    Any dishonesty, fraudulent conduct or misrepresentation in any of S-L's dealings with Distributor, the Authorized Outlets, retailers or consumers;

(d)    The involvement in any activity which is unsafe or is a health hazard to the public;

(e)    The conviction of S-L or any of its directors or officers of any offense which is punishable by imprisonment or which is a felony; or

(f)    Any actions by S-L which cause, or in the reasonable belief of Distributor are likely to cause, substantial harm to Distributor's business, good will or reputation in the Territory.

(3)    In the event of any other breach of this Agreement or the terms hereof by S-L, Distributor shall provide S-L with five (5) business days written notice of the breach within which time S-L must cure the breach.  If S-L fails to cure the breach within said five (5) day period, this Agreement may be immediately terminated by

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

Distributor without further notice, provided, further, that repeated violations or breaches shall be deemed to constitute substantial harm to Distributor's business. Accordingly, the parties agree that Distributor shall not be obligated to afford S-L the right to cure its breach on more than three (3) occasions during any consecutive twelve (12) month period and that upon any subsequent breach, Distributor may terminate this Agreement upon twenty-four (24) hours written notice without right to cure.

B.   S-L may terminate this Agreement and Distributor's rights with respect to the Territory as follows:

   (1)   S-L may terminate this Agreement and Distributor's rights with respect to the Territory, upon twenty-four (24) hours written notice and Distributor shall have no right to cure, after the occurrence of any of the following:

      (a)   The insolvency of Distributor or the institution of insolvency, bankruptcy or similar proceedings by or against Distributor;

      (b)   A general assignment by Distributor for the benefit of its creditors, or a receiver is appointed on account of the insolvency of Distributor;

      (c)   Any dishonesty, fraudulent conduct or misrepresentation in any of Distributor's dealings with S-L, the Authorized Outlets, retailers or consumers;

      (d)   The performance of this Agreement by Distributor's employees while under the influence of alcohol or illegal drugs;

      (e)   The involvement in any activity which is unsafe or is a health hazard to the public;

      (f)   The conviction of Distributor or any of its directors or officers of any offense which is punishable by imprisonment or which is a felony;

      (g)   Any actions by Distributor which cause, or in the reasonable belief of S-L are likely to cause: substantial harm to S-L's business, goodwill or reputation in the Territory or elsewhere; substantial harm to Distributor's business, goodwill or reputation; or substantial harm to another S-L distributor's business, goodwill or reputation; or

      (h)   The abandonment of the Territory, a segment or part of the Territory, an Authorized Outlet or other store or retail outlet within the Territory.

   (2)   In the event of any other breach of this Agreement or the terms hereof by Distributor, S-L shall provide Distributor with five (5) business days written notice of the breach within which time Distributor must cure the breach to S-L's

Shantal De La Rosa
Shantal De La Rosa (Apr 19, 2018)

#NFKW0R9Z0DEQR5v1

reasonable satisfaction. If Distributor fails to cure such breach within said five (5) day period, this Agreement and Distributor's rights with respect to the Territory may be immediately terminated by S-L without further notice, provided, further, that repeated violations or breaches shall be deemed to constitute substantial harm to S-L's business. Accordingly, the parties agree that S-L shall not be obligated to afford Distributor the right to cure its breach on more than three (3) occasions during any consecutive twelve (12) month period and that upon any subsequent breach, S-L may terminate this Agreement and Distributor's rights with respect to the Territory upon twenty-four (24) hours written notice without right to cure.

(3) In addition, S-L may terminate this Agreement and Distributor's rights with respect to the Territory for other just cause as may arise from time to time including, but not limited to, for business or economic reasons of S-L, or in the event S-L elects to terminate all the distributor agreements within the geographical area of the Territory, upon giving sixty (60) days prior written notice of such termination to Distributor. In the event that S-L so terminates this Agreement and Distributor's rights with respect to the Territory in accordance with the provisions of this paragraph and fails to provide at least sixty (60) days prior written notice to Distributor, S-L shall pay to Distributor, as liquidated damages, and not as a penalty, the sum of the daily sales average as determined by dividing the average weekly sales of the Products sold by Distributor to its customers in the Territory over the preceding fifty-two (52) weeks by seven (7), multiplied by the Distributor's average gross profit margin, *i.e.*, the average price at which the Products were sold by Distributor to its customers minus the average price at which Distributor purchased said Products from S-L, and then multiplying by the number of days that S-L failed to give the required notice.

C. (1) (a) Upon the termination of this Agreement by S-L pursuant to Articles 15B(1) or (2), the Territory and rights of Distributor therein and in this Agreement shall immediately revert to S-L and S-L shall have the right to operate the Territory for its own account. S-L shall also have the right to sell the rights to the Territory at the best price obtainable, after reasonable notice, which sale shall be for the account of Distributor. In the event that S-L is unable to sell the rights to the Territory within ninety (90) days of the effective date of a termination under Articles 15B(1) or (2), after reasonable notice, S-L shall have the right, but not the obligation, to re-purchase the Territory.

(b) In the event that S-L terminates the Agreement pursuant to Article 15B(3), then S-L shall have the obligation to re-purchase the Territory.

(c) If S-L repurchases the Territory from Distributor, S-L agrees to pay Distributor, and Distributor hereby agrees to accept such payment as full and complete payment for the Territory and all rights under this Agreement, an amount equal to: (i) if the Territory was purchased directly from S-L, the average weekly sales of the Products by Distributor to its customers over the preceding fifty-two (52) weeks then multiplied by the multiple appearing in S-L's records used

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

to establish the value of the Territory at the time Distributor purchased it from S-L; or (ii) if the Territory was purchased from a third party, the average weekly sales of the Products by Distributor to its customers over the preceding fifty-two (52) weeks multiplied by the multiple at which Distributor purchased the Territory from a third party unless such multiple is two (2) multiples or more higher than the average multiple then appearing in S-L's records used to establish the value of the territories sold or transferred within the area or market in which the Territory is located during the prior year (provided; however, the calculation to establish the value must include a minimum of three (3) route sales and, if there have been less than three (3) route sales in the area or market in the prior year, then the look back period will be extended month by month until a minimum of three (3) route sales in the area and market are accounted for) and if it is, the average multiple for the area or market then appearing in S-L's records, plus two (2) multiples, shall be used.

(d) If, upon the termination of this Agreement by S-L, the Territory is either sold to a third party or purchased by S-L, Distributor shall promptly execute, acknowledge and deliver to S-L, in a form satisfactory to S-L, such agreements and documents which S-L may reasonably request or is necessary to effectuate the sale or purchase of the Territory. Furthermore, if Distributor fails or refuses to so execute, acknowledge and/or deliver such agreements and/or documents to S-L within ten (10) days of receiving a written request from S-L, Distributor hereby authorizes S-L to, and S-L may, execute, acknowledge and deliver all such agreements and documents on Distributor's behalf as may be necessary to effectuate such sale or purchase of the Territory.

