IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:18-CV-150

| | |
|---|---|
| JARED MODE, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>S-L DISTRIBUTION COMPANY, LLC,<br>S-L DISTRIBUTION COMPANY, INC, and<br>S-L ROUTES, LCC,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendants S-L Distribution Company, LLC, S-L Distribution Company, Inc., and S-L Routes, LLC's (collectively, "S-L") Motion to Compel Arbitration. (Doc. No. 514). This case is a class action suit under the Fair Labor Standards Act ("FLSA"), in which Plaintiffs allege that Defendants intentionally misclassified them. Defendants now move to compel 255 of the over 700 opt-in Plaintiffs to arbitration based on the arbitration provisions in the parties' contractual agreements. Having reviewed and considered the written arguments and applicable authority, and for the reasons set forth below, the Court finds that the parties contractually agreed to arbitrate this dispute and finds no reason that prohibits the Court from enforcing the arbitration provisions. Accordingly, the Court will grant Defendants' Motion to Compel Arbitration.

## I. FACTS AND PROCEDURAL HISTORY

S-L collectively manufactures, markets, and distributes snack foods to retail stores in North Carolina and other states. (Doc. No. 515-1, at 1). While S-L sells some of its own products to

1

stores, it contracts with independent business owners ("IBOs") to sell its products in more than 3,200 different geographic territories across the country. (Doc. No. 515-1, at 2). The parties refer to these agreements as "Distributor Agreements." The Distributor Agreements state that the distribution companies are independent contractors and further provides that in the event a court finds that the parties did not have an independent contractor relationship, either party would be entitled to declare the Distributor Agreement null and void. (*See, e.g.*, Doc. No. 23-1).

On March 22, 2018, Plaintiff Jared Mode filed this action alleging that he and a putative class of S-L's distributors are entitled to various protections under the FLSA, 29 U.S.C. §§ 201, *et seq.* (Doc. No. 1). The Plaintiffs make up various principals, officers, and/or employees of these distribution companies who allege that S-L intentionally misclassified them as independent contractors rather than employees, and by doing so, failed to pay minimum wage and overtime pay as required under the FLSA. *Id.* at ¶¶ 27-39. In response to these allegations, S-L filed counterclaims for unjust enrichment against certain Plaintiffs in the event the Court determines that (1) Plaintiffs and/or their distribution companies were misclassified as independent contractors and (2) the Distributor Agreements are voided. (Doc. No. 25, at ¶¶ 27-39). Additionally, S-L filed Third-Party Complaints stating claims for indemnification and unjust enrichment against certain distribution companies. (Doc. Nos. 26-47, 52-56).

On March 15, 2019, this Court conditionally certified a collective class action under the FLSA. (Doc. No. 143). Of the approximately 700 opt-in Plaintiffs in this lawsuit, 255 Plaintiffs ("Arbitration Plaintiffs") have Distributor Agreements that include an arbitration clause. (Doc. Nos. 515-1, at 3, 6-12; 515-2, at 23; 515-3, at 23; 515-4, at 20). Although there are several different versions of the Distributor Agreements at issue in this case, and each agreement contains materially different terms governing each IBO, all of the Arbitration Plaintiffs entered into one of three

versions of these agreements. (Doc. No. 515-1, at ¶¶ 11-12). All three versions contain materially identical arbitration provisions.

The arbitration clauses each state that the parties "agree that the dispute resolution process set forth below shall be the sole and exclusive method by which any and all Covered Disputes . . . shall be resolved and decided." (Doc. Nos. 515-2, at 23; 515-3, at 23; 515-4, at 20).[1] "Covered disputes" are defined in part as "all claims and disputes arising out of or under or in any way relating to this Agreement or any other agreement between the parties" and "all claims and disputes relating to any allegation of any employment, franchise or other nonindependent contractor relationship or misclassification between any of the Distributor Parties and any of the S-L Parties." (Doc. Nos. 515-2, at 24; 515-3, at 23; 515-4, at 20-21).

Notably, each arbitration clause also states: "Any dispute regarding the scope, application, enforcement or interpretation of the dispute resolution provisions and other procedures set forth in this [arbitration clause] shall be governed by the FAA and to the extent the FAA is inapplicable, the laws of the Commonwealth of Pennsylvania shall apply." (Doc. Nos. 515-2 at 30; 515-3, at 29; 515-4, at 27).

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") represents "a liberal federal policy favoring arbitration agreements" and applies "to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under Section 2 of the FAA, a written provision "shall be valid, irrevocable, and enforceable, save upon such grounds as

---

[1] In an effort to streamline attachments to filings in this case, as requested by the Court, S-L attached an example of each version of the pertinent Distributor Agreements to its memorandum, along with a list of which Arbitration Plaintiffs entered into each version. *See* Doc. Nos. 515-2, 515-3, 515-4.

3

exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). Furthermore, the Supreme Court has held that "courts must rigorously enforce arbitration agreements according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) a relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016); *see also Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc*., 807 F.3d 553, 563 (4th Cir. 2015). Agreements to arbitrate are construed according to ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2011). Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000).

### III. DISCUSSION

Plaintiffs do not dispute the validity or scope of the arbitration agreement. Rather, Plaintiffs' sole argument in response to S-L's motion to compel arbitration is that this Court's previous "holding" in its conditional certification order bars S-L from now arguing that the dispute should be subject to arbitration under the "law of the case" doctrine. *See* (Doc. No. 520, at 1) ("S-L's motion should fail because it contradicts this Court's previous holding that arbitrability determinations are premature until *after* the Court resolves S-L's counterclaims and third-party

4

complaints, both of which ask that the Distributor Agreements be declared 'null and void.'"). As discussed more fully below, the Court's previous order does not prevent the Court from enforcing the arbitration provisions, and absent any other reason that the Court should not hold the arbitration provisions valid and enforceable, the Court will grant S-L's motion as to the 255 Arbitration Plaintiffs.

