## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and among Snyder's-Lance, Inc., as a successor-in-interest to S-L Distribution Company, LLC ("S-L") and Plaintiff Jared Mode ("Named Plaintiff") and the FLSA Collective Members.[1] Named Plaintiff, FLSA Collective Members, FLSA Collective Counsel, and S-L hereby stipulate and agree that, in consideration of the promises and covenants as set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Named Plaintiff and the FLSA Collective Members in the Action shall be settled, compromised, and released upon the terms and conditions contained herein.

## RECITALS

WHEREAS, Named Plaintiff filed a collective action lawsuit under the Fair Labor Standards Act ("FLSA") in the United States District Court for the Western District of North Carolina alleging that S-L misclassified him and the FLSA Collective as independent contractors rather than as employees;

WHEREAS, Named Plaintiff sought recovery of, among other things, overtime wages, minimum wage compensation, expense reimbursement and wage deduction damages,[2] liquidated damages, penalties, attorneys' fees, interest, and costs;

WHEREAS, S-L denied and continues to deny all of the allegations made by Named Plaintiff and FLSA Collective Members in the Action, and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Action, or that any claims asserted by Named Plaintiff or FLSA Collective Members may proceed on a collective basis. Nonetheless, without admitting or conceding any arguments, issues, liability, or damages whatsoever, including that S-L is an employer or joint employer of Named Plaintiff, FLSA Collective Members, or anyone on whose behalf Named Plaintiff has attempted to bring claims, or that any claims alleged in the Action may proceed on a collective basis, S-L has agreed to settle the Action on the terms and conditions set forth in this Agreement to avoid the burden and expense of continuing to defend against litigation;

WHEREAS, FLSA Collective Counsel has conducted extensive formal discovery including, but not limited to, taking and defending dozens of depositions (including the deposition of Named Plaintiff), propounding and responding to written discovery, and reviewing and analyzing hundreds of thousands of documents produced by the Parties, and engaging in numerous discussions with S-L's counsel regarding the claims;

WHEREAS, FLSA Collective Counsel has analyzed and evaluated the merits of the claims made against S-L in the Action, and the impact of this Settlement on Named Plaintiff and the FLSA Collective;

---

[1] The capitalized terms herein are defined either in Section 1 (Definitions) or elsewhere in the body of this Agreement.

[2] Named Plaintiff's claim for expense reimbursement and wage deduction damages has been dismissed by the Court with prejudice.

WHEREAS, this Agreement resulted from and is the product of extensive, good faith, and arm's-length negotiations. The Parties participated in private mediation on April 28, 2020, and engaged in extensive follow-up discussions with the help of a nationally recognized mediator and exchanged many rounds of drafts of a settlement term sheet to memorialize the terms of the Settlement;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of litigation with respect to certain claims, including that the Action, if not settled now, might result in a recovery that is less favorable to Named Plaintiff and the FLSA Collective, and that would not occur for several years, or at all, FLSA Collective Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Named Plaintiff and FLSA Collective;

WHEREAS, as a result of these efforts, the Parties entered into this Agreement, subject to approval by the Court, to fully, finally, and forever resolve, discharge, and release all rights and claims described in Section 3.6 in exchange for S-L's agreement to pay a maximum total amount of six million dollars ($6,000,000.00) inclusive of all attorneys' fees, litigation costs, claims administration fees and expenses, interest, and service awards to Named Plaintiff and certain FLSA Collective Members;

WHEREAS, the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims. It is the Parties' desire and intention to affect a full, complete, and final settlement and resolution of all existing disputes and claims as set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Action on the following terms and conditions:

1.      **DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1     **Action.** "Action" shall refer to the lawsuit filed by Named Plaintiff bearing the caption *Mode v. S-L Distribution Company, LLC, et. al.*, Case No. 18-cv-150 (W.D.N.C.).

1.2     **Agreement.** "Agreement" shall mean this Settlement Agreement and Release, and all exhibits.

1.3     **Applicable Workweeks.** "Applicable Workweeks" shall mean, for each FLSA Collective Member, the following, as reflected in S-L's internal records:  the number of complete or partial weeks during which the FLSA Collective Member

owned a distributorship at any time starting three (3) years back from their Opt-in date, through October 20, 2021.[3]

**1.4** **Arbitration Claimants.** "Arbitration Claimants" shall mean the individuals, as identified by FLSA Collective Counsel, who are pursuing claims against S-L in individual arbitration proceedings.

**1.5** **Claims Administrator.** "Claims Administrator" shall mean Settlement Services, Inc., 2032-D Thomasville Road, Tallahassee, FL 32308.

**1.6** **Complaint.** "Complaint" shall mean the operative Complaint filed in the Action.

**1.7** **Court.** "Court" shall mean the U.S. District Court for the Western District of North Carolina, Charlotte Division.

**1.8** **Covered Period.** "Covered Period" shall mean March 22, 2015 through the Effective Date.

**1.9** **Effective Date; Effective.** The "Effective Date," or the date upon which this Agreement is Effective, is thirty-one (31) calendar days after the Order Granting Approval of this Agreement, if no appeal is filed. If an appeal is taken, the Effective Date shall be thirty (30) calendar days after the date the appeal is dismissed or denied and the Judgement is no longer subject to appeal or other appellate review.

**1.10** **Escrow Account.** "Escrow Account" shall mean the FDIC insured interest-bearing account(s) created and controlled by the Claims Administrator.

**1.11** **FLSA Collective; FLSA Collective Member.** "FLSA Collective" shall refer to Named Plaintiff and the individuals who both (1) timely opted-in to the Action, and (2) who remain opt-in plaintiffs as of October 20, 2021. A member of the FLSA Collective is a "FLSA Collective Member." Attached hereto as Exhibit 1 is a complete and exclusive list of the individuals comprising the FLSA Collective.

**1.12** **FLSA Collective Counsel.** "FLSA Collective Counsel" shall mean Winebrake & Santillo, LLC and Woolf, McClane, Bright, Allen & Carpenter, PLLC.

**1.13** **FLSA Collective Member Releasees.** "FLSA Collective Member Releasees" shall mean Named Plaintiff, each FLSA Collective Member, and each of their business entities, if any.

**1.14** **Individual Settlement Amount.** "Individual Settlement Amount" shall mean the final gross amount (not including any Service Award amount) sent to any Named Plaintiff or FLSA Collective Member under this Agreement. The methodology for determining the Individual Settlement Amount is described in Section 3.4(a).

---

[3] Notwithstanding this definition, every FLSA Collective Member shall be awarded at least one (1) "Applicable Workweek."

1.15    **Named Plaintiff.** "Named Plaintiff" shall mean Jared Mode, and shall also include any and all of his representatives, business entities, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.16    **Net Settlement Fund.** "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for: court-approved attorneys' fees and costs as described in Section 3.2; court-approved service payments as described in Section 3.3; Settlement Administration Expenses not to exceed Ten Thousand Five Hundred Dollars ($10,500.00) as described in Section 2.2; any fees associated with investing and liquidating the Settlement Payment as described in Section 3.1; any taxes incurred directly or indirectly as a result of investing the Settlement Payment; and the Reserve Fund as described in Section 1.19. The Net Settlement Fund shall be used to pay all amounts due to Named Plaintiff and FLSA Collective Members pursuant to Section 3.4.

1.17    **Order Granting Approval and Dismissing the Action with Prejudice.** "Order Granting Approval and Dismissing the Action with Prejudice" or "Order Granting Approval" shall mean the Order entered by the Court approving, *inter alia*, the terms and conditions of this Agreement and dismissing the Action with prejudice, while still retaining continuing jurisdiction over administration of the Settlement. A proposed version of the Order Granting Approval shall be submitted to the Court in the form attached hereto as Exhibit 2.

1.18    **Parties.** "Parties" shall refer to Named Plaintiff, FLSA Collective Members, and S-L.

1.19    **Reserve Fund.** "Reserve Fund" shall mean an amount of Fifteen Thousand Dollars ($15,000.00) that will be taken from the Settlement Fund and retained by the Claims Administrator for purposes of adjusting upwards the Individual Settlement Amount of any FLSA Collective Member who establishes (to the satisfaction of FLSA Collective Counsel and S-L's Counsel) that his/her Applicable Workweeks have been undercounted. Any portion of the Reserve Fund that has not been distributed to FLSA Collective Members within one hundred twenty (120) calendar days of the Effective Date shall be donated by the Claims Administrator to the United Way of Central Carolinas.

1.20    **Service Award.** "Service Award" means the amounts approved by the Court to be paid, pursuant to Section 3.3, to Named Plaintiff and the thirty (30) FLSA Collective Members who sat for depositions.

