IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JARED MODE, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>S-L DISTRIBUTION COMPANY, LLC, S-L DISTRIBUTION COMPANY, INC., and S-L ROUTES, LLC,<br><br>Defendants. | 3:18-cv-00150-KDB-DSC<br><br>**STIPULATION AND ORDER MODIFYING THE PREVIOUSLY-APPROVED SETTLEMENT AGREEMENT AND NOTICE FORM** |

**WHEREAS**, this collective action between Originating Plaintiff Jared Mode and 330 other covered IBOs (together "Plaintiffs") and S-L Distribution Company, LLC, S-L Distribution Company, Inc., S-L Routes, LLC, and Snyder's-Lance, Inc. (together "Defendants") was settled for a total payment amount of $6,000,000.00; and

**WHEREAS**, Plaintiffs filed an Unopposed Motion for Approval of the Settlement ("Approval Motion"), which included an executed Settlement Agreement and Release ("Settlement Agreement"), *see* ECF No. 675-1, which attached a form entitled Notice of Settlement of Fair Labor Standards Act Lawsuit ("Notice Form") that all parties agreed would be mailed to Plaintiffs if the Court approved the settlement, *see id.* at Exhibit 3; and

**WHEREAS**, on November 10, 2021, the Parties, based on the Court's observations during a November 9, 2021 telephone conference, modified the Settlement Agreement's release language. *See* ECF No. 676; and

**WHEREAS**, on November 12, 2021, the Court approved the settlement as modified. *See* ECF No. 677; and

1

**WHEREAS**, in seeking approval of the settlement, Plaintiffs' Counsel informed the Court that $3,797,544.00 would be distributed to the 331 Plaintiffs after reductions for service awards, attorney's fees/expenses, settlement administration expenses, and a $15,000.00 "reserve fund to be utilized to resolve any disputes by Plaintiffs who disagree with the number of workweeks utilized to determine their allocations." ECF No. 675-2 at 1-2. Plaintiffs' Counsel further informed the Court that, because Plaintiffs worked a combined total of 42,464 Applicable Workweeks during the relevant period, the $3,797,544.00 equated to $89 per Applicable Workweek. *See id.* at 6. The actual, unrounded figure stood at $89.43[1] per Applicable Workweek; and

**WHEREAS**, Plaintiffs' Counsel have determined that, due to an undercounting of 91 Applicable Workweeks attributable to a Plaintiff named Philip Sutton, all Plaintiffs actually worked a total of 42,555 (rather than 42,464) Applicable Workweeks during the relevant period; and

**WHEREAS**, the undercounting of Mr. Sutton's Applicable Workweeks results from the fact that, after he sold his distributorship, he continued to perform distributor work on behalf of a distributorship owned by another person; and

**WHEREAS**, the data available to S-L and Plaintiffs' Counsel does not capture weeks during which a Plaintiff – like Mr. Sutton – may have performed distribution work on behalf of a distributorship owned by another person; and

**WHEREAS**, although Mr. Sutton's circumstances appear to be unusual, Plaintiffs' Counsel – in an abundance of caution and with Defendants' approval – believe it is prudent to increase the $15,000.00 Reserve Fund in order to ensure that the Fund is sufficient to satisfy the

---

[1] $3,797,544.00 *divided by* 42,464 Applicable Workweeks.

legitimate claims of any other Plaintiffs who can demonstrate to the satisfaction of both Plaintiffs' Counsel and Defense Counsel that their Applicable Workweeks have been undercounted; and

**WHEREAS**, if the Reserve Fund is increased by $35,682.00 from $15,000.00 to $50,682.00, then the net proceeds distributed to the 331 Plaintiffs will be reduced from $3,797,544 to $3,761,862, and each Plaintiff will receive $88.40[2] per Applicable Workweek. This is only $1.03 less than the amount reported in Plaintiffs' motion for approval of the settlement; and

**WHEREAS**, the proposed increase to the Reserve Fund will not impact the parties' previous agreement that any unused portion of the Reserve Fund will be donated to the United Way of Central Carolinas;

**NOW, THEREFORE**, on this 15th day of December 2021, it is hereby **STIPULATED AND AGREED and ORDERED** that (i) the Reserve Fund referenced in Section 1.19 of the Settlement Agreement be increased from $15,000.00 to $50,682.00 and (ii) the Settlement Administrator may send each Plaintiff the amended Notice Form attached as Exhibit A.