(2) The proceeds from the sale of the Territory as established above, after deducting therefrom any amounts owed by Distributor to S-L, any other amounts previously authorized by Distributor, the reasonable costs incurred by S-L in effecting or attempting to effect the sale of the Territory, and the costs associated with the satisfaction of any outstanding liens or obligations, will be paid to Distributor in exchange for its release, on behalf of itself and its directors, officers, employees, shareholders, agents, representatives, successors and assigns and in a form acceptable to and provided by S-L, of all rights, interests, claims, demands, liabilities, causes of action, interest, penalties, costs and expenses including, but not limited to reasonable attorneys' fees, of every kind and nature, whether known or unknown, whether in contract, tort, equity or otherwise, whether statutory or common law, arising or resulting, directly or indirectly, from or under this Agreement, the sale of the Territory or otherwise. In the event the proceeds from the sale are not enough to pay all amounts owed to S-L plus any outstanding liens or obligations, then the proceeds shall be applied first to the obligations to S-L. Distributor shall remain obligated to, and shall, pay any balance due to S-L as well as any unpaid liens or obligations.

Shantal De La Rosa
Shantal De La Rosa (Apr 19, 2018)
#NFKW0R9Z0DEQR5v1

(3)     Distributor agrees that the termination of this Agreement shall not relieve Distributor of any obligations to S-L accrued as of the effective date of termination or of any outstanding liens or obligations.

(4)     Also, Distributor agrees that if this Agreement is terminated by either Distributor or S-L, Distributor shall return to S-L, within five (5) days after the termination of this Agreement, any property which belongs to S-L.

(5)     Further, Distributor agrees that it shall remain responsible for any stale Products distributed to its customers for two (2) weeks after the termination of this Agreement.

## ARTICLE 16
## TRANSFER FEE

In the event of any sale, assignment or transfer by Distributor, or by S-L for the account of Distributor of all or a portion of the Territory and/or Distributor's rights under this Agreement, Distributor agrees to, and shall, pay a transfer fee as consideration for and payment of S-L's administrative and other activities in connection with such sale, assignment or transfer. Distributor and S-L agree that the amount of the transfer fee shall be equal to five percent (5%) of the total consideration received for such sale, assignment or transfer.

## ARTICLE 17
## SERVICE CHARGES

From time to time Distributor may request that S-L provide it with certain services which may include, but not be limited to, the use and maintenance of computer equipment, the processing of automated settlement and financial reports, and providing various supplies and other services which Distributor may request to support its business. If S-L agrees to provide such services or supplies, the charges therefor will be established by S-L, as set forth in writing, and may be subject to change from time to time at the sole discretion of S-L, but after thirty (30) days written notice to Distributor. Furthermore, Distributor agrees and acknowledges that S-L may deduct the amount of any such charges from any amounts which may be due and owing by S-L to Distributor.

## ARTICLE 18
## TRADEMARKS AND TRADENAMES

A.     Distributor recognizes and agrees that advertising for the Products may affect other distributors, S-L and the manufacturers of the Products. For the protection of the good will of the Products, Distributor, in the sale of the Products, agrees to use only advertising that is supplied or approved by S-L and/or that conforms to the provisions of this Agreement.

B.     Distributor shall not conduct its business under S-L's name, trademarks or tradenames, or the trademarks or tradenames of any of the Products. Distributor further shall make no use of S-L's name, trademarks or tradenames, or the trademarks or tradenames of any of

Shantal De La Rosa
Shantal De La Rosa (Apr 19, 2018)

the Products, for any reason whatsoever, except upon receiving S-L's prior written consent and, on the request of S-L, Distributor shall immediately discontinue the use of, and shall remove from any vehicle or other location, S-L's name, trademark or tradename or the trademark or tradename of any Product. Finally, Distributor hereby disclaims any ownership or other interest whatsoever in S-L's name, trademarks and tradenames and the trademarks and tradenames of the Products and agrees that it shall not claim that any permitted use thereof creates any ownership or other interest by it therein.

C. On the termination of this Agreement, Distributor agrees to and shall immediately discontinue the use of all names, trademarks, tradenames, advertising or anything else that might make it appear that Distributor is still selling the Products or performing pursuant to this Agreement.

## ARTICLE 19
## INSURANCE/INDEMNIFICATION

A. Distributor, at its own cost and expense, agrees to, and shall, obtain and maintain in full force and effect during the term of this Agreement:

(1) Worker's Compensation insurance policy per applicable state statutory requirements and limits;

(2) Commercial General Liability insurance policy written on an occurrence form including but not limited to, premises/operations, products and completed operations and contractual liability relating to Distributor's indemnification obligations set forth in Article 19.B, including, but not limited to, third-party claims, with the following Limits of Liability:

    a. $1,000,000 each occurrence;
    b. $2,000,000 General Aggregate;
    c. $2,000,000 Products/Completed Operations Aggregate;
    d. $100,000 Fire / Physical Damage (any one loss); and
    e. $5,000 Medical Expense (any one person) covering Distributor and its directors, officers and employees; and

(3) Commercial Business Automobile insurance policy, covering any owned, leased or non-owned vehicle with $1,000,000 Combined Single Limit each accident. The automobile insurance acquired by Distributor shall provide coverage on any vehicle which Distributor might use in its operations conducted pursuant to this Agreement, regardless of whether Distributor owns, borrows or leases such vehicle.

S-L Distribution Company, LLC, and its parent company, subsidiaries and affiliates shall be named as additional insureds for both the Commercial General Liability and the Commercial Business Automobile insurance policies required above. For all policies listed above, Distributor shall grant S-L a waiver of subrogation and Distributor's policies shall be primary and non-contributory with respect to any other insurance providing coverage to

Shantal De La Rosa
Shantal De La Rosa (Apr 19, 2018)

S-L.  All required insurance policies shall be written with insurance carriers licensed to do business in the state of Distributor's operations and have a Best's Rating of A or higher with a firm size category of VII or better.  Additionally, Distributor agrees to, and shall, increase the amount of any such coverage, as may be necessary, from time to time, to meet the requirements of its customer(s) and/or to comply with industry practice or standards.

A valid certificate of insurance for all such policies must be presented by Distributor at, or before, the execution of this Agreement and all applicable policies shall be maintained throughout the duration of this Agreement, with any updated certificates to be sent to S-L upon each renewal of the applicable policy.  Each policy must include additional insureds, waiver of subrogation and primary and non-contributory language.  Further, each policy shall provide that it will not be cancelled or materially altered without the insurance company(s) giving S-L at least thirty (30) days prior written notice before any such cancellation or alteration shall become effective.  All certificates of insurance shall be mailed to: S-L Distribution Company, LLC, Attn:  Risk Management, PO Box 6917, Hanover, PA 17331.

Distributor's compliance with these requirements for insurance shall not relieve or decrease the liability of Distributor, in any way, under this Agreement.  Anything to the contrary notwithstanding, the liabilities of Distributor under this Agreement shall survive and not be terminated, reduced or otherwise limited by any expiration or termination of insurance coverages.