**A. The Conditional Certification Order**

Plaintiffs contend that this Court previously "held" that "arbitrability determinations are premature until *after* the Court resolves [S-L's] counterclaims and third-party complaints." (Doc. No. 520, at 1). However, the Plaintiffs misconstrue the Court's prior holding. The issue before the Court in its previous order was whether "some of the putative collective should receive court-approved *notice*," not whether the Court should enforce the arbitration provisions pursuant to the Distributor Agreements. (Doc. No. 143, at 8-9). At that time, S-L argued that the Court should not approve notice to potential plaintiffs who had arbitration agreements. The Court, at the conditional certification stage, thought it "improper to preclude sending *notice* to those potential plaintiffs whose Distributor Agreements contained arbitration provisions" if there was any chance that the Distributor Agreements could be declared void later in the proceedings. *Id.* at 9 n.3 (emphasis added). Thus, this Court determined that it would be "premature . . . to preclude potential plaintiffs from *participating* in this lawsuit solely based on arbitration provisions." (Doc. No. 143, at 9). The Court made no decision on the enforceability of the arbitration clauses at that time, and certainly did not bar S-L from arguing that the arbitration agreements are enforceable.

Thus, because the Court was only considering the issue of Court-approved notice at the conditional certification stage and not the enforceability of the arbitration agreements, the order does not preclude the Court from ordering arbitration now. At most, such language was dicta. *See,*

*e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 282 (2001) ("[T]his Court is bound by holdings, not language."); *Stiltner v. Island Creek Coal Co.*, 86 F.3d 337, 342 n.2 (4th Cir. 1996) ("This comment was dicta because it was not essential to the holdings in [a prior decision]."); *United States v. Pasquantino*, 336 F.3d 321, 329 (4th Cir. 2003) ("[D]icta . . . cannot serve as a source of binding authority in American jurisprudence.").

### B. Arbitration

Plaintiffs do not dispute S-L's claims regarding the validity of the arbitration clauses or the applicability of the FAA to the arbitration clauses. Plaintiffs' only defense asserted in their response is that the Court's previous order bars the Court from compelling arbitration now, which this Court has already explained is not the case. If Plaintiffs disputed the validity of the arbitration clause, this Court would have to determine if the arbitration clause was in fact valid before compelling arbitration. *See Lorenzo v. Prime Commc'ns*, L.P., 806 F.3d 777, 781 (4th Cir. 2015) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)) ("[A] court may order arbitration only when it 'is satisfied that the parties agreed to arbitrate.' And the question of whether the parties agreed to arbitrate is resolved by application of state contract law."). The Court construes Plaintiffs failure to address these points as a concession that the arbitration agreements are valid and that the FAA applies. *See, e.g.*, *Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08CV00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (citing cases from "a large number of courts" from several jurisdictions which have held that failure to address an issue in the party's memorandum is a concession).

Even if the Plaintiffs did contest the validity of the arbitration clause, the Court concludes that S-L has shown that the 255 Arbitration Plaintiffs entered into valid agreements to arbitrate under

Pennsylvania law.² *See Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982) ("It is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself.").

The Court also finds that the arbitration clauses are enforceable under the FAA, which again Plaintiffs do not contest. It is well-established that a defendant may contend that an arbitration clause is enforceable while also contesting the contract's validity, and subsequently arbitrate the validity of that contract as a whole. *See, e.g.*, *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) ("Unless a party specifically challenges the validity of the agreement to arbitrate, both sides may be required to take all their disputes—including disputes about the validity of their broader contract—to arbitration."); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("We reaffirm today that . . . a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

Moreover, Plaintiffs' argument that S-L is trying "to 'have it both ways' by asserting that the Distributor Agreements might be 'null and void' while simultaneously seeking to enforce the Distributor Agreements' arbitration provisions" is unconvincing. With respect to S-L's counterclaims and third-party complaints, S-L is making an alternative argument. S-L's defense in this case is that Plaintiffs are independent contractors. However, in their counterclaims and third-party complaints, S-L asks that *if* the Court finds that some or all of the counterclaim-defendants (or their entities) should have been classified as employees, "it should then conclude

---

² S-L asserts that Pennsylvania law applies to determine the validity of the contract and Plaintiffs do not dispute this assertion.

that the Counterclaim-Defendants' Distributor Agreements are void and/or that Counterclaim-Defendants are and were not governed by the terms of the Distributor Agreement." *See, e.g.*, (Doc. Nos. 25, at ¶ 72; 31, at ¶ 25). Parties are entitled to plead in the alternative, and the Court will not construe S-L's alternative argument as prohibiting enforcement of otherwise valid arbitration agreements. *See* Fed. R. Civ. Pro. 8(d)(2)-(3).

Given that the parties entered into valid arbitration agreements with the 255 Arbitration Plaintiffs, that the FAA governs these arbitration clauses, and that Arbitration Plaintiffs have not shown that arbitration is unsuitable, this Court holds that the arbitration clauses are enforceable and will grant S-L's motion to compel arbitration.

## V. ORDER

S-L's Motion to Compel Arbitration, (Doc. No. 514), is **GRANTED**. The 255 Plaintiffs with arbitration clauses in their Distributor Agreements shall arbitrate their claims as provided in their agreements.

**SO ORDERED.**

Signed: April 9, 2020

Kenneth D. Bell
United States District Judge