1.21    **S-L.** "S-L" shall refer collectively to the defendants in the Action, including S-L Distribution Company, LLC, S-L Routes, LLC, S-L Distribution Company, Inc., and Snyder's-Lance, Inc.

1.22    **S-L's Counsel.** "S-L's Counsel" shall mean Morgan, Lewis & Bockius LLP and Bradley Arant Boult Cummings LLP.

4

**1.23    S-L Releasees.**  "S-L Releasees" shall mean S-L and their present, former and future affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with them.

**1.24    Settlement.**  The "Settlement" shall mean the settlement embodied by this Agreement, and all exhibits.

**1.25    Settlement Administration Expenses.**  "Settlement Administration Expenses" are those expenses incurred and charged by the Claims Administrator in effectuating the Settlement.

**1.26    Settlement Checks.**  "Settlement Checks" means the checks issued to Named Plaintiff and FLSA Collective Members for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement, and any Service Awards approved by the Court.

**1.27    Settlement Fund.**  The "Settlement Fund" shall mean the settlement fund created by the payment by S-L of up to the Maximum Settlement Amount of Six Million Dollars ($6,000,000.00).

**1.28    Unclaimed Funds.**  "Unclaimed Funds" shall mean the aggregate amount of Individual Settlement Amounts not claimed by FLSA Collective Members in a timely and valid manner.  All Unclaimed Funds shall be paid to the state unclaimed property fund in the state in which the relevant FLSA Collective Member is last known to have resided.

## 2.    APPROVAL AND COLLECTIVE NOTICE

**2.1    Stipulation to Continued Certification.**  The Parties stipulate, for settlement purposes only, to the continued certification by the Court of a collective action as to all claims encompassed by the Settlement pursuant to the FLSA.  If for any reason the Court does not enter an Order Granting Approval, or if this Settlement is lawfully terminated for any other reason, S-L reserves its right to seek decertification of the collective and/or its right appeal the Court's decision denying S-L's previous motion for decertification (Dkt. 673).  Under such circumstances, FLSA Collective Counsel shall not cite to or use this Agreement or the Order Granting Approval in any other judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive, or procedural.

**2.2    Retention of Claims Administrator.**  The Claims Administrator shall be responsible for the claims administration process and distributions to the FLSA Collective Members as provided herein, as well as for making any mailings and

performing other services as required under this Agreement. The Parties agree to cooperate with the Claims Administrator and assist it in administering the Settlement. Subject to court approval, Ten Thousand Five Hundred Dollars ($10,500.00) in Settlement Administration Expenses shall come out of the Settlement Fund. Any additional monies owed to the Settlement Administrator shall be paid exclusively by FLSA Collective Counsel.

2.3    **Final Order and Approval by the Court.**  As soon as practicable and in accordance with any deadlines imposed by the Court, Named Plaintiff, on behalf of himself and all FLSA Collective Members, will file a motion seeking the Court's approval of (i) the terms of this Agreement and request dismissal of the Action with prejudice, on the condition that the Court retain jurisdiction to administer and enforce the terms of this Agreement and (ii) the payment of attorneys' fees and costs to FLSA Collective Counsel.

(a)    A condition precedent to this Agreement is the Court's entry of the Order Granting Approval. Named Plaintiff and FLSA Collective Members agree to seek approval of the Settlement by filing with the Court a Motion for Approval of Settlement on or before November 5, 2021. S-L will be provided an opportunity, at least three (3) days in advance of filing, to review and comment on Named Plaintiff and FLSA Collective Members' Motion for Approval of Settlement, and subject to their proposed revisions and comments, will not oppose the Motion for Approval of Settlement.

(b)    Any Motion for Approval of Settlement shall provide to the Court for review and approval this Agreement, including (i) the proposed Order Granting Approval and Dismissing the Action with Prejudice attached hereto as Exhibit 2; (ii) the Notice of Settlement of Collective Action Lawsuit to all FLSA Collective Members attached hereto as Exhibit 3; and (iii) such other information (such as, for example, a memorandum of law) required by the Court.

2.4    **Collective Notice.**

(a)    On or before November 2, 2021, S-L will provide to FLSA Collective Counsel a list, in electronic form, of the Applicable Workweeks worked by each FLSA Collective Member. FLSA Collective Counsel and S-L's Counsel will work diligently and cooperatively to make any necessary corrections or adjustments to this list.

(b)    Within seven (7) calendar days after the Effective Date, the Claims Administrator shall mail, via First Class United States mail, using each FLSA Collective Member's last known address as provided by FLSA Collective Counsel: (i) the Notice of Settlement of Collective Action Lawsuit to all FLSA Collective Members; and (ii) a Settlement Check. The Claims Administrator shall give S-L's Counsel two (2) business days' notice before the Notices and Settlement Checks are mailed out. The

Notices and Settlement Checks shall inform FLSA Collective Members of their rights under this Agreement, of the formula used to calculate their Individual Settlement Amounts, and of the amounts of their Individual Settlement Amounts. If any Settlement Checks are returned to the Claims Administrator as undeliverable, the Claims Administrator and FLSA Collective Counsel will work diligently to locate updated addresses and re-mail the Settlement Checks accordingly. S-L's Counsel and FLSA Collective Counsel have the right to make inquiries and receive any information from the Claims Administrator as is necessary to the administration of this Settlement, except that the Parties specifically agree, for privacy purposes, that the Claims Administrator shall not provide identifying information and social security numbers to any other entity.

2.5 **Entry of Judgment.** In their proposed Order Granting Approval, the Parties will request that the Court, among other things, (a) approve the Settlement as fair, adequate, reasonable, and binding on Named Plaintiff and all FLSA Collective Members, (b) dismiss the Action with prejudice, (c) enter an order permanently enjoining Named Plaintiff and all FLSA Collective Members from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (d) incorporate the terms of this Agreement.

2.6 **Right to Revoke.** S-L has the right to withdraw from the Settlement at any time prior to the entry of the Order Granting Approval if: (a) the terms of this Agreement construed by the Court are materially different from the Parties' Agreement; or (b) Named Plaintiff and/or FLSA Collective Counsel materially breach the Agreement.

2.7 **Effect of Revocation or Failure to Grant Final Approval.** In the event S-L revokes the settlement pursuant to Section 2.6, (i) this Agreement shall have no force or effect, other than the non-disclosure provisions in Section 3.10, and the non-admission provisions in Section 3.9; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) the stipulation described in Section 2.1 shall become null and void; (iv) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of collective action certification or the merits of Named Plaintiff's claims or any other issue; and (v) the Action will continue as if the Agreement had never been entered.

## 3. SETTLEMENT TERMS

3.1 **Settlement Payment.**

(a) S-L agrees to pay a maximum of Six Million Dollars ($6,000,000.00) (the "Maximum Settlement Amount"), which shall resolve and satisfy all monetary obligations under this Agreement, including all attorneys' fees,

litigation costs, Settlement Administration Expenses, payments to FLSA Collective Members, all applicable taxes, interest, the Reserve Fund, and the Service Awards. S-L shall not pay more than the Maximum Settlement Amount.

(b)     When and if the Court enters the Order Granting Approval, the Defendants shall deposit via wire transfer into the Escrow Account the Maximum Settlement Amount no later than the Effective Date. Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Fund.

(c)     The Claims Administrator will calculate the final amounts due to each FLSA Collective Member as the Individual Settlement Amount and issue checks payable to the FLSA Collective Members.

(d)     Within seven (7) calendar days after the Effective Date, the Claims Administrator will make the following distributions of money from the Escrow Account: (i) pay any Court-approved attorney's fees and costs/expenses to FLSA Collective Counsel; (ii) pay any Court-approved Service Awards to Named Plaintiff and other eligible FLSA Collective Members; (iii) pay any Court-approved Settlement Administration Expenses up to Ten Thousand Five Hundred Dollars ($10,500.00) to itself; and (iv) pay FLSA Collective Members their Individual Settlement Amounts.