_____
Sari M. Alamuddin
Morgan, Lewis & Bockius LLP
*For Defendants*

_____
Peter Winebrake
Winebrake & Santillo, LLC
*For Plaintiffs*

Signed: December 15, 2021

Kenneth D. Bell
United States District Judge

---

[2] $3,761,862 *divided by* 42,555 Applicable Workweeks.

3

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

JARED MODE, on behalf of himself and all others similarly situated,

                Plaintiffs,

  v.

S-L DISTRIBUTION COMPANY, LLC,
S-L DISTRIBUTION COMPANY, INC.,
S-L ROUTES, LLC, and SNYDER'S-LANCE, INC.,

                Defendants.

No. 3:18-cv-00150-KDB-DSC

## NOTICE OF SETTLEMENT OF FAIR LABOR STANDARDS ACT LAWSUIT

**TO:**

[Name]
[Address]
[City, State Zip]

**RE:** Fair Labor Standards Act Litigation Against S-L Distribution Company, Inc., S-L Distribution Company, LLC, S-L Routes, LLC, and Snyder's-Lance, Inc.

## 1. INTRODUCTION

    This Notice is directed to you because you previously joined, and remain a party to, the above-captioned lawsuit. You and the other individuals who joined the lawsuit are called "Plaintiffs."

    The lawsuit has been settled, and the presiding Federal Judge has determined that the settlement is fair and reasonable. As a result, the lawsuit is now concluded.

    You are entitled to a settlement payment. A settlement check with your share of the total settlement is enclosed.

    Defendants S-L Distribution Company, Inc., S-L Distribution Company, LLC, S-L Routes, LLC, and Snyder's-Lance, Inc. (together "S-L") continue to deny all of Plaintiffs' allegations. S-

L maintains that they and the S-L Releasees (as described below) have always complied with the FLSA and all other federal, state, and local laws regarding the payment of wages.

## 2. SUMMARY OF THE SETTLEMENT

The Court has not ruled on the merits of Plaintiffs' claims or S-L's defenses, and the parties continue to disagree as to the probable outcome of the litigation with respect to liability and potential damages. However, all parties agree that, in light of the risks and expenses associated with continued litigation, this settlement is appropriate under the circumstances.

On November 12, 2021, the Court approved the settlement. The settlement became effective on December 13, 2021 (the "Effective Date") and fully resolves the lawsuit.

## 3. YOUR INDIVIDUAL SETTLEMENT PAYMENT

This lawsuit was settled for a total amount of $6 million. The Court has awarded one-third of this amount to the lawyers identified in Section 7 below. The Court also has approved a total of $90,000 in "service awards" to be shared by Jared Mode (the individual who started the lawsuit) and 30 additional Plaintiffs who were required to attend depositions during the litigation. Also, the Court has approved payments of $10,500 to the company responsible for "administering" the settlement, $86,956 to the lawyers identified in Section 7 below for litigation expenses, and $50,682 in payments to a reserve fund to resolve disputed workweek claims.

After the $6 million settlement is reduced by the above amounts, we are left with $3,761,862 to be distributed between you and the other 330 Plaintiffs covered by the settlement. These Plaintiffs owned distributorships for a combined total of 42,555 weeks during the time period covered by the settlement. As a result, under the settlement, each individual week is worth **$88.40** ($3,761,862 *divided by* 42,555 total weeks).

You personally owned a distributorship for [*insert recipient's Applicable Workweeks*] weeks during the covered time period. As a result, you are entitled to $[***insert Individual Settlement Amount***] ($88.40 *multiplied by* [*insert recipient's Applicable Workweeks*].

As reflected in the enclosed IRS-1099 form, your $[*insert Individual Settlement Amount*] settlement payment has been reduced by 24% to cover your potential federal tax liability for the settlement payment.