B.   Distributor, on behalf of itself and its directors, officers, employees, shareholders, agents, representatives, successor and assigns, assumes all risks and liabilities for, and agrees to and shall, at its sole cost and expense, protect, defend, indemnify, and hold harmless S-L and its predecessors, successors, parents, subsidiaries, affiliates, related and sister companies, and all of their respective past, present and future employees, directors, officers, shareholders, partners, attorneys, representatives, insurers, agents, administrators, heirs, successors and assigns (collectively, the "S-L Releasees") from and with respect to any and all fines, rights, claims, third-party claims, costs, expenses (including reasonable attorneys' fees and court costs), demands, damages, punitive damages, actions, causes of action, suits, injuries, including death, loss of property, interest, penalties and other liabilities of every kind and nature, whether known or unknown, whether in contract, tort, equity or otherwise, whether statutory or common law, caused by, or in any manner arising or resulting, directly or indirectly, from: Distributor's or its employees' actions, omissions or negligence; the performance of this Agreement by Distributor; any breach of this Agreement by Distributor; the operation of Distributor's business; the use or operation of Distributor's vehicles; or a claim by or for any third-party or entity, including but not limited to, any customer of Distributor or any governmental authority.  The above provisions shall further apply to any claims, third-party claims, actions, causes of action, suits, demands or damages brought by, or on behalf of, any employee of Distributor, or anyone directly or indirectly employed by Distributor or anyone for whose acts Distributor may be liable, or responsible, against S-L and/or the S-L Releasees; Distributor expressly waives for itself and its insurers any and all protections afforded by or under any applicable workers' compensation act, but only as is necessary to fully comply with their responsibilities and obligations under these provisions;

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

and the obligations hereunder shall not be limited, in any way, by any limitation on the amount or type of damages, compensation or benefits payable by or for Distributor under any applicable workers' compensation act, disability benefits act, any other employee benefits acts or any insurance.   Each party shall notify the other party, in writing, of any such matters or actions as soon as the party becomes aware thereof.  Unless otherwise required by any applicable insurance policy, S-L shall have the exclusive right to control and direct the legal activities associated with any such action against it through counsel retained by it, but at Distributor's cost and expense.

C.      S-L assumes all risks and liabilities for, and agrees to and shall, at its sole cost and expense, protect, defend, indemnify, and hold harmless Distributor and its directors, officers, employees, shareholders, agents, insurers, representatives, successors and assigns from and against any and all fines, rights, claims, third-party claims, costs, expenses (including reasonable attorneys' fees and court costs), demands, damages, punitive damages, actions, causes of action, suits, injuries, including death, loss of property, interest, penalties and other liabilities of every kind or nature, whether know or unknown, whether in contract, tort, equity or otherwise, whether statutory or common law, caused by, or in any manner arising or resulting, directly or indirectly, from:  injury arising from the consumption of any Product sold by S-L to Distributor, but only if such claim arises solely from the actions of S-L, the Product has not been altered by Distributor or others, Distributor has fully complied with its obligations under this Agreement and provided S-L is promptly notified of such claim and is permitted to assume the defense thereof and to settle same in its discretion and through its own representative or counsel.

## ARTICLE 20
## NOTICES

Except as otherwise provided in this Agreement, any notice or demand required or permitted under this Agreement shall be in writing and shall be deemed properly given:  When personally delivered; twenty-four (24) hours after deposit with a national express delivery service for next day delivery; or seventy-two (72) hours after deposit in the mail, return receipt requested, first class postage pre-paid, if to Distributor, addressed to Distributor at the address above stated in this Agreement or, if to S-L, at the following address:

      S-L Distribution Company, LLC
      Attn: Legal Department (IBO Notice)
      13515 Ballantyne Corporate Place
      Charlotte, North Carolina 28277

      With a copy to:
      S-L Distribution Company, LLC
      Attn: DSD Route Transaction Management (IBO Notice)
      1250 York Street
      PO BOX 6917
      Hanover, PA 17331

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

Either party may designate a new notice address by delivering notice of such change in accordance with this Article 20 and such change shall become effective ten (10) days after delivery. Notwithstanding anything in this Article 20 to the contrary, if Distributor has completed the Adobe Sign email verification, Distributor hereby authorizes S-L to deliver any notice required or permitted under this Agreement to such email address designated by Distributor (as may be amended, from time to time, in accordance with this Article 20) and such notice shall be deemed delivered upon sending to the Distributor-designated email address.

**ARTICLE 21**
**CUSTOMER COMPLAINTS**

Distributor shall receive, and promptly investigate and handle, all complaints received from its customers or prospective customers and in so doing shall seek to protect the goodwill of the Products. All complaints received by Distributor which cannot be readily remedied by Distributor shall be promptly reported, in writing, to S-L and thereafter S-L and Distributor will seek to work jointly together to reasonably remedy any such complaint. In the event that Distributor is unable to receive such complaints, or in the event that Distributor's customers contact S-L directly regarding complaints, then S-L will communicate said complaint to Distributor, so that Distributor may address the complaint as promptly as possible.

**ARTICLE 22**
**USE OF S-L's PLACE OF BUSINESS**

Distributor agrees that it shall not use the property, offices or facilities of S-L to conduct its business or store its equipment or materials.

**ARTICLE 23**
**LIMITED WARRANTIES**

S-L warrants that the Products sold by it to Distributor pursuant to this Agreement are as described on the packages containing such Products. S-L MAKES NO OTHER REPRESENTATION OR WARRANTY OF ANY OTHER KIND, EXPRESS OR IMPLIED, WITH RESPECT TO THE PRODUCTS, WHETHER AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER MATTER WHATSOEVER, ANY SUCH REPRESENTATIONS OR WARRANTIES BEING HEREBY EXPRESSLY EXCLUDED AND WAIVED. S-L DOES NOT AUTHORIZE ANYONE TO MAKE ANY OTHER REPRESENTATION OR WARRANTY EXCEPT AS STATED HEREIN.

**ARTICLE 24**
**DISPUTES/LIMITATIONS ON DAMAGES/CLASS ACTION AND JURY WAIVERS**

A.    Dispute Resolution Process – Exclusive Process.    Distributor and S-L agree that the dispute resolution process set forth below shall be the sole and exclusive method by which any and all Covered Disputes , as hereinafter defined, shall be resolved and decided between Distributor and S-L:

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

(1) <u>Covered Disputes</u>.  Except for Excluded Disputes, as hereinafter defined, Covered Disputes shall include any and all claims, disputes, suits or causes of action between Distributor, its predecessors and/or successors and/or its and their respective past, current and/or future owners, officers, directors, employees, shareholders, members, managers, partners, beneficiaries, administrators, executors, estates, attorneys, insurers, assigns, agents, representatives and/or all business entities in which they have, may have or ever had an ownership interest (collectively, for purposes of this Article, the "Distributor Parties") and S-L, its predecessors and/or successors and/or its and their respective past, current and/or future officers, directors, employees, shareholders, members, managers, partners, subsidiaries, parent companies, insurers, assigns, agents and/or representatives (collectively, for purposes of this Article, the "S-L Parties"), including, but not limited to:  all claims and disputes arising out of or under or in any way relating to this Agreement or any other agreement between the parties, including any claim for a breach or termination thereof, and/or the Territory; and all claims and disputes relating to any allegation of any employment, franchise or other non-independent contractor relationship or misclassification between any of Distributor Parties and any of the S-L Parties, and including, but not limited to, all claims and disputes pertaining to:  contract, tort, defamation, fraud, equity and/or other common law claims, wage and hour claims, pension claims, benefit claims, recovery or reimbursement claims, discrimination, harassment and retaliation claims and claims arising under or relating to any federal, state or local constitution, statute, law or regulation, whether now or hereafter existing.