(e)     The Parties agree that the Escrow Account is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), 26 U.S.C. Section 468B and Treas. Reg. §1.468B-1, 26 C.F.R § 1.468B-1, *et seq*., and will be administered by the Claims Administrator as such. The Claims Administrator shall apply for an employer identification number ("EIN") for the Escrow Account pursuant to Internal Revenue Service ("IRS") Form SS-4, and in accordance with Treas. Reg. §1.468B-2(k)(4), 26 C.F.R § 1.468B-2(k)(4). With respect to the Escrow Account, the Claims Administrator shall: (1) satisfy all federal, state and local and income and other tax reporting, return and filing requirements with respect to the Escrow Account; and (2) satisfy out of the Escrow Account all (i) taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the Escrow Account, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the Escrow Account and the performance of its duties and functions as described in this Stipulation. The aforementioned taxes, fees, costs and expenses shall be treated as and included in the costs of administering the Escrow Account. The Parties and the Claims Administrator shall elect to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund on the earliest date set forth in Treas. Reg. §1.468B-1(j)(2)(i), 26 C.F.R §1.468B-1(j)(2)(i), and that such

election statement shall be attached to the appropriate returns as required by Treas. Reg. §1.468B-1(j)(2)(ii), 26 C.F.R §1.468B-1(j)(2)(ii). The Parties agree to cooperate with the Claims Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section 3.1(e). The Claims Administrator will agree to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the Escrow Account. S-L (or some other person on behalf of S-L) shall supply to the Claims Administrator and to the IRS the statement described in Treas. Reg. §1.468B-3(e)(2), 26 C.F.R §1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which S-L (or some other person on behalf of S-L) makes a transfer to the Escrow Account.

(f)     It is intended that all transfers by S-L to the Escrow Account will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Code, 26 U.S.C. Section 461(h)(1), and Treas. Reg. § 1.461-1(a)(2), 26 C.F.R. § 1.461-1(a)(2). As such, S-L shall not be taxed on any income of the Escrow Account.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(a)     FLSA Collective Counsel shall not seek more than Two Million Dollars ($2,000,000.00) in attorneys' fees, plus actual and reasonable litigation costs and expenses not to exceed Eighty-Six Thousand Nine Hundred Fifty-Six Dollars ($86,956.00). S-L will not oppose such applications provided that FLSA Collective Counsel has abided by the terms of this Agreement. S-L shall have no additional liability for attorneys' fees and costs relating to the Action, the Settlement, or any claims or theories released by this Settlement.

(b)     The outcome of any proceeding related to FLSA Collective Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Approval of Settlement. Attorneys' fees and costs sought by FLSA Collective Counsel but not awarded shall return to the Net Settlement Fund.

**3.3    Service Awards.** FLSA Collective Counsel will apply to the Court for Named Plaintiff to receive a Service Award not to exceed Fifteen Thousand Dollars ($15,000.00) and for the FLSA Collective Members who sat for depositions[4] to

---

[4] Such FLSA Collective Members include: Robert Akelman; Ana Arredondo; Steven Baluha; Michael Bramer; Jeremy Bowers; Steve Bushnell; Lindell Davis; Kerry Donyes; Anthony Eardley; Richard Ferencak; Larry Fritts; Kenneth Frizzell; Richard Fulmer; Jonathan Garguilo; Monika Hanna; Nathan Hyde; Michael Jones; John Kilgo; Josh Mahany; Mike Mazurkiewicz; Jason McCabe; Joseph Perilli; William Pruitt; Chris Ravas; John Seibert; Michael Sturino; Robert Sturino; John Tubertini; Keith Viewig; and Charles Wilborn.

receive individual Service Awards of Two Thousand Five Hundred Dollars ($2,500.00). S-L will not oppose such application provided it is made in accordance with the terms of this Agreement. The outcome of the Court's ruling on the application for Service Awards shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Approval of Settlement. The amount of a Service Award sought but not awarded shall return to the Net Settlement Fund.

**3.4    Distribution to FLSA Collective Members.**

(a)    The Net Settlement Fund shall be the amount of money remaining from the Six Million Dollar ($6,000,000.00) Settlement Fund after deducting (a) attorneys' fees and costs/expenses approved by the Court pursuant to Section 3.2; (b) any Service Awards approved by the Court pursuant to Section 3.3; (c) and Settlement Administration Expenses pursuant to Section 2.2; and (d) the Reserve Fund pursuant to Section 1.19. Subject to the allocations listed above, each FLSA Collective Member's Individual Settlement Amount from the Net Settlement Fund will be determined as follows: [Net Settlement Fund] *multiplied by* [(Applicable Workweeks attributable to the individual FLSA Collective Member) *divided by* (total combined Applicable Workweeks attributable to all FLSA Collective Members)].

(b)    Any funds in the Net Settlement Fund that are not timely claimed by FLSA Collective Members shall be considered Unclaimed Funds.

(c)    The allocation of amounts for FLSA Collective Members shall be kept strictly confidential by the Claims Administrator and will not be disclosed to anyone beyond FLSA Collective Counsel and S-L's Counsel except as is necessary to the administration of the Settlement. To the extent the allocation amount tendered to any FLSA Collective Member or for any Settlement Check must be filed with the Court, the information will be filed under seal at S-L's option.

(d)    S-L and the Claims Administrator shall exchange such information as is necessary and reasonably available for the Claims Administrator comply with tax reporting obligations as described in Section 3.1(e).

(e)    FLSA Collective Members will have one hundred twenty (120) calendar days after the date of the initial mailing to redeem their settlement payments. If FLSA Collective Members do not redeem their Settlement Checks within the one hundred twenty (120) day period, their settlement checks (the "Unclaimed Checks") will be void and a stop-payment will be placed. In such event, the amounts associated with the Unclaimed Checks will be considered Unclaimed Funds. Any FLSA Collective Member who requires a resent Notice and Settlement Check as set forth in Section 2.4(b) will have the greater of one hundred twenty (120) calendar days after the date of the

initial mailing or thirty (30) calendar days after the date of the resent mailing. FLSA Collective Members who do not redeem their settlement checks shall remain bound by this Settlement and the Releases in Section 3.6. This Agreement and the associated Final Order and Judgment do not and will not create any unpaid residue or unpaid residual with respect to the Unclaimed Funds or Unclaimed Checks, and no distribution of such shall be required. The outcome of any proceeding related to the distribution of amounts associated with Unclaimed Checks shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Approval of Settlement.

(f)     All payments to FLSA Collective Members made pursuant to this Agreement shall be deemed to be paid to such FLSA Collective Members solely in the year in which such payments actually are received by the FLSA Collective Members.

**3.5     Taxability of Settlement Payments.**

(a)     Within thirty (30) calendar days following the Order Granting Approval, Named Plaintiff shall provide the Claims Administrator with a duly completed IRS Form W-9 or applicable IRS Form W-8 together with any other documentation and information requested by the Claims Administrator in connection with the Claims Administrator's tax reporting obligations under the IRS Code. Named Plaintiff and FLSA Collective Members understand that in the event valid U.S. tax forms or other required supporting document are not provided to the Claims Administrator, the Claims Administrator may be required to withhold tax from payments made pursuant to this Agreement. The Claims Administrator shall report payments to Named Plaintiff and FLSA Collective Members on the applicable IRS Form 1099 as required by the IRS Code.

(b)     For tax purposes, the payments to Named Plaintiff and FLSA Collective Members pursuant to Sections 3.3 and 3.4 shall be allocated as follows: non-wages, liquidated damages, and interest (100% of each settlement payment). Named Plaintiff and FLSA Collective Members will be exclusively responsible for their own portion of any tax liability associated with their settlement payment. The Claims Administrator shall be responsible for making all reporting, deposits, and withholdings (if any) with respect to all amounts payable to FLSA Collective Members required pursuant to any federal, state, or local tax law or regulation under the EIN of the Escrow Account or S-L, as required by applicable law.

(c)     Within thirty (30) calendar days following the Order Granting Approval, FLSA Collective Counsel shall provide the Claims Administrator with a duly completed IRS Form W-9. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be reported by the Claims Administrator on the applicable IRS Form 1099 as required by the IRS Code and shall be

made without withholding, provided the Claims Administrator has timely received a duly completed Form W-9 from FLSA Collective Counsel.

(d)     Named Plaintiff and FLSA Collective Members agree to indemnify and hold harmless S-L and S-L Releasees for any taxes, penalties, interest or other amounts due or owing by the Named Plaintiff and FLSA Collective Members on such payments.  Other than the 24% backup withholdings that the Claims Administrator will apply to each Individual Settlement Amount, S-L and the Claims Administrator will not make from the payment to Named Plaintiff or FLSA Collective Members any deductions, withholdings, or additional payments, including without limitation, FICA tax, any federal and/or state unemployment tax, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Final Order and Judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments.  Any amount paid to Named Plaintiff or FLSA Collective Members shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by S-L.

(e)     Each individual Plaintiff and FLSA Collective Member will be solely responsible for all taxes, interest, penalties, or other amounts due with respect to any payment received pursuant to this Agreement. Named Plaintiff, on behalf of the FLSA Collective Members, acknowledges and agrees that he has not relied upon any advice from S-L as to the taxability of the payments received pursuant to this Agreement.

(f)     The Claims Administrator shall handle all tax reporting with respect to the payments being made pursuant to this Agreement, and shall report the payments in accordance with applicable law.