Based on the above, your post-tax settlement check in the amount of $[*insert*] (76% of $[*insert Individual Settlement Amount*]) is enclosed. Please call the lawyers identified in Section 7 below if you have any questions or concerns about the manner in which your individual settlement payment was determined.

## 4. RECEIPT OF SETTLEMENT FUNDS

As stated above, your settlement check is enclosed. All you have to do is sign and cash the settlement check. Settlement checks that are not cashed on or before [*insert 120 DAYS AFTER MAILING OF THE NOTICE*] will be null and void.

## 5. TAX CONSEQUENCES OF AMOUNT RECEIVED

The amount paid to you under this settlement will be treated as non-wage income. As indicated in the enclosed IRS 1099 form, your $ [*insert Individual Settlement Amount*] settlement payment has been reduced by 24% to cover your potential federal tax liability for the settlement payment. You must include the IRS 1099 form in your tax returns. Depending on your total taxable income this year, it is possible that some of the withheld taxes will be refunded to you after you file your tax return. You should consult with your tax advisor about any effect that your settlement payment may have on your tax liability.

## 6. WAIVER, RELEASE, AND DISCHARGE

A. Under the Settlement, you, on behalf of yourself and your current, former, and future business entities, heirs, assigns, spouses, executors, administrators, agents, and attorneys, have fully and finally released and discharged the following claims against S-L and its present, former and future affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with them (collectively, "S-L Releasees"):

> All claims arising on or before December 13, 2021 that were or could have been raised in the Action, including but not limited to all wage and hour and wage payment claims, including claims under the Fair Labor Standards Act, and all other federal, state (including, but not limited to, claims under the Massachusetts Wage Act), or local wage and hour laws and wage payment laws (including but not limited to laws or regulations related to alleged misclassification as independent contractors, overtime, straight time wages, meal and rest breaks, wage statements, wage notice, minimum wage, expense reimbursement, and allegedly unlawful deductions), and related common law theories including all liquidated damages, civil penalties, equitable relief, fees, costs, or other damages/relief (the "Released Claims").

B. You are, without limitation, barred and enjoined from bringing in the future any Released Claims described in paragraph A above. You acknowledge that you are releasing all Released Claims, including any Released Claims that you do not know or suspect to exist.

3

C. You are deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits you may otherwise have had relating to the Released Claims described in Paragraph A above.

D. You are prohibited from participating in any other legal actions against the S-L Releasees for the Released Claims described in paragraph A above. If you are currently participating in any such action, you must withdraw from such action.

E. This Release may be raised as a complete defense to and will preclude and bar any action or proceeding that is encompassed by this Release. If you have questions about the Release, you should contact the lawyers identified in Section 7 below.

F. As part of the Settlement, S-L, on behalf of itself and its past, present and future representatives, directors, officers, employees, shareholders, members, parent companies, subsidiaries, affiliates, agents, predecessors, successors, assigns, attorneys and insurers (collectively, the "S-L Releasors"), releases the following claims against you and your business entity (if any):

> All counterclaims and third-party claims that were or could have been asserted in the Action, including but not limited to claims for unjust enrichment and indemnification.

G. If you currently operate an S-L distributorship and are subject to an operative Distributor Agreement, the following claims are excluded from the released claims described in paragraphs A and F above:

> (i) claims related to payments owed by S-L to any Plaintiff and/or his or her corporate entity and payments owed by any Plaintiff and/or his or her corporate entity to S-L under settlement statements, including but not limited to, payments for balances owed, purchases, sales credit and other charges or credits; (ii) claims by S-L against a FLSA Collective Member and/or his or her corporate entity that relate to or arise from third-party complaints brought against S-L; and (iii) claims arising after December 13, 2021.

## 7. FLSA COLLECTIVE COUNSEL

Winebrake & Santillo LLC (215-884-2491) and Woolf, McClane, Bright, Allen & Carpenter PLLC (865-215-1000) continue to serve as your lawyers. As always, you should not hesitate to call these firms if you have any questions or require any additional information. In addition, you can reach these firms by sending an email to: mtolodziecki@winebrakelaw.com