(2) <u>Excluded Disputes</u>.  The following claims and disputes are not subject to this arbitration: (1) claims relating to the specific performance of this dispute resolution provision; (2) claims or cross-claims relating to contribution, indemnification or subrogation in connection with a claim by a third-party against a Distributor Party and/or a S-L Party; (3) applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration; (4) claims relating to the use or misuse of trade names, trademarks or intellectual property of an S-L Party; (5) claims related to the use or misuse of alleged confidential trade secrets and proprietary business information of an S-L Party; and (6) any claim that is expressly precluded from arbitration by an applicable federal law, statute or regulation.  Further, nothing set forth in this Article waives Distributor's right to file a charge or complaint with, or on behalf of, any federal, state, or local administrative agency if such claim is expressly precluded from arbitration under applicable law and such law is not preempted by the Federal Arbitration Act (9 U.S.C. §§ 1, *et seq.*) ("FAA"); however, any Covered Dispute that is not so precluded must be submitted to dispute resolution in accordance herewith.

(3) <u>Notice of Covered Dispute</u>.  In the event of any Covered Dispute, the party initiating the Covered Dispute must first provide written notice of each Covered Dispute, by mail, to the other party ("Notice").  Distributor shall mail its Notice to:

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

S-L Distribution Company, LLC
Attn: Legal Department (IBO ADR)
13515 Ballantyne Corporate Place
Charlotte, North Carolina 28277

S-L shall mail its Notice to Distributor to the address set forth above in this Agreement.

The Notice must state the claim with sufficient detail to identify the claim as a Covered Dispute.  The providing of the Notice, and the subsequent informal meeting (described below), must occur before a Covered Dispute may proceed to binding arbitration.

(4)     Informal Meeting.  Upon receiving Notice of a Covered Dispute, an authorized representative of S-L and an authorized representative of Distributor shall meet in-person and confer regarding the Covered Dispute, and must make a good faith effort to resolve the Covered Dispute.  The meeting shall be held within fourteen (14) business days of receipt of the Notice, unless mutually agreed, in writing, by Distributor and S-L to hold the meeting at a later date.

(5)     Binding Mutual Arbitration.  If Distributor and S-L are unable to mutually resolve a Covered Dispute through an informal meeting as required by Article 24.A(4), the party initiating the Covered Dispute may then promptly initiate mandatory final and binding arbitration, which shall be the sole and exclusive means to resolve any Covered Dispute after an informal meeting.  This requirement to arbitrate applies with respect to all Covered Disputes, whether initiated by Distributor or S-L.

(6)     Filing for Arbitration.

(a)     To initiate arbitration, Distributor shall file a written demand for arbitration with the American Arbitration Association ("AAA"), on a fully completed, then current AAA Commercial Demand for Arbitration Form ("Demand") along with a copy of the Distributor Agreement and Two Hundred and No/100 Dollars ($200.00), constituting Distributor's portion of the filing fee.  Distributor shall simultaneously send a copy of the Demand to S-L at the following address:

S-L Distribution Company, LLC
Attn: Legal Department (IBO ADR)
13515 Ballantyne Corporate Place
Charlotte, North Carolina 28277

The Demand must be filed with the AAA within the time period provided by the limitations periods set forth below in this Article or the statute of limitations applicable to the claim(s) set forth in the Demand, whichever is shorter.  The date upon which the Demand is sent to the AAA shall be the date that the arbitration is initiated for purposes of the limitations period

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

and/or statute of limitations applicable to the claim(s) asserted. As set forth more fully in Article 24.A(10), S-L will pay all arbitration filing fees beyond the Two Hundred and No/100 Dollars ($200.00) paid by Distributor in accordance with Article 24.A.(6)(a), if the Covered Dispute is initiated by Distributor..

(b) To initiate arbitration, S-L shall file a Demand with the AAA, along with a copy of the Distributor Agreement and all filing fees required by the AAA Rules, as hereinafter defined. S-L shall simultaneously send a copy of the Demand to the Distributor address set forth in this Agreement. The Demand must be filed with the AAA within the time period provided by the limitations periods set forth below in this Article or the statute of limitations applicable to the claim(s) set forth in the Demand, whichever is shorter. The date upon which the Demand is sent to the AAA shall be the date that the arbitration is initiated for purposes of the limitations period and/or statute of limitations applicable to the claim(s) asserted.

(7) <u>Selection of Arbitrator and Rules for Arbitration</u>. Distributor and S-L agree that any arbitration of a Covered Dispute shall be resolved by final and binding arbitration through the AAA pursuant to its Commercial Arbitration Rules in effect at the time of the filing of the Demand with the AAA ("AAA Rules"), EXCEPT for the following:

(a) The arbitration shall be conducted before a single arbitrator, unless all parties to the arbitration agree otherwise in writing, which arbitrator is to be appointed through the manner provided by the AAA Rules. No person shall serve as arbitrator for any matter in which that person has any financial or personal interest in the result of, or subject matter of, the proceeding or a past or present relationship with the parties or their counsel. Prior to accepting an appointment, the prospective arbitrator(s) shall disclose any circumstance likely to prevent a prompt hearing or to create an appearance or presumption of bias or conflict. Upon receipt of such information, the AAA will communicate the information to the parties for their comment and will appoint a new arbitrator if either party objects based on the information provided by the prospective arbitrator. Vacancies shall be filled in accordance with the AAA Rules.

(b) The arbitration shall be held in or near the county in which the Territory is located, unless S-L and Distributor mutually agree in writing to some other location.

(c) The arbitration hearing for a Demand that is subject to and qualifies for the Expedited Rules of the AAA in effect at the time the Demand is filed with the AAA shall last no longer than one hearing day (apportioned equally between the parties). The hearing for all other Demands shall last no longer than three total hearing days (apportioned equally between the

Shantal De La Rosa
Shantal De La Rosa (Apr 19, 2018)

parties), all of which shall be consecutive days absent agreement of Distributor and S-L.

(d)   At the arbitration hearing, either party may be represented by an attorney or other representative or by itself, himself or herself.

(e)   The arbitrator(s) shall maintain the confidentiality of the hearings unless the applicable law provides to the contrary. The arbitrator(s) shall have the authority to exclude witnesses, other than a party and the party's representative(s), from the hearing during the testimony of any other witness. The arbitrator(s) also shall have the authority to decide whether any person who is not a witness may attend the hearing.