**3.6     Release.**

(a)     **General Release of Claims by Named Plaintiff.**  Named Plaintiff, on behalf of himself and any owners, employees, helpers, representatives, agents, and spouses or family members engaged in his business or contracting with S-L, and their businesses (the "Mode Releasors"), hereby releases, remises, and forever discharges the S-L Releasees from all claims that were or could have been raised in this Action, including but not limited to, all wage and hour and wage payment claims, including claims under the Fair Labor Standards Act, and all other federal, state, or local wage and hour laws and wage payment laws (including but not limited to laws or regulations related to alleged misclassification as independent contractors, overtime, straight time wages, meal and rest breaks, wage statements, wage notice, minimum wage, expense reimbursement, and allegedly unlawful deductions), related common law theories (including but not limited to

claims for breach of contract and unjust enrichment), including all liquidated damages, civil penalties, equitable relief, fees, costs, or other damages/relief, as well as any other employment-related claims, including but not limited to claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 (ERISA), the Equal Pay Act, the Family and Medical Leave Act, Section 1981 of the U.S. Code, the National Labor Relations Act, the Sarbanes-Oxley Act of 2002, and any other similar state and local employment laws, which Named Plaintiff did assert or could have asserted in the Action, or which the Mode Releasors ever had against the S-L Releasees at any time prior to the date on which the terms of the Parties' Settlement is approved by the Court (the "Claims Released by Mode Releasors").

In the event Named Plaintiff asserts a claim or otherwise participates in an action brought under the FLSA or state wage and hour or wage payment laws in violation of this Section 3.6(a), Named Plaintiff agrees to pay back to S-L the non-fees portion of the consideration for this Agreement. Named Plaintiff acknowledges and agrees that he may discover facts in addition to, or distinct from, those facts that he knows or believes to be true at the time of execution of this Agreement, but nonetheless, Named Plaintiff acknowledges and agrees that his intention is to finally and forever settle and release all of the Claims Released by Mode Releasors against the S-L Releasees, notwithstanding any prospective or undiscovered claims he may have arising prior to the date on which the terms of the Parties' Settlement is approved by the Court. Named Plaintiff also agrees to hold harmless the S-L Releasees from all claims, demands, obligations, actions, causes of action, suits, debts, damages, interest, costs, taxes and expenses of whatever kind and nature, including, but not limited to, attorneys' fees, arising out of, on account of, or relating to: (i) the Claims Released by Mode Releasors; and/or (ii) any representation or warranty made by Named Plaintiff in this Agreement.

Named Plaintiff does not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that he agrees not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom.

Named Plaintiff agrees and acknowledges that he has had the opportunity to seek the advice of counsel, and that this is a knowing and voluntary waiver. Named Plaintiff shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he may otherwise have had relating to the claims identified n this Section.

Named Plaintiff further agrees and acknowledges that he has not made any claims or allegations related to sexual harassment or sexual abuse, and none

of the payments to him as set forth in this Agreement are related to allegations of sexual harassment or sexual abuse.

FLSA Collective Counsel has clearly explained the terms of this General Release to Named Plaintiff.

**Release of Claims by All Other FLSA Collective Members.** Upon the entry of the Order Granting Approval, each FLSA Collective Member, on his or her behalf, and on behalf of any owners, employees, helpers, representatives, agents, and spouses or family members engaged in their business or contracting with S-L, and their businesses (the "FLSA Collective Member Releasors"), shall fully release and discharge S-L Releasees from all claims that were or could have been raised in the Action, including but not limited to all wage and hour and wage payment claims, including claims under the Fair Labor Standards Act, and all other federal, state (including, but not limited to, claims under the Massachusetts Wage Act), or local wage and hour laws and wage payment laws (including but not limited to laws or regulations related to alleged misclassification as independent contractors, overtime, straight time wages, meal and rest breaks, wage statements, wage notice, minimum wage, expense reimbursement, and allegedly unlawful deductions), and related common law theories including all liquidated damages, civil penalties, equitable relief, fees, costs, or other damages/relief (the "Claims Released by FLSA Collective Member Releasors"). FLSA Collective Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may have otherwise had relating to the claims identified in this paragraph.

It is further understood and agreed that, as a condition of this Release, any FLSA Collective Members who might have claims arising under California law are aware of and familiar with the provisions of California Civil Code 1542, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." For the purposes of implementing a full and complete release as to the wage and hour claims released by FLSA Collective Members, the FLSA Collective Members hereby expressly waive and relinquish all rights and benefits he or she may have under this provision, as well as under any other statutes or common law principle of similar effect.

(b)    **Release of Claims by S-L.** For and in consideration of the mutual promises and covenants contained herein and other good and valuable consideration, the receipt, adequacy, and sufficiency of which is hereby acknowledged, and subject to Sections 3.6(c) and (d) below, S-L, on behalf of itself and its past, present and future representatives, directors, officers, employees,

14

shareholders, members, parent companies, subsidiaries, affiliates, agents, predecessors, successors, assigns, attorneys and insurers (hereinafter collectively the "S-L Releasors"), hereby release, remise, and forever discharge Named Plaintiff and FLSA Collective Member Releasees from and against any and all past and present counterclaims and third-party claims for unjust enrichment and indemnification related to Named Plaintiff's and FLSA Collective Members' allegations that they were misclassified as independent contractors rather than employees that were or could have been asserted in the Action ("Claims Released by the S-L Releasors").

(c)     **Certain Claims Not Released by This Agreement.**   For any FLSA Collective Member who currently operates an S-L distributorship and is subject to an operative Distributor Agreement, the following claims are excluded from the Claims Released by FLSA Collective Members and the S-L Releasors: (i) claims related to payments owed by S-L to FLSA Collective Members and/or his or her corporate entity and payments owed by FLSA Collective Members and/or his or her corporate entity to S-L under settlement statements, including but not limited to, payments for balances owed, purchases, sales credit and other charges or credits; (ii) claims by S-L against a FLSA Collective Member and/or his or her corporate entity that relate to or arise from third-party complaints brought against S-L; and (iii) claims arising after the Effective Date.

(d)     Nothing in this Release shall prohibit or restrict Named Plaintiff, FLSA Collective Members, S-L Releasees, or FLSA Collective Member Releasees, from: (i) providing information to or cooperating with Congress, the Securities and Exchange Commission ("SEC"), the Commodity Futures Trading Commission ("CFTC"), the Consumer Financial Protection Bureau ("CFPB"), the EEOC, the Occupational Safety and Health Administration ("OSHA"), the National Labor Relations Board ("NLRB"), Department of Justice ("DOJ") or any other federal, state, or local government, regulatory, or law enforcement agency ("Government Agencies"), the Financial Industry Regulatory Authority ("FINRA") or the "New York Stock Exchange, Inc. ("NYSE"), or any other self-regulatory organization ("SRO"); (ii) reporting to any of the S-L Releasees' management or directors regarding conduct the individual believes to be in violation of the law or prohibits or restricts the individual from providing information to or cooperating with any Government Agencies or any SROs; (iii) communicating with any Government Agencies or SRO or otherwise participating in any investigation or proceeding that may be conducted by any Government Agency or SRO, including providing documents or other information; or (iv) receiving an award for information provided to any Government Agencies other than for charges filed with the EEOC or corresponding state or local agency as set forth above. Named Plaintiff and FLSA Collective Members may also disclose confidential information, including trade secrets, to (a) any government, regulatory or self-regulatory

agency, including under Section 21F of the Securities and Exchange Act of 1934, Section 23 of the Commodity Exchange Act of 1936, or Section 7 of the Defend Trade Secrets Act of 2016 ("Defend Trade Secrets Act") and the rules thereunder, or (b) an attorney in connection with the reporting or investigation of a suspected violation of law or to an attorney or in a court filing under seal in connection with a retaliation or other lawsuit or proceeding, as permitted under the Defend Trade Secrets Act. Named Plaintiff and FLSA Collective Members do not need the prior authorization of S-L to make these disclosures or provide evidence or other information to any government, regulatory, or self-regulatory agency, and Named Plaintiff and FLSA Collective Members are not required to notify S-L that they have done so.

(e)     Named Plaintiff and FLSA Collective Members further covenant that they will not participate in any other legal actions against S-L for claims released by this Settlement, and will not opt-in, will withdraw any opt-in, and will dismiss the action or themselves from any such actions.

(f)     **Release of Fees and Costs for Settled Matters.** FLSA Collective Counsel and Named Plaintiff, on behalf of the FLSA Collective Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against S-L or S-L Releasees for attorneys' fees or costs associated with FLSA Collective Counsel's representation of Named Plaintiff and the FLSA Collective Members in the Action, the Settlement, or any claims being Released by this Agreement and related papers. FLSA Collective Counsel further understand and agree that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees and costs associated with FLSA Collective Counsel's representation of these individuals and/or their representation in the Litigation.