(f)   Unless the AAA Rules or the applicable law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party, but instead, the arbitrator(s) shall require the party who is present to submit such evidence as the arbitrator(s) may require for the making of an award.

(g)   Discovery requests shall be made pursuant to the AAA Rules.

(h)   The parties may file and the arbitrator(s) shall be authorized to hear and decide at any point in the proceedings any motion permitted by the Federal Rules of Civil Procedure, including, but not limited to: motions for protective orders; motions to dismiss; motions for summary judgment; and motions in limine.

(i)   The arbitrator(s) shall be the judge of the relevance and materiality of the evidence offered; conformity to legal rules of evidence shall not be necessary.

(j)   The arbitrator(s) may receive and consider the evidence of witnesses by affidavit but shall give it only such weight as the arbitrator(s) deems it entitled to after consideration of any objection made to its admission by the other party. All documents and affidavits to be considered by the arbitrator(s) shall be provided to the other party and the arbitrator(s) prior to the hearing.

(k)   The arbitration shall be subject to the same burdens of proof as if the Covered Dispute was being heard in federal district court.

(l)   To the extent any of the terms, conditions or requirements of this Article conflict with the AAA Rules or other applicable rules or laws, the terms, conditions and requirements of this Article shall govern.

(8)   <u>Arbitration Award</u>.

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

(a) The arbitrator(s) shall make the award within thirty (30) days of the close of the hearing or as soon as possible thereafter, unless otherwise agreed by the parties or specified by the AAA Rules or applicable law. The award shall be in writing, setting forth an explanation for the award, and shall be signed by the arbitrator(s). All awards shall be executed in the manner required by law. The award shall be final and binding upon Distributor and S-L, and any judicial review or appeal shall be as provided by law.

(b) The arbitrator(s) shall award relief only on an individual basis. The arbitrator(s) shall have the authority to award any damages, injunctive relief, or other relief, as otherwise permitted by applicable law and this Agreement. The arbitrator(s) shall not have the authority to make any award that is arbitrary and capricious or to award to S-L the costs of the arbitration that S-L is otherwise required to bear under this Article.

(9) <u>Delivery of Award to Parties</u>. The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail addressed to a party or its representative via certified mail, return receipt, personal service of the award, or the filing of the award in any manner that is permitted by law.

(10) <u>Expenses and Fees.</u> Unless otherwise precluded by applicable law, expenses and fees shall be paid and/or allocated as follows:

(a) S-L shall pay any filing fee required by the AAA, except that if the arbitration is demanded by Distributor, Distributor shall be required to pay $200.00 of the filing fee, which shall be paid by Distributor when the Demand is filed with the AAA as provided in Article 24.A(6). If Distributor does not pay the Two Hundred and No/100 Dollars ($200.00) to the AAA when the Demand is filed, the Demand shall be deemed to have been withdrawn by Distributor for all purposes.

(b) S-L shall pay the arbitrator(s) fees.

(c) Postponement and cancellation fees shall be payable, at the discretion of the arbitrator, by the party requesting or causing the postponement or cancellation.

(d) The expenses of witnesses shall be paid by the party requiring the presence of such witnesses, including any witness fee or subpoena fees ordered or required by the arbitrator for such witnesses. All other ordinary and reasonable expenses of the arbitration, including hearing room expenses, travel expenses of the arbitrator and any witness produced at the arbitrator's direction, shall be paid by S-L.

(e) Each party shall pay its own attorneys' fees, legal fees and expenses. The arbitrator(s) may award attorneys' fees and other costs to a prevailing party if expressly provided by applicable law.

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

(f)     The allocation of expenses as provided for in paragraphs (a) through (e) above may not be disturbed by the arbitrator except where the arbitrator determines that a party's claims were frivolous or were asserted in bad faith or as required by applicable law.

(11)    <u>Enforcement</u>.  The award of the arbitrator(s) may be enforced under the terms of the FAA to the extent applicable and/or under any applicable state law.  If a court determines that the award is not completely enforceable, the award shall be enforced and binding on both parties to the maximum extent permitted by law. Distributor and S-L shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(12)    <u>Interpretation and Application of Procedure</u>.  Except as set forth in Article 24.A(13), the arbitrator(s) shall interpret and apply these procedures as it relates to the arbitrator's powers and duties.

(13)    <u>CLASS/COLLECTIVE ACTION/MULTIPLE PARTY WAIVER</u>.  **TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, DISTRIBUTOR HEREBY AGREES, ON ITS BEHALF AND ON BEHALF OF ITS PAST, CURRENT AND FUTURE OWNERS, OFFICERS, DIRECTORS, EMPLOYEES, SHAREHOLDERS, MEMBERS, MANAGERS, PARTNERS, PREDECESSORS, SUCCESSORS, BENEFICIARIES, ADMINISTRATORS, EXECUTORS, ESTATES, ATTORNEYS, INSURERS, AGENTS, REPRESENTATIVES, AND ASSIGNS, TO BRING ANY AND ALL CLAIMS, DISPUTES, SUITS AND/OR CAUSES OF ACTION FOR A COVERED DISPUTE ONLY ON AN INDIVIDUAL BASIS AND WAIVES ANY AND ALL RIGHTS TO:  (1) INITIATE OR MAINTAIN ANY CLAIM, DISPUTE, SUIT OR CAUSE OF ACTION RELATING TO, OR ASSERTING, IN WHOLE OR IN PART, ANY COVERED DISPUTE ON A CLASS ACTION BASIS, COLLECTIVE ACTION BASIS, MULTIPLE PLAINTIFF BASIS OR REPRESENTATIVE ACTION BASIS, EITHER IN COURT OR IN ARBITRATION, AGAINST S-L AND/OR THE S-L PARTIES; (2) SERVE OR PARTICIPATE AS A REPRESENTATIVE IN ANY SUCH CLASS ACTION, COLLECTIVE ACTION, MULTIPLE PLAINTIFF OR REPRESENTATIVE ACTION; (3) SERVE OR PARTICIPATE AS A MEMBER OF ANY SUCH CLASS ACTION, COLLECTIVE ACTION, MULTIPLE PLAINTIFF OR REPRESENTATIVE ACTION; OR (4) RECOVER OR RECEIVE ANY DAMAGES OR RELIEF IN CONNECTION WITH ANY SUCH CLASS ACTION, COLLECTIVE ACTION.**  Distributor further agrees that if it is included within any such class, collective, multiple plaintiff or representative action, it shall take all steps necessary to promptly and fully opt-out of the action or refrain from opting in, as the case may be and Distributor agrees that no arbitrator(s) shall have authority to:  (1) order, authorize, or permit any notice or information about an arbitration or any claims or defenses in an arbitration to be sent to any class or group of persons other than the parties to the individual

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

arbitration, provided that any party or the arbitrator may compel testimony of a witness or the production of documents, material or information consistent with the AAA Rules; or (2) order or require either party to produce any kind of contact or other information for any class or group of current or former distributors of S-L or the S-L Parties; or (3) consolidate an arbitration with any arbitration proceeding brought by any other person or entity. Any Covered Dispute filed or brought in court or arbitration as a class, collective, multiple plaintiff or representative action shall be promptly dismissed by Distributor, or if not by the court or arbitrator(s), and shall be decided in arbitration on an individual basis. Any issue concerning the validity or enforceability of this waiver (including the prohibition against class, collective, multiple plaintiff or representative action arbitration) shall be decided by a court of competent jurisdiction and having proper venue (forum) as provided in the this Agreement, and no arbitrator(s) shall have any authority to consider or decide any issue concerning the validity or enforceability of this waiver. Any issue concerning arbitrability of a particular issue or claim pursuant to this dispute resolution provision (except for those concerning the validity or enforceability of the waiver) must be resolved by the arbitrator, not the court.