**3.7     Future Inquiries.** It is the Parties' desire that this Agreement the final resolution of any disputes that were or could have been included in this Action. To the extent, consistent with FLSA Collective Counsel's legal and ethical obligations, anyone operating (or anyone that previously operated) a S-L distributorship who is not a FLSA Collective Member or pursuing claims against S-L or any S-L Releasee in a different forum but later contacts FLSA Collective Counsel expressing interest in pursuing claims that were or could have been raised in this Action, will be presented by FLSA Collective Counsel to S-L Releasees for settlement consistent with the terms of this Agreement before filing any individual, class, or collective claims. FLSA Collective Counsel represents that other than Named Plaintiff, the FLSA Collective Members, the Arbitration Claimants, the named plaintiffs in *Maranzano v. S-L Distribution Company , LLC* (No. 1:19-cv-01997-JPW (M.D. Pa.)), *Marston v. S-L Distribution Company, LLC* (No. 1:19-cv-02187-JPW (M.D. Pa.)), *Vrabac v. S-L Distribution Company, LLC* (1:20-cv-00937-JPW (M.D. Pa.)), and *Charleau v. S-L Distribution Company, LLC* (No. 1:20-cv-00879-JPW (M.D. Pa.)), the putative class members in *Maranzano v. S-L Distribution Company, LLC* (No.

1:19-cv-01997-JPW (M.D. Pa.)), and anyone presented to S-L's Counsel consistent with this Agreement, FLSA Collective Counsel does not have any other current clients who have actual or potential claims against any of the S-L Releasees. Additionally, FLSA Collective Counsel is not aware of any other individuals who operate or operated a S-L Distributorship contemplating claims against any of the S-L Releasees. Nothing in this Section 3.7 shall be construed to require S-L or any S-L Releasee to reach a settlement or engage in settlement negotiations with any individual or entity that is presented to S-L's Counsel.

3.8 **No Assignment.** FLSA Collective Counsel and Named Plaintiff, on behalf of the FLSA Collective, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

3.9 **Non-Admission.** Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by S-L or S-L Releasees of any liability, culpability, negligence, or wrongdoing toward the Named Plaintiff, the FLSA Collective Members, or any other person, and S-L and S-L Releasees specifically disclaim (i) any liability, culpability, negligence, or wrongdoing toward the Named Plaintiff, the FLSA Collective Members, or any other person; (ii) that class or collective action certification is appropriate in this or any other matter; or (iii) that S-L is an employer or joint employer of Named Plaintiff, FLSA Collective Members, or anyone they seek or sought to represent in the Action or otherwise. Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and uncertainty. This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence (i) of liability; (ii) that class or collective action certification is appropriate; or (iii) that S-L is an employer or joint employer of anyone. There has been no determination by any court as to (i) the merits of the claims asserted by Named Plaintiff against S-L, or (ii) whether S-L is an employer or joint employer of anyone, including Named Plaintiff or FLSA Collective Members.

3.10 **Non-Disclosure/Non-Disparagement.** Except as necessary to effectuate the Settlement of this Action, Named Plaintiff and FLSA Collective Counsel agree not to disclose to individuals other than immediate family, tax preparers, accountants, financial advisors, and attorneys the terms of this Settlement or the negotiations leading thereto except in court papers or if required by legal process or protected by law, and to the extent information regarding this Settlement or the negotiations is disclosed to such individuals, Named Plaintiff and FLSA Collective Counsel will require them to adhere to the confidentiality provisions of this Settlement and the obligation to keep the information confidential prior to doing so. Neither Named Plaintiff nor FLSA Collective Counsel shall, directly or indirectly, issue or cause to be issued any statements to the media or engage in any other publicity regarding the Agreement or the Settlement, nor shall they issue any notice of the Settlement

to anyone else except for the notice issued through the Claims Administrator as set forth in this Agreement.

Neither Named Plaintiff nor FLSA Collective Counsel, directly or indirectly, shall issue a press release, hold a press conference, publish information about the settlement or the settlement negotiations on any social media application, email correspondence, website or otherwise publicize the settlement or negotiations. Named Plaintiff and FLSA Collective Counsel agree not to respond to any press inquiries concerning the Settlement except to refer reporters to the papers filed with this Court. Named Plaintiff and FLSA Collective Counsel further agree not to make disparaging comments relating to S-L or any S-L Releasees. These obligations of Named Plaintiff and FLSA Collective Counsel apply regardless of whether the Court approves S-L's motion to file this Agreement under seal.

3.11 **Liquidated Damages for Breach.** In the event of a breach by Named Plaintiff of the terms of Section 3.10, Named Plaintiff agrees that S-L shall be entitled to liquidated damages in an amount equal to 50% of Named Plaintiff's Individual Settlement Amount. Named Plaintiff agrees that a breach of Section 3.10 constitutes a breach of this Agreement and that it would be impossible or impracticable to compute the actual damages resulting from such breach, and the liquidated damages amount set forth in this Agreement is reasonable in light of the anticipated damage S-L would suffer from a breach of Section 3.10. Named Plaintiff agrees that the liquidated damages provision is in addition to, and not in lieu of, any rights, damages, or remedies that S-L may have available pursuant to federal, state, or local law.

3.12 **Non-Interference With Settlement.** Pending the Court's decision on approval of the Settlement and entry of the Court's Final Order and Judgment, Named Plaintiffs, FLSA Collective Members, and anyone acting on behalf of them or their business entities (if any) shall be barred and enjoined from: (a) further prosecution of the litigation; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate in a class or collective action, or any other claim or proceeding against S-L in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

3.13 **Jurisdiction.** The Parties will ask Court to retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement so that all FLSA Collective Members must submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement.

3.14 **Returns and/or Destruction of Confidential and Settlement Materials.** Named Plaintiff and FLSA Collective Counsel agree to return and/or destroy all documents and materials designated as "Confidential" pursuant to the Parties' Protective Order in the Action (Dkt. 157) or produced to them in connection with settlement negotiations in the Action.

18

### 3.15 Miscellaneous.

(a) **Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(b) **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(c) **Binding Effect.** As reflected in each FLSA Collective Member's opt-in consent form, this Agreement shall be binding upon the Parties and FLSA Collective Counsel, and, with respect to Named Plaintiff and the FLSA Collective Members, their representatives, business entities, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

(d) **Severability.** Should any clause, sentence, provision, paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

(e) **Arm's-Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's-length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(f) **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(g) **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(h)  **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of North Carolina, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(i)  **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of Named Plaintiff, S-L, and FLSA Collective Counsel and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(j)  **When Agreement Becomes Effective.**  Except for provisions of this Agreement requiring any party to act or seek Court action prior to Court approval, as well as those provisions set forth in Sections 2.6, 3.7, 3.8, 3.9, 3.10, 3.11, and 3.12, which are intended to be binding on the Parties upon mutual execution hereof, this Agreement shall become fully effective upon the Effective Date.

(k)  **Facsimile/Electronic Signatures.**  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

(l)  **Extensions of Time.**  If any deadlines related to this Settlement cannot be met, FLSA Collective Counsel and S-L's Counsel shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement.  In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement.

(m)  **Counterparts.**  The Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

(n)  **Third Party Beneficiaries.**  The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto; but this Agreement is not designed to and does not create any third party

beneficiaries other than third parties that are identified as S-L Releasees and FLSA Collective Member Releasees as defined in Sections 1.13 and 1.23.

*Remainder of Page Intentionally Left Blank*

**NAMED PLAINTIFF:**

DATED: _____11/5/2021_____, 2021     By: _____
                                              Jared Mode


DATED: _____11/5/2021_____, 2021     By: _____
                                              Mitzi Mode, on Behalf of J&M Mode
                                              Distribution LLC

**SNYDER'S-LANCE, INC.**

DATED: _____, 2021             By: _____
                                              On Behalf of Snyder's-Lance, Inc.

**FLSA COLLECTIVE COUNSEL:**

                                          WINEBRAKE & SANTILLO, LLC

DATED: **NOVEMBER 4**, 2021               By: _____


                                          WOOLF, MCCLANE, BRIGHT, ALLEN &
                                          CARPENTER, PLLC

DATED: _____11/5/2021_____, 2021      By: _____
                                              Chad Hatmaker

                                          *Attorneys for Named Plaintiff and the FLSA
                                          Collective*

DocuSign Envelope ID: 0F6D20D5-C865-4BAE-821A-93F00844D430

**NAMED PLAINTIFF:**


DATED: _____, 2021          By: _____
                                           Jared Mode




DATED: _____, 2021          By: _____
                                           Mitzi Mode, on Behalf of J&M Mode
                                           Distribution LLC

**SNYDER'S-LANCE, INC.**


DATED: __11/4/2021___, 2021          By: _____
                                           Valerie Oswalt
                                           On Behalf of Snyder's-Lance, Inc.