(14) <u>Interpretation</u>. Any dispute regarding the scope, application, enforcement or interpretation of the dispute resolution provisions and other procedures set forth in this Article shall be governed by the FAA and to the extent the FAA is inapplicable, the laws of the Commonwealth of Pennsylvania shall apply.

B. <u>Choice of Forum</u>. THE PARTIES, ON BEHALF OF THEIR DIRECTORS, OFFICERS, EMPLOYEES, SHAREHOLDERS, AGENTS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS, AGREE THAT TO THE EXTENT ANY DISPUTE ARISES BETWEEN THEM THAT IS NOT SUBJECT TO ARBITRATION, THE PARTY COMMENCING A SUIT OR CAUSE OF ACTION SHALL FILE ANY SUCH SUIT OR CAUSE OF ACTION ONLY IN THE FEDERAL OR STATE COURT HAVING JURISDICTION OVER YORK COUNTY, PENNSYLVANIA. THE PARTIES IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY SUCH COURT AND WAIVE ANY OBJECTION EITHER MAY HAVE TO THE JURISDICTION OR VENUE OF ANY SUCH COURT.

C. <u>Waiver of Jury Trial</u>. THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY DISPUTE BASED ON THIS AGREEMENT OR THE TERRITORY OR ARISING OUT OF THIS AGREEMENT OR ANY ACTS, OMISSIONS, TRANSACTIONS OR COURSE OF DEALING HEREUNDER WHICH IS NOT SUBJECT TO ARBITRATION.

D. <u>Limitation of Claims</u>. EXCEPT IF EXPRESSLY PRECLUDED BY LAW AND EXCEPT FOR DISTRIBUTOR'S OBLIGATIONS TO INDEMNIFY S-L PURSUANT TO THIS AGREEMENT, ANY AND ALL OTHER CLAIMS OR DISPUTES ARISING UNDER OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP BETWEEN S-L AND DISTRIBUTOR PURSUANT TO THIS AGREEMENT OR THE TERRITORY

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

SHALL BE BARRED UNLESS AN ACTION IS COMMENCED WITHIN: (i) TWO YEARS FROM THE DATE ON WHICH THE ACT OR EVENT GIVING RISE TO THE CLAIM OR DISPUTE OCCURRED OR (ii) ONE YEAR FROM THE DATE ON WHICH SUCH PARTY KNEW OR SHOULD HAVE KNOWN, IN THE EXERCISE OF REASONABLE DILIGENCE, OF THE FACTS GIVING RISE TO SUCH CLAIM OR DISPUTE, WHICHEVER FIRST OCCURS.

E.      Further Limitation of Product Claims:   NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, OR AS MAY BE PROVIDED BY APPLICABLE LAW, ALL CLAIMS BY DISTRIBUTOR RELATING TO AUTHORIZED PRODUCTS OR OTHER PRODUCTS MUST BE MADE, IN WRITING, WITHIN TEN (10) DAYS AFTER DISTRIBUTOR FIRST LEARNS THE FACTS UPON WHICH SUCH CLAIMS ARE BASED BUT IN NO EVENT LATER THAN NINETY (90) DAYS AFTER RECEIPT OF SUCH PRODUCT BY DISTRIBUTOR.  ALL SUCH CLAIMS NOT MADE IN WRITING WITHIN THE SPECIFIED TIME PERIOD SHALL BE DEEMED WAIVED.  FURTHERMORE, DISTRIBUTOR'S EXCLUSIVE REMEDY FOR ALL SUCH PRODUCT CLAIMS ARISING OUT OF THIS AGREEMENT SHALL BE THE REPLACEMENT OF SUCH PRODUCTS BY S-L, OR, AT THE OPTION OF S-L, RETURN OF THE PRICE AT WHICH DISTRIBUTOR PURCHASED THE PRODUCT FROM S-L.

F.      Limitation on Damages.   NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, OR AS MAY BE PROVIDED BY APPLICABLE LAW,  IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR SPECIAL DAMAGES OR DAMAGES FOR LOST PROFITS, LOST OVERHEAD AND/OR PUNITIVE DAMAGES.

G.      Service of Notice.  Each party shall be deemed to have consented that any papers, notices, processes or communications required, necessary or proper under this Article 24 or applicable law, including a notice for the initiation or continuation of an arbitration, for any court proceedings or for the entry of a judgment on an award, may be served on a party in accordance with the terms of Article 20.  The parties may also consent to the use of facsimile transmission, telex or other written forms of electronic communication to give the required notices as long as such consent is memorialized in a writing signed by the party to which such notice is to be delivered.

**ARTICLE 25**
**MISCELLANEOUS**

A.      Recitals.  The recitals to this Agreement are incorporated by reference and made part of this Agreement.

B.      Survival.  This Agreement shall be binding upon the parties hereto and their respective officers, directors, employees, shareholders, heirs, representatives, successors and permitted assigns.

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

#NFKW0R9Z0DEQR5v1

C.    Severability.

(1)    Any provision of this Agreement which is prohibited by, or unlawful or unenforceable under, any applicable law of any jurisdiction shall be ineffective as to such jurisdiction without affecting any other provision of this Agreement. To the full extent, however, that the provisions of such applicable law may be waived, they are hereby waived, to the end that this Agreement be deemed to be a valid and binding Agreement enforceable in accordance with its terms.

(2)    Also, if any provision of this Agreement is found by a court of competent jurisdiction or agency to be invalid or unenforceable: (i) the validity and enforceability of the remainder of this Agreement shall not be affected; (ii) such provision shall be deemed modified to the minimum extent necessary to make such provision consistent with applicable law; and (iii) such provision shall be valid, enforceable and enforced in its modified form.

D.    Force Majeure.  Neither S-L nor Distributor shall be liable to the other for failure to perform its part of this Agreement when the failure is due to:  acts of God (*e.g.,* fire, flood, earthquake, tornado, hurricane, etc.); acts of public enemy (terrorism or threats thereof, war, sabotage, blockage, riot, civil disturbance or similar occurrence); strikes or labor disturbances; or other such causes beyond the reasonable control of a party; provided that such act or event is beyond the reasonable control of the party relying upon the act or event and only to the extent that such act or event:  actually prevents the performance or the meeting of an obligation of such party; is not the result of the fault or negligence of such party; could not have been avoided, prevented or mitigated through reasonable precaution; and is reasonably unforeseeable.