**FLSA COLLECTIVE COUNSEL:**


                                      WINEBRAKE & SANTILLO, LLC


DATED: _____, 2021          By: _____



                                      WOOLF, MCCLANE, BRIGHT, ALLEN &
                                      CARPENTER, PLLC


DATED: _____, 2021          By: _____

                                      *Attorneys for Named Plaintiff and the FLSA*
                                      *Collective*

# EXHIBIT 1

| No. | Opt-In Plaintiff |
|---|---|
| 1 | Adams III, James |
| 2 | Akelman, Robert |
| 3 | Alvarez, Gene M. |
| 4 | Amjadi, Mohammad F. |
| 5 | Anderberg, Glen A. |
| 6 | Arpon, Roy A |
| 7 | Arrendondo, Ana M. |
| 8 | Arriaga, Norma |
| 9 | Arrieta, Jesus D. |
| 10 | Assalone, John |
| 11 | Awwad, Samer |
| 12 | Ayers, Robert G. |
| 13 | Baca, Jeremy |
| 14 | Backscheider, Keith |
| 15 | Baggette, Steve |
| 16 | Bailey, Douglas Scott |
| 17 | Baker, Randy Everett |
| 18 | Ballard, George |
| 19 | Baluha, Steven |
| 20 | Barnes, Timothy |
| 21 | Barnette, Randy Hayward |
| 22 | Bassa, Gary |
| 23 | Beauchamps, Louis R. Veras |
| 24 | Beaudet, Corey |
| 25 | Billbe, Dennis |
| 26 | Blanton, Timothy |
| 27 | Blanton, Timothy |
| 28 | Boelling, Sheryl |
| 29 | Boetticher, Todd |
| 30 | Bourne, Timothy |
| 31 | Bowers, Jeremy |
| 32 | Bradley, Christopher M. |
| 33 | Bramer, Michael J. |
| 34 | Brito, Miguel A. |
| 35 | Brogsdale, Terrence |
| 36 | Brooks, Donald |
| 37 | Buchewicz Jr., David |
| 38 | Burris, James J. |
| 39 | Bushnell, Steve |
| 40 | Bynes, Keith G. |
| 41 | Cantrell, Robert |
| 42 | Caron, Ricardo |
| 43 | Carroll, Jason |
| 44 | Cash, Davis William |
| 45 | Castle, Terrelle |
| 46 | Chea, John C. |

| | |
|---|---|
| 47 | Chin-Sang, Damien |
| 48 | Christopher, Jeffrey W. |
| 49 | Clay, Charles F. |
| 50 | Cody, Sonya |
| 51 | Council, Marcus |
| 52 | Courtney, Jerome |
| 53 | Covganka, Joseph |
| 54 | Coward, James F. |
| 55 | Cranmer, Kim L. |
| 56 | Crawford, Matthew |
| 57 | Criblez, Robert |
| 58 | Cruz, Gilberto |
| 59 | Cruz, Marino |
| 60 | Culpepper, Patrick |
| 61 | Cunningham, Chris |
| 62 | Curtis, John |
| 63 | Damico, Gary |
| 64 | Davenport, Nicole M. |
| 65 | Davis, Danny |
| 66 | Davis, Lindell |
| 67 | Defoe, Grenworth Donald |
| 68 | Deluna Jr., Jose |
| 69 | Dewar, Timothy |
| 70 | Dickson, Raymond Jefferson |
| 71 | Dillon-EL, Chaka R. |
| 72 | Doda, Zenel |
| 73 | Donyes, Kerry W. |
| 74 | Druschel, Jordan |
| 75 | Dryden, John |
| 76 | Duarte, Jose M. |
| 77 | Dugan, Richard L. |
| 78 | Dukes III, Rayford |
| 79 | Dunaway, Timothy |
| 80 | Dunn, Raymond P. |
| 81 | Dupuy, Ralph A. |
| 82 | Duran, Daniel |
| 83 | Dyson, Danny M. |
| 84 | Eardley, Anthony |
| 85 | Ennis, Keith |
| 86 | Enochs, Maxine |
| 87 | Eppers, Jeffrey J. |
| 88 | Epperson, Phillip |
| 89 | Erickson, Daniel |
| 90 | Erillo Jr., Romeo C. |
| 91 | Erillo, Lazaro C. |
| 92 | Estabrook, Eric |
| 93 | Everman, Randy G. |

| | |
|---|---|
| 94 | Fabus Jr., RJ |
| 95 | Fagan, Jeffrey |
| 96 | Felmlee, Mark |
| 97 | Ferencak, Richard |
| 98 | Fisher, Richard A. |
| 99 | Fisher, Valery |
| 100 | Flores Almaguer, Oscar D. |
| 101 | Fortune, Laura |
| 102 | Freeman Jr., Boyd S. |
| 103 | Fritts, Larry O. |
| 104 | Frizzell, Kenneth |
| 105 | Fulmer, Richard |
| 106 | Garguilo, Jonathan |
| 107 | Garrett Jr., Wayman C. |
| 108 | Gash, Joseph |
| 109 | Gasser, James R. |
| 110 | Geiger, Kenneth |
| 111 | Glass, Brittany |
| 112 | Godin, Timothy |
| 113 | Gompers, Chase |
| 114 | Granberg, Kevin |
| 115 | Green, Choisce |
| 116 | Green, Paul |
| 117 | Griffin, John |
| 118 | Guevara, Alexander A. |
| 119 | Guevara, Nelson A. |
| 120 | Hanna, Monika |
| 121 | Harris, David C. |
| 122 | Harrison, Timothy |
| 123 | Hart, Shannon M. |
| 124 | Hart, William |
| 125 | Hart, William S. |
| 126 | Hawash, David |
| 127 | Helms, Jessie S. |
| 128 | Henclessy, Anthony Ray |
| 129 | Henderson, Joseph V. |
| 130 | Hessler, Mark |
| 131 | Hicks, Jed L |
| 132 | Hines, Philip |
| 133 | Hitchcock, Aaron T. |
| 134 | Hodell, Patrick |
| 135 | Honeycutt, Ryan |
| 136 | Hopkins, Tyler |
| 137 | Howell, Jeffrey Scott |
| 138 | Hudspeth, Christopher James |
| 139 | Huff, Alvin D. |
| 140 | Humphrey, Brian |

| | |
|---|---|
| 141 | Hyde, Nathan |
| 142 | Jantzi, Ronnie J. |
| 143 | Jenkins, Jason Dwight |
| 144 | Johnson, DeJuan |
| 145 | Jones, Catherine |
| 146 | Jones, James G. |
| 147 | Jones, Michael Daniel |
| 148 | Jones, Michael David |
| 149 | Jones, Roger Dale |
| 150 | Joyce, Kevin |
| 151 | Kempke, Leslie Susan |
| 152 | Kempke, Matthew |
| 153 | Khan, Fakhar |
| 154 | Kiesler, Michael |
| 155 | Kilgo Jr., John |
| 156 | Kinder, Krystal |
| 157 | Kirvan, Wesley James |
| 158 | Kristy, Patrick Andrew |
| 159 | Kukielka, Francis |
| 160 | Lamb, Charlie |
| 161 | Larkin, Matthew J. |
| 162 | Leipard, Robin |
| 163 | Leslie Jr., Harold |
| 164 | Letzinger, David |
| 165 | Lewis, Rocky D. |
| 166 | Liantonio, William |
| 167 | Libby, Eric Gregory |
| 168 | Libby, Greg A. |
| 169 | Llerena, Ovidio |
| 170 | Longley, Shannon Blake |
| 171 | Mahany, Joshua |
| 172 | Maisuria, Jagdish |
| 173 | Mangless, Stephen Otto |
| 174 | Marchant, Michael |
| 175 | Marsh, David |
| 176 | Mason Jr., Frederick D. |
| 177 | Mata, Jose |
| 178 | Mazurkiewicz, Mike |
| 179 | McCabe, Jason |
| 180 | McElhinney, Brad |
| 181 | McElroy, Susan |
| 182 | McLaughlin, Michael |
| 183 | Meeker, Barbara L. |
| 184 | Meeker, Daniel Lee |
| 185 | Mendes, Julie |
| 186 | Meyer, Michael John |
| 187 | Michael, Jeff |