E.    Waiver:  The failure in any one or more instances of a party to insist upon strict performance of any provision of this Agreement or to exercise any right conferred in this Agreement shall not be construed as a waiver of such provision or right, and the waiver by either party of a breach of any provision of this Agreement shall not be construed as a waiver of a subsequent breach of that provision.  No waiver, except a waiver expressly set forth in this Agreement, shall be effective unless it is in writing and signed by an authorized representative of the waiving party.

F.    Captions.    Articles and other captions contained in this Agreement are for reference purposes only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of any part of this Agreement.

G.    Number and Gender.  Where the context so indicates, the masculine shall include the feminine and neuter, the singular shall include the plural and "person" shall include a corporation, limited liability company, and other entities.

H.    Governing Law.  Except as otherwise expressly provided in this Agreement, the validity, interpretation and performance of this Agreement, and any disputes or claims which arise

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

between the parties, shall be governed by, subject to, and construed in accordance with, the laws of the Commonwealth of Pennsylvania without giving effect to its conflicts of law or choice of law provisions.

I.      Entire Agreement.  This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes, cancels and replaces all prior agreements and commitments with respect thereto.  There are no understandings, terms or conditions, and neither party has relied upon any representation, expressed or implied, not contained in this Agreement.

J.      Amendment.  No provision of this Agreement shall be modified, waived, terminated or amended except by a written instrument executed by the parties.

K.      Joint Effort.  Preparation of this Agreement has been a joint effort of the parties and the resulting document shall not be construed more severely against one of the parties than the other.

## ARTICLE 26
## DISTRIBUTOR'S ACKNOWLEDGEMENTS/REPRESENTATIONS

A.      Distributor agrees, understands and acknowledges that there are significant risks in any business venture and that the primary factor in Distributor's success or failure will be Distributor's and its director's, officer's and employee's own efforts and skill.  In addition, Distributor acknowledges and agrees that S-L and its directors, officers, employees, shareholders, agents and representatives have made no representation, warranty or guaranty regarding the sales volume or profit which Distributor may derive from this Agreement, the Territory or in its business operations conducted pursuant to this Agreement and have made no representation, warranty or guaranty to Distributor other than the matters expressly set forth in this Agreement and that Distributor has entered into this Agreement solely in reliance on Distributor's own independent investigation.

B.      Distributor agrees, understands and acknowledges that, as a distributor under this Agreement, it is an independent contractor and business and not an employee of S-L. As such, neither it nor its employees will receive from S-L any benefits of the type typically provided to an employee, including, without limitation, wages, overtime payments, pension benefits, fringe benefits, insurance benefits, travel privileges or benefits, worker's compensation benefits, health and welfare benefits, Social Security benefits, unemployment benefits or any other benefits whatsoever.   Instead, Distributor understands and acknowledges that, to the extent desired, it will have to obtain and pay, for it and its employees, all benefits and also, be required to pay all applicable taxes.

C.      Distributor agrees, understands and acknowledges that this Agreement is not a franchise agreement.  This Agreement does not provide the Distributor with a franchise to sell or distribute the Products under a marketing plan or system prescribed by S-L. The Agreement does not allow the Distributor to conduct its business under, or in any way use, S-L's name, tradenames or trademarks or the tradenames or trademarks of any of the Products.

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

D. Distributor also agrees, understands and acknowledges that other distributors of S-L may be granted distributor agreements at different times and in different situations and that the provisions of such agreements may vary substantially from those contained in this Agreement. Distributor's obligations hereunder may differ substantially from those of other distributors.

E. Distributor agrees, understands and acknowledges that S-L may, in its sole discretion, vary the Suggested Operating Guidelines and requirements among distributors including, without limitation, those relating to the territories, authorized products and authorized outlets. Distributor agrees, understands and acknowledges that such variations may lead to different costs and obligations among distributors.

F. Distributor further acknowledges, agrees, represents and warrants as follows:

1. It has carefully read this Agreement, it understands its terms and obligations, and it has entered into this Agreement voluntarily and not in reliance on any promises or representations by S-L other than those expressly set forth in this Agreement;

2. It is a _Limited Liability Company_ duly organized, validly existing and in good standing under the laws of the _Texas_____;

3. Distributor agrees to, and shall, maintain its status as a _Limited Liability Company_ throughout the term of this Agreement;

4. It is not subject to any restrictions whatsoever which would prevent it from entering into or carrying out its obligations under this Agreement;

5. It possesses all consents, licenses, permits, approvals, authorizations and certificates necessary and required for performing this Agreement;

6. It and its employees possess the proper skill, training, experience and background so as to be able to perform its obligations under this Agreement in a competent, proper and professional manner;

7. It and its employees are compliant with all applicable immigration laws, including, but not limited to, the "I-9" requirements, 8 U.S.C. §§ 1324, *et seq.*, and 8 C.F.R. §§ 274a, *et seq.*;

8. It must give its written consent to be represented in any permitted lawsuit, action, arbitration or other proceeding against S-L and it will not represent anyone else in any lawsuit, action, arbitration or other proceeding against S-L.

9. It has made a significant investment in its business and will continue to maintain such investment;

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

#NFKW0R9Z0DEQR5v1

10. It has carefully reviewed, examined and studied this Agreement and understands each of its provisions; and

11. It has been advised to consult an attorney and certified public accountant of its choice before executing the Agreement, and has been given the opportunity to do so, in order to, among other things, review the legal and accounting requirements and the effects of entering into this Agreement and being an independent contractor and business and to determine its tax reporting obligations.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**
**[SIGNATURES ON FOLLOWING PAGE]**

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

**IN WITNESS WHEREOF**, S-L and Distributor have hereunto set their hands and seals as of the day and year first above written.

**S-L Distribution Company, LLC**

*Bruce J Myers*
Bruce J Myers (Apr 20, 2018)

By: Bruce J Myers

Title: VP-Distribution Company

**Distributor:**
A & S 23 Distribution LLC

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

By: Shantal De La Rosa



# 808942 Equity Map



---

**S-L Distribution Company, LLC.**

"This is a geographic presentation of the route territory described in the attached Schedule A.  In the event of a dispute over territory boundaries, the written description in Schedule A is legally binding and supersedes anything depicted on this presentation."

_Apr 19, 2018_
Date

_Shantal De La Rosa_
Shantal De La Rosa (Apr 19, 2018)
Signature

Shantal De La Rosa
Name (Print)



**Northern Border**: Beginning at Lake Houston, turn east following the south side of FM-1960, turn south following the Harris County side of the Harris/Liberty county line, turn east following the south side of County Road 602 to County Road 604.

**Eastern Border**: Beginning at County Road 602, turn south following the west side of County Road 604, turn south following FM-1413 (keeping right), turn south following the west side of TX-146 to FM-1942.

**Southern Border**: Beginning at TX-146, turn west following the north side of FM-1942, turn west following the north side of Barbers Hill Rd, turn south following the west side of FM-2100, turn east following the south side of E Canal Rd, turn south following the west side of Thompson Rd, turn west following the north side of Jones Rd, turn south following the west side of Steele Rd, follow a straight line south (keeping right) to Paradise Rd, turn south following the west side of Paradise Rd, turn west following the north side of I-10, turn south following the west side of S Ilfrey St, turn west following the north side of Lakeview Dr, turn south following the west side of FM-2100, turn southwest following Buffalo Bayou (keeping right) to E Beltway 8.