| | |
|---|---|
| 188 | Michaw, Jeff |
| 189 | Mihal, Korey |
| 190 | Miklas, Dave |
| 191 | Miller, Ryan |
| 192 | Miller, Steve |
| 193 | Miller, Steve S. |
| 194 | Mine, Benedict J. |
| 195 | Mittendorf, Tim |
| 196 | Mode, Jared |
| 197 | Montero, Jose |
| 198 | Morea, Anthony |
| 199 | Morena, David |
| 200 | Morris, Billy |
| 201 | Moul, John K. |
| 202 | Mullee Jr., Donald T. |
| 203 | Murchison, Michael Kenneth |
| 204 | Murray, Robert P. |
| 205 | Neal, John C. |
| 206 | Nesta, Anthony J. |
| 207 | Nesta, John |
| 208 | Nestor, Brian |
| 209 | Noland, Rodney Jack |
| 210 | Nored, Kimberly |
| 211 | O'Brien, Derrick |
| 212 | Oliynyk, Serhiy A. |
| 213 | O'Neal, Brian K. |
| 214 | Ornelas, Ronnie |
| 215 | Orosco, Thomas |
| 216 | Oster, Bill |
| 217 | Palestina, Melissa |
| 218 | Paras, Romn |
| 219 | Parker, James |
| 220 | Parks, Ted |
| 221 | Pech, Ricardo |
| 222 | Pedroza, Hugo |
| 223 | Perez, Pedro Arturo |
| 224 | Perilli, Joseph |
| 225 | Peter, Wolfgang |
| 226 | Pfaff, David |
| 227 | Pittman, Christopher |
| 228 | Poole, Jerry E. |
| 229 | Porter, Keith |
| 230 | Pruitt, William David |
| 231 | Qualey, Jenna Danielle |
| 232 | Qualey, Paul |
| 233 | Quinn, Michael Casey |
| 234 | Radcliffe, Darryl |

| | |
|---|---|
| 235 | Rahn, Patricia |
| 236 | Ravas, Christopher Robert |
| 237 | Raybon Jr., Don |
| 238 | Reyes, Erendira |
| 239 | Rhom, Michael D. |
| 240 | Rios, Manuel |
| 241 | Rivera, Stephanie |
| 242 | Robinson, Michael E. |
| 243 | Rodriquez, Joe |
| 244 | Rogers, Gary |
| 245 | Rolf, Frank |
| 246 | Ross, Larry |
| 247 | Rubino, William |
| 248 | Ruiz, David |
| 249 | Sala, David |
| 250 | Salazar, Alfredo |
| 251 | Salazar, Joseles |
| 252 | Samara, Najeh |
| 253 | Sanchez, Nick |
| 254 | Sargeant, Luke |
| 255 | Seibert Jr., John |
| 256 | Sellers, William Kevin |
| 257 | Sharp, Sean |
| 258 | Sharpe, Cynthia |
| 259 | Shaw, Brian P. |
| 260 | Sherman, Glenn |
| 261 | Shofner, James D |
| 262 | Shook, Robert L. |
| 263 | Siener, Richard |
| 264 | Sime, Duwayne |
| 265 | Simmons, Willie Robe |
| 266 | Sipos, Steve |
| 267 | Siruelo, Anastacio |
| 268 | Skwarek, James M. |
| 269 | Smith, Jeffery |
| 270 | Snyder, Jeremy |
| 271 | Sockman Jr., Harry Gene |
| 272 | Sommers, Barry |
| 273 | Soto, Douglas Froylan |
| 274 | Spivey, Willie |
| 275 | Stacy, Shannon |
| 276 | Stewart, Steven M. |
| 277 | Stewart, Travis B. |
| 278 | Stosick III, John P. |
| 279 | Strawn, Derrick |
| 280 | Stuckey, Jason |
| 281 | Sturino, Michael |

| | |
|---|---|
| 282 | Sturino, Robert |
| 283 | Sutton, Philip |
| 284 | Swaby, Anthony G. |
| 285 | Swiderski, Jammie Scott |
| 286 | Tavarez, Miguel |
| 287 | Tavernier, Scott |
| 288 | Taylor, Daniel |
| 289 | Terhell, John |
| 290 | Thacker, Ronald |
| 291 | Thompson, Brandon |
| 292 | Tindall, Watler C. |
| 293 | Tomlin, Ronald T. |
| 294 | Tompkins, Christopher W. |
| 295 | Tubertini, John P. |
| 296 | Tucker, Jawaun |
| 297 | Tuers, Lawrence R. |
| 298 | Turner, Stephanie |
| 299 | Urena, Manuel |
| 300 | Urquhart, Scott |
| 301 | Vargas, Jose Alfredo |
| 302 | Vater, Brandon |
| 303 | Velazquez, Angel M. |
| 304 | Vergara, Haydde |
| 305 | Vieweg, Keith |
| 306 | Volk, Count B. |
| 307 | Wadding-Cuff, Beverly |
| 308 | Wagner, Zola |
| 309 | Walker, Anthony Cornell |
| 310 | Walker, David M. |
| 311 | Walker, Kevin |
| 312 | Walker, Stephen D. |
| 313 | Ward, Chris |
| 314 | Welch Sr., Francis D. |
| 315 | Weniger II, James |
| 316 | Weschler, Andrew |
| 317 | Wetzel, Steven |
| 318 | Whitaker, Marica Denise |
| 319 | Wilborn, Charles |
| 320 | Wildman, Bennett |
| 321 | Williams, George Mark |
| 322 | Wisse, Barry J. |
| 323 | Wisse, Thomas P. |
| 324 | Womack, Lawrence |
| 325 | Woodrum, Thomas A. |
| 326 | Worch, Phil |
| 327 | Wymer, Jacob Shelton |
| 328 | Zagar, Matt |

| 329 | Zamani, Louis |
|-----|---------------|
| 330 | Zepeda, Luis |
| 331 | Zoma, Vivian |

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

JARED MODE, on behalf of himself and all
others similarly situated,

               Plaintiffs,

     v.

S-L DISTRIBUTION COMPANY, LLC,
S-L DISTRIBUTION COMPANY, INC.,
S-L ROUTES, LLC, and SNYDER'S-LANCE,
INC.,

            Defendants.

No. 3:18-cv-00150-KDB-DSC

## [PROPOSED] FINAL ORDER AND JUDGMENT APPROVING FLSA SETTLEMENT

Before the Court is Plaintiffs' Unopposed Motion for Approval of the Fair Labor Standards

Act Settlement (Dkt. ___), the accompanying Settlement Agreement and Release (Dkt. ___), the

accompanying memorandum of law (Dkt. ___), and the accompanying declarations of Peter

Winebrake and Chad Hatmaker (Dkt. ___).  Based on the following, the Court hereby ORDERS

and ADJUDGES that the motion is GRANTED and the Settlement Agreement and Release is

APPROVED.

       1.     District courts within the Fourth Circuit repeatedly explain that FLSA settlements

must be judicially approved for fairness.  *See Kirkpatrick v. Cardinal Innovations Healthcare*

*Solutions*, 352 F. Supp. 3d 499, 502 (M.D.N.C. 2018); *Duprey v. The Scotts Company LLC*, 30 F.

Supp. 3d 404, 407-08 (D. Md. 2014); *Patel v. Barot*, 15 F. Supp. 3d 648, 653-54 (E.D. Va. 2014).

Where – as here – a collective FLSA action is settled on behalf of opt-in plaintiffs who already

have joined the action, Federal Rule of Civil Procedure 23's class action notice protocols do not

apply, and the settlement can be reviewed in a single step.  *See Haskett v. Uber Technologies, Inc.*,

780 Fed. Appx. 25, 27-28 (4th Cir. 2019); *Beasley v. Custom Communications, Inc.*, 2017 U.S. Dist. LEXIS 219975, *4 n. 2 (E.D.N.C. Oct. 24, 2017). Collective FLSA settlements should be approved if the Court determines that: (1) FLSA issues are "actually in dispute; (2) the proposed settlement to those issues is fair and reasonable in light of relevant factors from Rule 23; and (3) the proposed attorneys' fees are reasonable, if included in the agreement." *Thaxton v. Bojangles' Restaurants, Inc.*, 2020 U.S. Dist. LEXIS 225834, *5 (W.D.N.C. Mar. 4, 2020) (citing *Duprey*, 30 F. Supp. 3d at 408). Here, all of these requirements are satisfied. The Settlement is therefore approved and the Claims Administrator shall make all payments to the Named Plaintiff, the FLSA Collective Members, and FLSA Collective Counsel in the full amounts described in the Settlement Agreement and Release.

2.      For Named Plaintiff and each FLSA Collective Member, his or her joining and continued participation in the litigation shall release the particular claims, whether known or unknown, under any federal, state, local or common law, as set forth in the releases in the Settlement Agreement (*see* Section 3.6).