**Western Border**: Beginning at Buffalo Bayou, turn north following the east side of E Beltway 8, turn west following the north side of Woodforest Blvd, turn north following the east side of Black Rock Rd, turn west following the north side of Crosshaven Dr, turn north following the east side of Castlegory Rd, turn east following the south side of Wallisville Rd, turn north following the east side of E Beltway 8, turn east following the south side of Garrett Rd, turn south following the west side of Sheldon Rd, turn east following the south side of US-90 Branch, turn north following the east side of San Jacinto River, turn north following the east side of Lake Houston to FM-1960.

**S-L Distribution Company, LLC.**
**Note:  Unless otherwise stated, all roadways boundaries are agreed to be at the centerline of highways, streets, avenues, road, boulevards, etc. unless specific Longitude and Latitudes are noted.**
**The undersigned has read the preceding description and agrees that it is accurate.**

| | |
|---|---|
| Apr 19, 2018 | *Shantal De La Rosa* |
| | Shantal De La Rosa (Apr 19, 2018) |
| **Date** | **Signature** |
| | Shantal De La Rosa |
| | **Name (Print)** |

# <u>SCHEDULE B</u>

## AUTHORIZED OUTLETS
## ROUTE # 808942

Following are the Authorized Outlets for Route # 808942:

| Route Number | Oracle Num | CUSTOMER | ADDRESS | CITY | STATE | ZIP | AUTHORIZED ACCOUNT |
|---|---|---|---|---|---|---|---|
| 808942 | 615233 | KROGER #247 | 105 KENNINGS RD | CROSBY | TX | 77532 | Authorized |
| 808942 | 542261 | WALMART #522 | 14215 FM 2100 RD | CROSBY | TX | 77532 | Authorized |
| 808942 | 604494 | WALMART/LANCE GLUTEN FREE #522 | 14215 FM 2100 RD | CROSBY | TX | 77532 | Authorized |
| 808942 | 538323 | WALMART/LANCE #522 | 14215 FM 2100 RD | CROSBY | TX | 77532 | Authorized |
| 808942 | 654292 | DOLLAR GENERAL #16659 | 21621 FM 2100 RD | CROSBY | TX | 77532 | Not Auth |
| 808942 | 443535 | GHRA #2821 - QUICK TIME | 2233 FM 1942 RD | CROSBY | TX | 77532 | Authorized |
| 808942 | 443618 | GHRA #3271 - HANDI STOP 98 | 6007 FM 2100 RD | CROSBY | TX | 77532 | Authorized |
| 808942 | 453931 | ARLAN'S MARKET #8 | 6500 FM 2100 RD | CROSBY | TX | 77532 | Authorized |
| 808942 | 443468 | GHRA #3164 - FUEL MAXX #5 | 9499 HIGHWAY 90 | DAYTON | TX | 77535 | Authorized |
| 808942 | 443973 | GHRA #0285 - JR'S MINUTEMAID | 7724 DECKER DR | BAYTOWN | TX | 77520 | Authorized |
| 808942 | 474046 | KEY TRUCK STOP EXXON ABG 205 | 17214 EAST FWY | CHANNELVIEW | TX | 77530 | Authorized |
| 808942 | 423393 | HOU5491 SUNMART #136 | 1001 E IH 10 | HIGHLANDS | TX | 77562 | Authorized |
| 808942 | 582634 | GHRA 2682 SPEEDY EXPRESS | 301 S MAIN ST | HIGHLANDS | TX | 77562 | Authorized |
| 808942 | 621049 | FOOD TOWN #209 | 302 N MAIN ST STE 1 | HIGHLANDS | TX | 77562 | Authorized |
| 808942 | 582633 | GHRA 728 SNAPPY MART | 413 S MAIN ST | HIGHLANDS | TX | 77562 | Authorized |
| 808942 | 473964 | SUPER QUICK SUPER DELL DALE ABG 146 | 15301 WOODFOREST BLVD | CHANNELVIEW | TX | 77530 | Authorized |
| 808942 | 794486 | SHELDON FOOD MART | 15606 EAST FWY | CHANNELVIEW | TX | 77530 | Authorized |
| 808942 | 474001 | ANEEL'S TEXACO ABG 169 | 15606 EAST FWY | CHANNELVIEW | TX | 77530 | Authorized |
| 808942 | 443690 | GHRA #2008 - MAGIC FOOD MART | 16141 MARKET ST | CHANNELVIEW | TX | 77530 | Authorized |
| 808942 | 443402 | MAGIC FOOD | 16955 EAST FWY | CHANNELVIEW | TX | 77530 | Authorized |
| 808942 | 738541 | BUDS MART | 222 DELL DALE ST | CHANNELVIEW | TX | 77530 | Authorized |
| 808942 | 637828 | STAR STOP #44 | 424 SHELDON RD | CHANNELVIEW | TX | 77530 | Authorized |
| 808942 | 594889 | FOODTOWN #214 | 435 SHELDON RD | CHANNELVIEW | TX | 77530 | Authorized |
| 808942 | 443571 | GHRA #3049 - DELL DALE FOOD STORE | 531 DELL DALE ST | CHANNELVIEW | TX | 77530 | Authorized |
| 808942 | 615224 | KROGER #351 | 14710 WOODFOREST BLVD | HOUSTON | TX | 77015 | Authorized |
| 808942 | 637830 | STAR STOP #31 | 15505 WALLISVILLE RD | HOUSTON | TX | 77049 | Authorized |
| 808942 | 652504 | STRIPES #1026 | 15922 WALLISVILLE RD | HOUSTON | TX | 77049 | Authorized |
| 808942 | 425067 | SHELDON FD STR | 411 SHELDON RD | HOUSTON | TX | 77035 | Authorized |
| 808942 | 542996 | WALMART #3500 | 5655 E SAM HOUSTON PKWY N | HOUSTON | TX | 77015 | Authorized |
| 808942 | 602088 | WALMART/LANCE GLUTEN FREE #3500 | 5655 E SAM HOUSTON PKWY N | HOUSTON | TX | 77015 | Authorized |
| 808942 | 537519 | WALMART/LANCE #3500 | 5655 E SAM HOUSTON PKWY N | HOUSTON | TX | 77015 | Authorized |
| 808942 | 425068 | SHELDON FOODS | 6533 SHELDON RD | HOUSTON | TX | 77049 | Authorized |
| 808942 | 460258 | CASH CUSTOMER ROUTE #808942 | | | | | Not Auth |

agrees that the above listed outlets as indicated in the Authorized column represent the only outlets to which it has been granted exclusive rights.

Distributor A & S 23 Distribution LLC

April 06, 2018

*Shantal De La Rosa*
Shantal De La Rosa (Apr 19, 2018)

By Shantal De La Rosa