3.      There has been no determination by any Court as to the merits of the claims asserted by Plaintiffs against S-L or any of the Releasees (as defined in the Settlement Agreement). Neither this Order, the Settlement Agreement, nor any other documents or information relating to the offered settlement of this action shall constitute, be construed to be, or be admissible in any other proceeding as evidence: (1) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure, or comparable state laws or rules; or (2) of an adjudication of the merits of this case, including, *inter alia*, S-L's status as an employer or joint employer of the Plaintiffs or

Plaintiffs' entitlement to minimum or overtime wages from S-L. Indeed, as emphasized in the Settlement Agreement, S-L continues to vigorously deny any liability to Plaintiffs..

4.      Named Plaintiff, FLSA Collective Members, and anyone acting on their behalf, shall be barred and enjoined from: filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on an individual, class action, or collective action basis any action, claim, or proceeding against S-L in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

5.      Without affecting the finality of this Final Order and Judgment, this Court retains exclusive jurisdiction over the consummation, performance, administration, effectuation, and enforcement of this Final Order and Judgment as may be necessary or appropriate for the construction and implementation of the terms of the Settlement Agreement.

6.      This action is hereby dismissed in its entirety as against Defendants with prejudice, and without attorneys' fees or costs to any party except as provided in this Final Order and Judgment and in the Settlement Agreement. This Final Order and Judgment is "final" within the meaning of the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure.

7.      The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

      SO ORDERED AND ADJUDGED.


_____                         _____
Date                                        Hon. Kenneth D. Bell
                                              United States District Court Judge

# EXHIBIT 3

|  |  |
|---|---|
| JARED MODE, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>S-L DISTRIBUTION COMPANY, LLC,<br>S-L DISTRIBUTION COMPANY, INC.,<br>S-L ROUTES, LLC, and SNYDER'S-LANCE, INC.,<br><br>Defendants. | No. 3:18-cv-00150-KDB-DSC |

<u>**NOTICE OF SETTLEMENT OF FAIR LABOR STANDARDS ACT LAWSUIT**</u>

**TO:**

[Name]
[Address]
[City, State Zip]

**RE:** **Fair Labor Standards Act Litigation Against S-L Distribution Company, Inc., S-L Distribution Company, LLC, S-L Routes, LLC, and Snyder's-Lance, Inc.**

## 1. INTRODUCTION

This Notice is directed to you because you previously joined, and remain a party to, the above-captioned lawsuit. You and the other individuals who joined the lawsuit are called "Plaintiffs."

The lawsuit has been settled, and the presiding Federal Judge has determined that the settlement is fair and reasonable. As a result, the lawsuit is now concluded.

You are entitled to a settlement payment. A settlement check with your share of the total settlement is enclosed.

Defendants S-L Distribution Company, Inc., S-L Distribution Company, LLC, S-L Routes, LLC, and Snyder's-Lance, Inc. (together "S-L") continue to deny all of Plaintiffs' allegations. S-

L maintains that they and the S-L Releasees (as described below) have always complied with the FLSA and all other federal, state, and local laws regarding the payment of wages.

## 2. SUMMARY OF THE SETTLEMENT

The Court has not ruled on the merits of Plaintiffs' claims or S-L's defenses, and the parties continue to disagree as to the probable outcome of the litigation with respect to liability and potential damages. However, all parties agree that, in light of the risks and expenses associated with continued litigation, this settlement is appropriate under the circumstances.

On [month/date], 2021, the Court approved the settlement. The settlement became effective on [month/date], 2021 (the "Effective Date") and fully resolves the lawsuit.

## 3. YOUR INDIVIDUAL SETTLEMENT PAYMENT

This lawsuit was settled for a total amount of $6 million. The Court has awarded one-third of this amount to the lawyers identified in Section 7 below. The Court also has approved a total of $*** in "service awards" to be shared by Jared Mode (the individual who started the lawsuit) and 30 additional Plaintiffs who were required to attend depositions during the litigation. Also, the Court has approved a $10,500 payment to the company responsible for "administering" the settlement.

After the $6 million settlement is reduced by the above amounts, we are left with $*** to be distributed between you and the other 330 Plaintiffs covered by the settlement. These Plaintiffs owned distributorships for a combined total of *** weeks during the time period covered by the settlement. You personally owned a distributorship for *** weeks during the covered time period. This equates to ***% of the total *** weeks.

Because you owned a distributorship for ***% of the total weeks, you are entitled to ***% of the available $***. This equates to $***.

As reflected in the enclosed IRS-1099 form, your $*** settlement payment has been reduced by 24% to cover your potential federal tax liability for the settlement payment.

Based on the above, your post-tax settlement check in the amount of $*** (76% of $***) is enclosed. Please call the lawyers identified in Section 7 below if you have any questions or concerns about the manner in which your individual settlement payment was determined.

## 4. RECEIPT OF SETTLEMENT FUNDS

As stated above, your settlement check is enclosed. All you have to do is sign and cash the settlement check. Settlement checks that are not cashed on or before [120 DAYS AFTER MAILING OF THE NOTICE OR 30 DAYS AFTER MAILING OF RESENT NOTICE] will be null and void.

## 5. TAX CONSEQUENCES OF AMOUNT RECEIVED

The amount paid to you under this settlement will be treated as non-wage income. As indicated in the enclosed IRS 1099 form, your $*** settlement payment has been reduced by 24% to cover your potential federal tax liability for the settlement payment. You must include the IRS 1099 form in your tax returns. Depending on your total taxable income this year, it is possible that some of the withheld taxes will be refunded to you after you file your tax return. You should consult with your tax advisor about any effect that your settlement payment may have on your tax liability.

## 6. WAIVER, RELEASE, AND DISCHARGE

A.      Under the Settlement, you, on behalf of yourself and your current, former, and future business entities, heirs, assigns, spouses, executors, administrators, agents, and attorneys, have fully and finally released and discharged the following claims against S-L and its present, former and future affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with them (collectively, "S-L Releasees"):

All claims arising on or before [*insert Effective Date*] that were or could have been raised in the Action, including but not limited to all wage and hour and wage payment claims, including claims under the Fair Labor Standards Act, and all other federal, state (including, but not limited to, claims under the Massachusetts Wage Act), or local wage and hour laws and wage payment laws (including but not limited to laws or regulations related to alleged misclassification as independent contractors, overtime, straight time wages, meal and rest breaks, wage statements, wage notice, minimum wage, expense reimbursement, and allegedly unlawful deductions), and related common law theories including all liquidated damages, civil penalties, equitable relief, fees, costs, or other damages/relief (the "Released Claims").

B.      You are, without limitation, barred and enjoined from bringing in the future any Released Claims described in paragraph A above. You acknowledge that you are releasing all Released Claims, including any Released Claims that you do not know or suspect to exist.

C.      You are deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits you may otherwise have had relating to the Released Claims described in Paragraph A above.

D.      You are prohibited from participating in any other legal actions against the S-L Releasees for the Released Claims described in paragraph A above. If you are currently participating in any such action, you must withdraw from such action.

E. This Release may be raised as a complete defense to and will preclude and bar any action or proceeding that is encompassed by this Release. If you have questions about the Release, you should contact the lawyers identified in Section 7 below.

F. As part of the Settlement, S-L, on behalf of itself and its past, present and future representatives, directors, officers, employees, shareholders, members, parent companies, subsidiaries, affiliates, agents, predecessors, successors, assigns, attorneys and insurers (collectively, the "S-L Releasors"), releases the following claims against you and your business entity (if any):

any and all past and present counterclaims and third-party claims for unjust enrichment and indemnification related to allegations that Plaintiffs were misclassified as independent contractors rather than employees that were or could have been asserted in the Action ("Claims Released by the S-L Releasors")

G. If you currently operate an S-L distributorship and are subject to an operative Distributor Agreement, the following claims are excluded from the Released Claims described in paragraphs A and F above:

(i) claims related to payments owed by S-L to any Plaintiff and/or his or her corporate entity and payments owed by any Plaintiff and/or his or her corporate entity to S-L under settlement statements, including but not limited to, payments for balances owed, purchases, sales credit and other charges or credits; (ii) claims by S-L against a FLSA Collective Member and/or his or her corporate entity that relate to or arise from third-party complaints brought against S-L; and (iii) claims arising after [*insert Effective Date*].

# 7. FLSA COLLECTIVE COUNSEL

Winebrake & Santillo LLC (215-884-2491) and Woolf, McClane, Bright, Allen & Carpenter PLLC (865-215-1000) continue to serve as your lawyers. As always, you should not hesitate to call these firms if you have any questions or require any additional information. In addition, you can reach these firms by sending an email to: pwinebrake@winebrakelaw.com.